## WACHTEL & MASYR, LLP

110 EAST 59TH STREET
NEW YORK, NEW YORK 10022

TELEPHONE: (212) 909-9500
FACSIMILE: (212) 371-0320

STEVEN J. COHEN
PARTNER
DIRECT DIAL: (212) 909-9505
DIRECT FAX: (212) 909-9463
cohen@wmllp.com

LONG ISLAND OFFICE
1055 FRANKLIN AVENUE, SUITE 306
GARDEN CITY, N.Y. 11530
TELEPHONE: (516) 248-4300
FACSIMILE: (516) 478-6798

EUROPEAN OFFICE
VIA G. LA PIRA, 21
FLORENCE, ITALY 50121
TELEPHONE: (055) 284147
FACSIMILE: (055) 268594

August 14, 2007

**VIA FEDERAL EXPRESS
AND CERTIFIED MAIL-RRR**

Dean Angelle
Denise Angelle
100 Blue Ridge Drive
Carencro, Louisiana 70520

Re:  Stock Purchase Agreement dated as of February 1, 2006
by and among Argo Turboserve Corporation, Dean Angelle
and Denise Angelle, and D&D Pipe and Rentals, Inc.
("Stock Purchase Agreement")

### NOTICE OF INDEMNIFICATION

Dear Mr. and Mrs. Angelle:

We have been retained by Argo Turboserve Corporation ("ATC or "Buyer") and its wholly-owned subsidiary D&D Pipe and Rentals, Inc. ("D&D") to seek recovery of all of its Losses (this term as well as all others capitalized in this Notice have the definitions given them in the Stock Purchase Agreement) incurred and to be incurred as a result of your material breaches of representations and warranties contained in the Stock Purchase Agreement, and acts and omissions related thereto. This is a Notice of Indemnification pursuant to Section 9.3 of the Stock Purchase Agreement.

The nature of the Buyer's General Liability Claims are based upon the following breaches, acts and omissions:

### Breaches of Representations and Warranties

Section 2.2. The financial statements did not fairly present the financial condition of D&D for the respective periods indicated. Among other things, you substantially overstated the value of D&D's inventory on the closing date.

Sections 2.3(a) (g) and (j). On more than one occasion prior to ATC's acquisition of D&D, you engaged in transactions outside the ordinary course of business in that you (i) made false representations to D&D's customers concerning the quality of pipe sold to them; (ii) altered

EXHIBIT "8"

Dean Angelle
Denise Angelle
August 14, 2007
Page 2 of 3

and falsified inspection reports purportedly prepared by International Oil Field Services PCI Services and/or Verde Technologies Inc.; (iii) paid bribes to facilitate the alteration and finalization of pipe inspection reports in order to misrepresent the quality of pipe sold to D&D's customers; (iv) caused D&D to sell pipe owned by D&D's customers, without their consent, to other D&D customers, without their knowledge, and disguised such sales by replacing pipe they wrongfully sold with that of an inferior quality which they marked with bands and/or stencils corresponding to the grade of pipe sold; and (v) paid bribes to dockworkers and auctioneers to find out what D&D's competitors had bid on used pipe.

Sections 2.6 and 2.9. Many of the accounts receivable did not arise from valid transactions in the ordinary course of business and did not represent valid obligations of the named obligors. In fact, we have learned that you paid bribes to certain customers in exchange for their orders, failed to inform ATC of disputes with certain major customers, and failed to disclose facts and information that indicated that certain customers would indeed cease doing business, or materially reduce the amount of business they conducted with D&D.

Section 2.8. You made material misrepresentations concerning the title and ownership of certain pipe. Among other things, certain pipe that you claimed was owned by D&D was actually owned by customers.

Section 2.23. You failed to accurately report the quality and value of certain pipe purchased with MSF and Mid-Southern Pipe & Supply, Inc. You further failed to disclose the true nature of your business relationship with Fortune Operating Company and Russell Vera. In addition, as outlined above, many of the representations and warranties that you made in the Stock Purchase Agreement and Disclosure Schedule attached thereto contain certain untrue statements of material fact, and omitted facts that rendered other representations and warranties misleading.

Fraud-Based Claims and Breaches of Employment Agreement. In addition to material breaches of representations and warranties set forth above, ATC intends to pursue damages for fraud-based claims, including fraudulent misrepresentation and fraudulent inducement. Among other things, the falsification of inspection reports, the payment of bribes and deliberate mislabeling of pipe all constitute fraudulent conduct. Had ATC been made aware of any of these facts, it never would have even considered closing. Mr. Angelle's decision to voluntarily terminate his employment contract with D&D only one year after the closing did not exempt him from the substantial damages ATC incurred as a result of his stewardship. Based upon facts recently discovered, ATC is still calculating damages sustained as a result of Mr. Angelle's financial mismanagement and mishandling of certain accounts after the closing. Please be advised that ATC fully intends to seek compensation from his breaches of that agreement, including his apparent violation of his non-competition covenants. In that regard, we are still exploring reports that Mr. Angelle profited on sales for which no account was made at ATC.

Dean Angelle
Denise Angelle
August 14, 2007
Page 3 of 3

The foregoing is without prejudice to all rights and claims of ATC and all other Buyer Indemnified Parties and is based upon facts known to us at present. ATC reserves its right to amend or supplement this Notice as additional facts are discovered. Based upon current estimates, the Losses suffered by the Buyer Indemnified Parties will exceed $7 million. This sum does not include the attorneys' fees and other expenses that are recoverable under Section 10.12 of the Stock Purchase Agreement.

It is ATC's intention to file suit on September 14, 2007 against both of you in the United States District Court for the Southern District of New York, whose exclusive jurisdiction you consented to under Section 10.10 of the Stock Purchase Agreement, for indemnification and claims related to those identified above. Please note that the fraud-based claims that ATC intends to pursue are not subject to any limitations under Section 9.4 of the Stock Purchase Agreement and will be pursued accordingly.

Should you or your counsel wish to address this Notice, we suggest that you contact us for that purpose no later than September 10, 2007.

Very truly yours,

Steven J. Cohen

SJC/eb
cc:   Perret Doise, APLC
      Argo Turboserve Corporation