**Gregory W. O'Neill** (GO 1944)
**Elizabeth A. McCoy** (EM 8448)
Hill, Betts & Nash L.L.P.
One World Financial Center
200 Liberty Street, 26th Floor
New York, New York 10281
Tel.: (212) 839-7000
Fac.: (212) 466-0514

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ARGO TURBOSERVE CORPORATION, | CASE NO. 07 CIV 8410 (RMB) (GWG) |
| Plaintiff, | |
| versus | MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S COMPLAINT AND ALTERNATIVELY FOR STAY |
| DEAN ANGELLE AND DENISE ANGELLE, | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTIONS TO DISMISS**
**PLAINTIFF'S COMPLAINT AND ALTERNATIVELY FOR STAY**

GREGORY W. O'NEILL (GO 1944)
ELIZABETH A. McCOY (EM 8448)
Hill, Betts & Nash L.L.P.
One World Financial Center
200 Liberty Street, 26th Floor
New York, New York 10281
Telephone: (212) 839-7000
Facsimile: (212) 466-0514

AND

CARL D. ROSENBLUM (LA Bar No. 02083)
(Admitted *Pro Hac Vice*)
ERIC MICHAEL LIDDICK (LA Bar No. 31237)
(Admitted *Pro Hac Vice*)
Jones, Walker, Waechter, Poitevent,
   Carrère & Denègre, L.L.P.
201 St. Charles Avenue, 49th Floor
New Orleans, Louisiana 70170
Telephone:  (504) 582-8000
Facsimile:  (504) 582-8011
***Attorneys for Dean Angelle and Denise Angelle,
Defendants***

## TABLE OF CONTENTS

FACTUAL SUMMARY .......................................................................................................... 1

STANDARDS APPLICABLE TO MOTIONS TO DISMISS ........................................................ 5

    I.    RULE 12(B)(1) MOTION TO DISMISS FOR LACK OF SUBJECT
        MATTER JURISDICTION ...................................................................................... 5

    II.   RULE 12(B)(3) MOTION TO DISMISS FOR IMPROPER VENUE ...................... 7

    III.  RULE 12(B)(6) MOTION TO DISMISS FOR FAILURE
         TO STATE A CLAIM ............................................................................................ 7

ARGUMENT ....................................................................................................................... 8

    I.    ATC'S COMPLAINT FAILS TO STATE A CLAIM UPON WHICH
        RELIEF MAY BE GRANTED BECAUSE ATC'S COMPLAINT IS,
        AT BEST, PREMATURE ....................................................................................... 8

    II.   VENUE IN THE SOUTHERN DISTRICT OF NEW YORK
        IS PREMATURE ................................................................................................ 12

        A.    *NEW YORK LAW IS INAPPLICABLE BECAUSE NEW YORK*
             *LACKS "SUFFICIENT CONTACTS" WITH THE TRANSACTION* .......... 13

        B.    *LOUISIANA LAW SHOULD APPLY TO THE PRESENT ACTION* ......... 14

        C.    *UNDER LOUISIANA LAW, VENUE IN NEW YORK IS IMPROPER*
             *BECAUSE A PARTY MAY NOT WAIVE OBJECTIONS TO*
             *VENUE PRIOR TO THE INSTITUTION OF AN ACTION* ...................... 15

    III.  ATC'S COMPLAINT FAILS TO STATE A CLAIM UPON WHICH
         RELIEF MAY BE GRANTED BECAUSE ATC FAILED TO PLEAD
         FRAUD WITH PARTICULARITY PURSUANT TO RULE 9(B) ...................... 19

    IV.  ATC LACKS STANDING TO PURSUE A CLAIM FOR BREACH
         OF THE EMPLOYMENT AGREEMENT .......................................................... 23

CONCLUSION .................................................................................................................. 24

EXHIBITS

    EXHIBIT 1:   STOCK PURCHASE AGREEMENT
    EXHIBIT 2:   EXECUTIVE EMPLOYMENT AGREEMENT

EXHIBIT 3a: NOTICE OF RESIGNATION

EXHIBIT 3b: ACCEPTANCE OF RESIGNATION

EXHIBIT 4:  PETITION FOR DECLARATORY JUDGMENT (THE "LOUISIANA ACTION")

EXHIBIT 5:  PROMISSORY NOTE

EXHIBIT 6:  GUARANTY

EXHIBIT 7:  NOTICE OF DEFAULT

EXHIBIT 8:  NOTICE OF INDEMNIFICATION

EXHIBIT 9:  SEPTEMBER 5, 2007 LETTER

EXHIBIT 10: SEPTEMBER 12, 2007 LETTER

EXHIBIT 11: SEPTEMBER 21, 2007 LETTER

## TABLE OF AUTHORITIES

<u>**Cases**</u>

*Achtman v. Kirby, McInerney & Squire, LLP,*
    464 F.3d 328, 337 (2d Cir. 2006)..................................................................... 8

*Alexander & Alexander of New York, Inc. v. Fritzen,*
    114 A.D.2d 814, 815 (N.Y. App. Div. 1985) ................................................. 23

*Allianz Ins. Co. v. Otero,*
    353 F.Supp.2d 415, 429 (S.D.N.Y. 2004) ....................................................... 9

*Bank of America Corp. v. Lemgruber,*
    385 F.Supp.2d 200, 217 (S.D.N.Y. 2005) ............................................... passim

*Bear, Stearns Funding, Inc. v. Interface Group-Nevada, Inc.,*
    No. 03-8259, 2007 WL 1988150, * 11 (S.D.N.Y. July 10, 2007)..................... 9

*Betancourt v. City of New York HRA/DSS,*
    No. 07-2165, 2007 WL 2948345, *2 (S.D.N.Y. 2007).............................. 8, 22

*Brown v. E.F. Hutton Group, Inc.,*
    991 F.2d 1020, 1032-33 (2d Cir. 1993) ........................................................ 20

*Calhoun v. Louisiana Materials Co.,*
    206 So. 2d 147, 150 (La. App. 4 Cir. 1968) ................................................. 23

*Carey v. Klutznick,*
    508 F.Supp. 404, 408 (D.C.N.Y. 1980) ........................................................ 23

*Carte Blanche (Singapore) Pte., Ltd., v. Diners Club Int'l, Inc.,*
    2 F.3d 24, 26 (2d Cir. 1993)........................................................................... 24

*Christensen v. WMA Consumer Servs., Inc.,*
    No. 03-1545, 2003 WL 22174240, *2 (E.D. La. Sept. 5, 2003)..................... 19

*City of Pittsburgh v. West Penn Power Co.,*
    147 F.3d 256, 263 n.13 (3d Cir. 1998), *cert. denied,* 532 U.S. 1038 (2001)...................... 8

*Columbus Park Corp. v. Dep't of Hous., Pres. & Dev.,*
    80 N.Y.2d 19, 31 (N.Y. 1992) ...................................................................... 11

*Concesionaria DHM v. Int'l Fin. Corp.,*
    307 F.Supp.2d 553, 555 (S.D.N.Y. 2004) ....................................................... 7

*Continental Ins. Co. v. M/V Orsula,*
    354 F.3d 603, 607-08 (7th Cir. 2003) ........................................................... 12

*Doug Grant, Inc. v. Greate Bay Casino Corp.*,
   232 F.3d 173, 184 (3d Cir. 2000)....................................................................... 8

*Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*,
   261 F.Supp.2d 293, 294 (S.D.N.Y. 2003) ......................................................... 6

*Duke Power Co. v. Carolina Envtl. Study Group*,
   438 U.S. 59, 72-74 (1978) ............................................................................... 23

*Erie Railroad Co. v. Tompkins*,
   304 U.S. 64 (1938)........................................................................................... 17

*Estee Lauder Companies, Inc. v. Batra*,
   430 F.Supp.2d 158, 170 (S.D.N.Y. 2006) ........................................... 13, 14, 15

*Evolution Online Sys., Inc. v. Koninklijke PTT Nederland N.V.*,
   145 F.3d 505, 508 n.6 (2d Cir. 1998).......................................................... 12, 13

*First Capital Asset Mgmt. v. Brickellbush, Inc.*,
   218 F.Supp.2d 369, 377-78 (S.D.N.Y. 2002) ....................................... 6, 20, 22

*Frietsch v. Refco, Inc.*,
   6 F.3d 825, 830 (7th Cir. 1995) ...................................................................... 12

*FW/PBS, Inc. v. City of Dallas*,
   493 U.S. 215, 231 (1990).................................................................................. 6

*Garg v. Winterthur*,
   No. 05-5870, 2007 WL 136263, *1 (S.D.N.Y. Jan. 18, 2007) .......................... 7

*Global Disc. Travel Servs., LLC v. Trans World Airlines, Inc.*,
   960 F.Supp. 701, 704 (S.D.N.Y. 1997)............................................................. 7

*Granite Partners, L.P. v. Bear, Stearns & Co.*,
   58 F.Supp.2d 228, 257 (S.D.N.Y. 1999) ................................................... 19, 20

*Greenfield v. Philles Records, Inc.*,
   98 N.Y.2d 562, 569 (N.Y. 2002) ...................................................................... 9

*Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd.*,
   230 F.3d 549, 556 (2d Cir. 2000)..................................................................... 14

*Hodel v. Irving*,
   481 U.S. 704, 711 (1987).................................................................................. 6

*Hugel v. Corp. of Lloyd's*,
   999 F.2d 206, 207 (7th Cir. 1993) ................................................................... 13

*Indymac Mortgage Holdings, Inc. v. Reynad,*
   167 F.Supp.2d 222, 242 n.23 (D. Conn. 2001) ................................................................ 12

*Jones v. Weibrecht,*
   901 F.2d 17, 19 (2d Cir. 1990).............................................................................. 16, 18

*Laitram Machinery, Inc. v. Carnitech/AS,*
   No. 92-3841, 1993 WL 370624, *1 (E.D. La. Sept. 10, 1993)......................................... 23

*Lambert v. Kysar,*
   983 F.2d 1110, 1112 n. 1 (1st Cir. 1993) ......................................................................... 12

*LaSalle Bank Nat. Ass'n v. Merrill Lynch Mortgage Lending, Inc.,*
   No. 04-5452, 2007 WL 2324052, *8 (S.D.N.Y. Aug. 13, 2007)........................................ 9

*Lavian v. Haghnazari,*
   884 F.Supp. 670, 675 (E.D.N.Y. 1995) ......................................................................... 22

*Licensed Practical Nurses, Technicians and Health Care Workers of New York, Inc. v.*
   *Ulysses Cruises, Inc.,*
   131 F.Supp.2d 393, 395-99 (S.D.N.Y. 2000) .............................................................. 16, 17

*Lipcon v. Underwriters at Lloyd's, London,*
   148 F.3d 1285, 1290 (11th Cir. 1998) .......................................................................... 13

*Local Union 813 v. Waste Mgmt. of New York, LLC,*
   469 F.Supp.2d 80, 87 (E.D.N.Y. 2007) ....................................................................... 8, 9

*Luce v. Edelstein,*
   802 F.2d 49, 54 (2d Cir. 1986)..................................................................................... 22

*Luckett v. Bure,*
   290 F.3d 493, 496-97 (2d Cir. 2002) .............................................................................. 6

*Manning v. Utils. Mut. Ins. Co.,*
   254 F.3d 387, 399 (2d Cir. 2001)................................................................................. 21

*Nat'l Council of Young Israel v. Wolf,*
   963 F.Supp. 276, 281 (S.D.N.Y. 1997)..................................................................... 21, 22

*Prytania Park Hotel, Ltd. v. Gen. Star Indem. Co.,*
   179 F.3d 169, 175 (5th Cir. 1999) ................................................................................ 16

*Ricciuti v. NYC Transit Auth.,*
   941 F.2d 119, 123 (2d Cir. 1991)................................................................................... 7

*Rivoli v. Gannett Co.,*
   327 F.Supp.2d 233, 239 (W.D.N.Y. 2004) ...................................................................... 8

*S. Leo Harmonay, Inc. v. Binks Mfg. Co.*,
  597 F.Supp. 1014, 1025 (S.D.N.Y. 1984) ........................................................ 13

*Scholastic, Inc. v. Harris*,
  259 F.3d 73, 82 (2d Cir. 2001)........................................................................... 9

*Schwartz v. Twin City Fire Ins. Co.*,
  492 F.Supp.2d 308, 327 (S.D.N.Y. 2007) ...................................................... 15

*Spira v. Nick*,
  876 F.Supp. 553, 557 (S.D.N.Y. 1995)...................................................... 21, 22

*Stardad, Inc. v. Lawson Software, Inc.*,
  No. 04-5554, 2004 WL 2093512, *1 n.2 (S.D.N.Y. Sept. 16, 2004) ............... 16

*Student Members of SAME v. Rumsfeld*,
  321 F.Supp.2d 388, 392 (D. Conn. 2004)...................................................... 6, 23

*Sun Forest Corp. v. Shvili*,
  152 F.Supp.2d 367, 381 n.22 (S.D.N.Y. 2001)................................................ 16

*Tasini v. New York Times Co.*,
  84 F.Supp.2d 350, 353 (S.D.N.Y. 2002) ........................................................... 6

*The Bremen v. Zapata OffShore Co*,
  407 U.S. 1 (1972)......................................................................................... 18, 19

*Thompson v. Cty. of Franklin*,
  15 F.3d 245, 247 (2d Cir. 1994).......................................................................... 6

*United Rentals (North America), Inc. v. Myers*,
  No. 303CV589, 2003 WL 23498385, *1 (D. Conn. May 22, 2003) .......... 16, 18

*Wright v. 3P Delivery, LLC*,
  07-683 (La. App. 3 Cir. 10/31/07); 2007 WL 3171260...................................... 9

*Zeising v. Kelly*,
  152 F.Supp.2d 335, 342 (S.D.N.Y. 2001) ......................................................... 8

*Zerman v. Ball*,
  735 F.2d 15, 20 (2d Cir. 1984)......................................................................... 13

## **Other Authorities**

RESTATEMENT (SECOND) OF CONFLICTS OF LAW § 187 (1971) ........................ 13, 14, 15

## **Rules**

LA. CIV. CODE ANN. art. 1 cmts. (a), (c) (2007) .......................................... 15

LA. CIV. CODE ANN. art. 1953 (2007) .......................................................... 19

LA. CIV.CODE ANN. art. 2045 (2007) .......................................................... 9

LA. CODE CIV. PROC. ANN. art. 44(A) (2007).......................................... 15, 17, 18, 19

FED. R. CIV. P. 9(b) (2007) ........................................................... 1, 19, 20, 22

FED. R. CIV. P. 12(b)(1) (2007)................................................................. passim

FED. R. CIV. P. 12(b)(3) (2007)................................................................. passim

FED. R. CIV. P. 12(b)(6) (2007)................................................................. passim

Defendants file this Memorandum in Support of their Motions to Dismiss Plaintiff's Complaint and Alternatively for Stay pursuant to Rules 12(b)(1), 12(b)(3), and 12(b)(6) of the Federal Rules of Civil Procedure.  As set forth below, this suit is, at least, premature, venue is improper, the requirements of Rule 9(b) of the Federal Rules of Civil Procedure have not been satisfied, and Plaintiff lacks standing as to the Executive Employment Agreement claim.

## FACTUAL SUMMARY

Effective February 1, 2006, Argo Turboserve Corporation ("ATC") and Dean Angelle and Denise Angelle (collectively "the Angelles") entered into a Stock Purchase Agreement (the "SPA"), whereby ATC purchased one hundred percent (100%) of the stock of D&D Pipe and Rentals, Inc. ("D&D Pipe"), a Louisiana corporation owned by the Angelles.  A copy of the SPA is attached hereto as Exhibit "1."  (*See* Ex. "1" at p. 2).  Pursuant to the SPA, D&D Pipe, a corporation devoted to the "selling and refurbishing [of] pipe for oil and gas application," would be operated as ATC's wholly-owned subsidiary at its location in Lafayette, Louisiana.  (*See* Ex. "1" at p. 2).

ATC agreed to pay the Angelles "Total Consideration" of approximately eight and one-half million dollars ($8,500,000), which consisted of (1) a cash payment of two and one half million dollars ($2,500,000), (2) a cash advance of one million dollars ($1,000,000), which was subject to "Working Capital Adjustments," (3) a promissory note (the "Note") payable to the Angelles for the principal amount of five million dollars ($5,000,000), and (4) the opportunity for an (a) Annual Earn-Out Payment, a (b) End of Term Earn-Out Payment, and a (c) Flip Fee. (*See* Ex. "1" at § 1.2(a)).

The SPA contemplated numerous additional agreements, including provisions for a covenant not to compete and a lease agreement.[1]  (*See* Ex. "1" at § 6.11).  The SPA also provided provisions regarding indemnification for "Losses." (*See* Ex. "1" at Art. IX).

Pursuant to Section 6.9 of the SPA, Dean Angelle and D&D Pipe entered into a separate Executive Employment Agreement (the "Employment Agreement").  A copy of the Employment Agreement is attached hereto as Exhibit "2." (*See* Ex. "1" at § 6.9; Ex. "2").  Importantly, ATC, Plaintiff herein, is *not* a party to the Employment Agreement.  The Employment Agreement, which was executed by and between D&D Pipe and Dean Angelle on March 3, 2006, contained a term of five (5) years (*see* Ex. "2" at § 1.1), and was subject to termination with or without cause by either party. (*See id.* at § 3.1).  On April 2, 2007, Dean Angelle sent a Notice of Resignation to ATC's Chief Executive Officer, Clyde Keaton, who responded on April 11, 2007, by accepting the same.  A copy of the Notice of Resignation and its Acceptance are attached hereto as Exhibits "3a" and "3b," respectively.

Section 5.1 of the Employment Agreement sought to establish a broad non-competition restriction.  (*See id.* at § 5.1.).  On September 25, 2007, Dean Angelle filed a Petition for Declaratory Judgment in Louisiana state court against D&D Pipe asserting the invalidity of the non-competition covenant in Section 5.1 of the Employment Agreement as a matter of law (the "Louisiana action").  A copy of the Louisiana action is attached hereto as Exhibit "4".

In accordance with the SPA, D&D Pipe executed, as maker, a promissory note payable to the Angelles for the principal amount of five million dollars ($5,000,000).  A copy of the Note is attached hereto as Exhibit "5." (*See* Ex. "5" at p. 1).  On the same day, ATC executed a

---

[1] A separate proceeding is pending in Louisiana State Court over D&D Pipe's defaults under the Lease Agreement.

"Guaranty," whereby ATC agreed to act as guarantor, and primary obligor, of "full and timely payment when due by D&D of all Liabilities." A copy of the Guaranty is attached hereto as Exhibit "6." (*See* Ex. "6" at § 1). ATC's guarantee was a "guaranty of payment and not a guaranty of collection." (*See id.*).

The Note established a schedule for payment. (*See* Ex. "5" at § 1(b)). Section 4(a) provided that "the Maker shall default in payment of the principal of this Note, when and as the same shall become due and payable, within thirty (30) calendar days of the date when due," at which point the payees may accelerate payment of the outstanding principal balance and any accrued interest thereon. (*See id.* at §§ 4(a), 2(a)). D&D Pipe's first payment in the amount of one million dollars was due on February 1, 2007. (*See id.* at § 1(b)). Subsequently, D&D Pipe failed to make the designated payment within thirty (30) days of February 1, 2007. On May 11, 2007, the Angelles forwarded a letter to ATC notifying ATC of D&D Pipe's default on the Note and invoking the Angelles' right to mandatory prepayment pursuant to Section 2(a) of the Note. A copy of the Notice of Default is attached hereto as Exhibit "7." ATC did not respond to the Angelles' Notice of Default.

Rather, in a clear retaliatory move, on August 14, 2007, ATC sent the Angelles a Notice of Indemnification outlining several perceived breaches of the SPA and invoking ATC's right to seek indemnification under Article IX of the SPA. A copy of the Notice of Indemnification is attached hereto as Exhibit "8." Article IX of the SPA contains express rights available to any party who receives an indemnification claim. Indeed, Section 9.3(b) of the SPA states the following:

> The Indemnified Party *shall* provide to the Indemnifying Party on request all information and documentation reasonably necessary to support and verify any Losses which the Indemnified Party believes give rise to a claim for indemnification hereunder and

> *shall* give the Indemnifying Party reasonable access to all premises, books, records *and personnel* in the possession or under the control of the Indemnified Party which would have bearing on such claim.

(Ex. "1" at § 9.3(b) (emphasis added)).    Accordingly, the Angelles disputed ATC's "indemnification" allegations in a letter dated September 5, 2007, and sought to exercise their rights under Section 9.3(b) of the SPA. A copy of the September 5, 2007 letter is attached hereto as Exhibit "9." Relying upon the first clause of Section 9.3(b), the Angelles' September 5, 2007 letter requested that ATC provide supporting documentation or evidence for its claims. (*See* Ex. "9"). Oddly enough, ATC never responded nor did it provide any support or evidence for the allegations, as required.

Thereafter, on September 12, 2007, the Angelles forwarded another letter to ATC formally exercising the balance of the Angelles' rights under Section 9.3(b) of the SPA. A copy of the September 12, 2007 letter is attached hereto as Exhibit "10." Specifically, the Angelles formally sought "reasonable access to all premises, books, records and personnel" in accordance with the second clause of Section 9.3(b). (*See* Ex "1" at § 9.3(b); Ex. "10"). ATC, in a letter dated September 21, 2007, agreed to provide the Angelles with "reasonable access" pursuant to Section 9.3(b). A copy of the September 21, 2007 letter is attached hereto as Exhibit "11."

On October 15, 2007, with ATC's full knowledge and acquiescence, the Angelles visited D&D Pipe's Lafayette, Louisiana location with the intention of fully exercising their rights under Section 9.3(b). Although ATC permitted the Angelles and their counsel to review numerous boxes of documents, none were identified by ATC's representative as "verify[ing] any Losses" and none were identified as "bearing" on ATC's claims. (Ex. "1" at § 9.3(b)). Rather, ATC's representative indicated that he was unfamiliar with ATC's Notice of Indemnification and merely allowed the Angelles access to boxes of documents that were then in the process of being

forwarded to ATC's New Jersey location.[2]   Moreover, when the Angelles requested to have reasonable access "to all . . . personnel . . . bearing on such claim," it was expressly denied. (*Id.*). Accordingly, the Angelles expressly reserved their rights to the full exercise of those rights set forth in Section 9.3(b) of the SPA.

Similarly, on November 19, 2007, and with ATC's agreement, the Angelles and their counsel traveled to ATC's New Jersey location with the intent of *partially* exercising their rights pursuant to Section 9.3(b) of the SPA. ATC had previously ordered that the Angelles would not be given access to "personnel." Contrary to the express directive of Section 9.3(b) of the SPA, ATC supplied ninety-three (93) unorganized boxes of documents, which were not organized in a manner permitting verification of or support for ATC's claims. Once again, the Angelles, recognizing the restricted exercise of their rights under Section 9.3(b) of the SPA, expressly reserved their right to fully exercise the provisions of Section 9.3(b).

On September 27, 2007, two days after Dean Angelle filed the Louisiana action, ATC filed its present Complaint in the United States District Court for the Southern District of New York. The Angelles now file the present Motions to Dismiss Plaintiff's Complaint and Alternatively for Stay.

**STANDARDS APPLICABLE TO MOTIONS TO DISMISS**

**I.      Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction**

Although it is unclear whether Rule 12(b)(1) or 12(b)(6) governs a party's dismissal for lack of standing, the Second Circuit has concluded that standing, as a jurisdictional issue, is properly addressed on a motion to dismiss for lack of subject matter jurisdiction. *See Bank of America Corp. v. Lemgruber*, 385 F.Supp.2d 200, 217 (S.D.N.Y. 2005) (noting the uncertainty

---

[2] ATC was apparently in the process of shutting down its operations of D&D Pipe.

surrounding which motion is applicable); *Student Members of SAME v. Rumsfeld*, 321 F.Supp.2d 388, 392 (D. Conn. 2004) ("Ripeness and standing are both properly considered on a Rule 12(b)(1) motion."). Subject matter jurisdiction requires that a district court possess the "statutory or constitutional power to adjudicate" a claim. *Tasini v. New York Times Co.*, 84 F.Supp.2d 350, 353 (S.D.N.Y. 2002). The Supreme Court has noted that standing is "a jurisdictional prerequisite to a federal court's deliberations." *Hodel v. Irving*, 481 U.S. 704, 711 (1987). Accordingly, an action warrants dismissal where the plaintiff lacks the "constitutional standing to pursue a claim" as the lack of standing robs the court of its power to adjudicate a claim. *See Student Members of SAME*, 321 F.Supp.2d at 392.

The Second Circuit has also held that standing, "like other jurisdictional inquiries, 'cannot be inferred argumentatively from averments in the pleadings, . . . but rather must appear affirmatively in the record.'" *Thompson v. Cty. of Franklin*, 15 F.3d 245, 247 (2d Cir. 1994) (quoting *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)). Accordingly, the plaintiff bears the ultimate burden of proving the subject matter jurisdiction of this court by clearly alleging "'facts demonstrating that he is a proper party to invoke judicial resolution of the dispute.'" *Thompson v. Cty. of Franklin*, 15 F.3d at 247 (quoting *FW/PBS, Inc.*, 493 U.S. at 231). A district court is not, however, constrained by the pleadings and may consider matters not contained therein. *See Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 261 F.Supp.2d 293, 294 (S.D.N.Y. 2003) ("In resolving a Rule 12(b)(1) motion, the Court may consider matters outside the pleadings."); *First Capital Asset Mgmt. v. Brickellbush, Inc.*, 218 F.Supp.2d 369, 377-78 (S.D.N.Y. 2002) ("[T]he district court is authorized to consider matters outside the pleadings . . . ."). *See also Student Members of SAME*, 321 F.Supp.2d at 392 (quoting *Luckett v. Bure*, 290 F.3d 493, 496-97 (2d Cir. 2002)).

## II.    Rule 12(b)(3) Motion to Dismiss for Improper Venue

Federal Rule of Civil Procedure 12(b)(3) governs challenges to the laying of venue in a particular forum. A plaintiff opposing a motion to dismiss pursuant to Rule 12(b)(3) bears the burden of demonstrating that venue is proper. *Garg v. Winterthur*, No. 05-5870, 2007 WL 136263, *1 (S.D.N.Y. Jan. 18, 2007). In deciding such a motion, a court must accept "all of the allegations in the Complaint as true unless contradicted by the defendant's affidavits." *Id.* However, while a court must "draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff," a district court may assay facts beyond those contained in the complaint, including "affidavits and declarations" submitted by defendants in support of their motion. *Id.* (quoting *Concesionaria DHM v. Int'l Fin. Corp.*, 307 F.Supp.2d 553, 555 (S.D.N.Y. 2004) (citations omitted)).

## III.    Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

When confronted with a motion to dismiss pursuant to Rule 12(b)(6), a district court must take the facts alleged in the complaint as true. *See Global Disc. Travel Servs., LLC v. Trans World Airlines, Inc.*, 960 F.Supp. 701, 704 (S.D.N.Y. 1997). A court may only consider facts set forth in the complaint; however, "the complaint includes any written instrument attached as an exhibit and any statements or documents incorporated by reference into the complaint." *Lemgruber*, 385 F.Supp.2d at 228. The Angelles submit that all attachments hereto (with the exception of Exhibit "4") were incorporated by reference in ATC's Complaint. *See id.* If, after viewing the plaintiff's allegations in the complaint as true, the court determines that "the plaintiff can prove no set of facts in support of his [or her] claim that would entitle him [or her] to relief," then dismissal is warranted. *Id.* (quoting *Ricciuti v. NYC Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)).

Thus, the facts as alleged must be viewed in the "most favorable light" to the plaintiff. *Lemgruber*, 385 F.Supp.2d at 228. This does not mean, however, that the Court must "strain to find inferences that are favorable to the plaintiff." *Zeising v. Kelly*, 152 F.Supp.2d 335, 342 (S.D.N.Y. 2001). Furthermore, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." *Betancourt v. City of New York HRA/DSS*, No. 07-2165, 2007 WL 2948345, *2 (S.D.N.Y. 2007) (quoting *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (citation omitted)). A district court is under an obligation not to draw "unreasonable inferences in plaintiff's favor" and should instead consider "allegations in a 'realistic, rather than a slavish, manner.'" *Rivoli v. Gannett Co.*, 327 F.Supp.2d 233, 239 (W.D.N.Y. 2004) (citing *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 184 (3d Cir. 2000) (quoting *City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263 n.13 (3d Cir. 1998)), *cert. denied*, 532 U.S. 1038 (2001)).

Under the foregoing standards, the Complaint of ATC should be dismissed. Alternatively, this proceeding should be stayed until the Angelles are able to properly exercise their express rights under the SPA.

## ARGUMENT

I. **ATC's Complaint Fails to State a Claim Upon Which Relief May Be Granted Because ATC's Complaint is, At Best, Premature**

New York law recognizes the ability of parties to a contract to "precisely define their rights and obligations in any way they wish." *Local Union 813 v. Waste Mgmt. of New York, LLC*, 469 F.Supp.2d 80, 87 (E.D.N.Y. 2007).[3] "Freedom of contract," as it is colloquially

---

[3] Should this Court agree that Louisiana law applies to the present action, the Angelles submit that Louisiana law supports essentially the same principles as enumerated herein. *See,*

known, is a "fundamental contract principle." *Id.*  *See also Allianz Ins. Co. v. Otero*, 353 F.Supp.2d 415, 429 (S.D.N.Y. 2004) (discussing the "important . . . right of freedom of contract").  In upholding this freedom, *ergo*, courts seek "'to effectuate the intention of the parties as evidenced by the language they use[]'" by enforcing "'the terms of the agreement as set down in an integrated, written instrument.'"  *LaSalle Bank Nat. Ass'n v. Merrill Lynch Mortgage Lending, Inc.*, No. 04-5452, 2007 WL 2324052, *8 (S.D.N.Y. Aug. 13, 2007) (quoting *Scholastic, Inc. v. Harris*, 259 F.3d 73, 82 (2d Cir. 2001)).  Accordingly, a court should enforce a contract "in accordance with the plain meaning of its terms" where those terms are "complete, clear and unambiguous."  *LaSalle Bank Nat. Ass'n*, 2007 WL 2324052 at *8 (internal quotation marks and citations omitted).  Where a contract is "reasonably susceptible of only one meaning, a court is not free to alter the contract to reflect its personal notions of fairness and equity."  *Bear, Stearns Funding, Inc. v. Interface Group-Nevada, Inc.*, No. 03-8259, 2007 WL 1988150, * 11 (S.D.N.Y. July 10, 2007) (citing *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569 (N.Y. 2002)).

    In the instant case, ATC and the Angelles freely entered into the SPA.  Article IX of the SPA governs the parties' right of indemnification.  (*See* Ex. "1" at Art. IX).  Indeed, the indemnification right contained in Article IX of the SPA represents the exclusive remedy available to the contracting parties.  (*See* Ex. "1" at § 9.4).  Article IX contains a provision that covers "Notice and Defence [sic] of Claims," which enunciates the procedure applicable to a party's claim for indemnification.  (*See* Ex. "1" at § 9.3).  Importantly, Section 9.3(b) states the following:

---

*e.g., Wright v. 3P Delivery, LLC*, 07-683 (La. App. 3 Cir. 10/31/07); 2007 WL 3171260.  *See also* LA. CIV. CODE ANN. arts. 2045 et seq. (2007).  *See infra*. II.B.

> The Indemnified Party *shall* provide to the Indemnifying Party on request all information and documentation reasonably necessary to support and verify any Losses which the Indemnified Party believes give rise to a claim for indemnification hereunder and *shall* give the Indemnifying Party reasonable access to all premises, books, records and personnel in the possession or under the control of the Indemnified Party which would have bearing on such claim.

(Ex. "1" at § 9.3(b) (emphasis added)).

As noted *supra*, ATC dispatched a Notice of Indemnification on August 14, 2007, referencing Article IX of the SPA. (*See* Ex. "8"). In response, the Angelles transmitted two letters, dated September 5, 2007, and September 12, 2007, respectively, which invoked the rights set forth in Section 9.3(b). (*See* Exs. "9" and "10"). The September 5, 2007 letter relied upon the first clause of Section 9.3(b); whereas, the September 12, 2007 letter specifically invoked the second clause. (*See id.*). ATC, however, failed to comply with its obligations under Section 9.3(b) of the SPA.

Notably, the September 12, 2007 letter asserted that until the Angelles were provided with the "opportunity to reasonably exercise their rights under ¶ 9.3(b) of the Purchase Agreement, any filing of a suit by your client, Argo Turboserve Corporation, in the United States District Court for the Southern District of New York, or anywhere else, would be premature." (Ex. "10"). ATC, in its response dated September 21, 2007, agreed to provide access, but "disagree[d] with [the Angelles'] claim that the contemplated filing of suit by Argo Turboserve would be premature before that [access] occurs." (Ex. "11").

In accordance with its plain meaning, Section 9.3(b) of the SPA is an exhaustion of remedies provision that provides access to supporting information and "personnel" *before* the filing of suit by the Indemnified Party. Any other interpretation would render the rights supplied by Section 9.3(b) meaningless and ineffectual. Any "construction which makes a contract

provision meaningless is contrary to basic principles of contract interpretation." *Columbus Park Corp. v. Dep't of Hous., Pres. & Dev.*, 80 N.Y.2d 19, 31 (N.Y. 1992). Consequently, pursuant to this clear and unambiguous meaning, a suit is premature where the party seeking indemnification files suit *before* the Indemnifying Party exhausts its rights under Section 9.3(b) of the SPA.

Any other construction as to the meaning of Section 9.3(b) renders that provision superfluous. If the Indemnified Party may refuse to honor its contractual commitment to provide reasonable access to the Indemnifying Party *before* filing suit, then Section 9.3(b) is displaced by the applicable discovery rules in the Federal Rules of Civil Procedure. Indeed, why include Section 9.3(b) at all if the Indemnifying Party will gain the supporting information and documentation through Rule 26 et seq.?

As is apparent from the express language of the SPA, the parties included Section 9.3(b) as a means of potentially avoiding the time and expense of litigation. If the Indemnifying Party could verify that the Indemnified Party did sustain "Losses," as defined in the SPA, then the Indemnifying Party might indemnify the injured party without the need for expensive and time-consuming litigation. Section 9.3(b) permits the parties to review support, resolve the dispute, and continue the contractual relationship with relative ease. Section 9.3(b), then, is about economics and efficiency.

Here, it is undisputed that ATC failed to respond to the September 5, 2007 demand for supporting documentation and/or evidence as required by the first clause of that Section. (*See* Ex. "1" at § 9.3(b)). Additionally, ATC acknowledges that it did not afford "reasonable access to *all premises*, books, records, *and personnel*," vis-à-vis the second clause, when it denied the Angelles the opportunity to speak with personnel at the Lafayette, Louisiana, and Lyndhurst, New Jersey locations who may have possessed information "bearing on [ATC's] claim." (*See*

Ex. "1" at § 9.3(b) (emphasis added)).    ATC made absolutely no effort to organize the documents in a manner that would reveal alleged verification for the claimed losses or support for ATC's allegations, nor did the documentation provide any support for ATC's claims.

Accordingly, the Angelles respectfully request that this Court dismiss ATC's claim as being, at least, premature since the Angelles have not been able to fully exercise their rights.    In the alternative, the Angelles respectfully request that this Court stay the current proceedings until such time as the Angelles have exercised their full rights under Section 9.3(b) of the SPA and the parties are given an opportunity to resolve the "indemnification claims" outside of formal litigation.

## II.    Venue in the Southern District of New York is Improper

The Second Circuit has concluded that a motion to dismiss pursuant to Rule 12(b)(6) is the proper vehicle for parties seeking dismissal upon the bases of contractual choice-of-law and choice-of-forum clauses.    *Evolution Online Sys., Inc. v. Koninklijke PTT Nederland N.V.*, 145 F.3d 505, 508 n.6 (2d Cir. 1998) (citing *Lambert v. Kysar*, 983 F.2d 1110, 1112 n. 1 (1st Cir. 1993)).    However, since the Angelles do not seek dismissal upon the basis of such clauses, but rather their invalidity, the Angelles submit that their argument is more appropriately brought pursuant to a Rule 12(b)(3) motion to dismiss for improper venue.    *See Indymac Mortgage Holdings, Inc. v. Reynad*, 167 F.Supp.2d 222, 242 n.23 (D. Conn. 2001) (*obiter dictum*) (noting that Rule 12(b)(3), and not Rule 12(b)(6), is the more appropriate mechanism since, unlike the facts underlying *Evolution Online System, Inc.*, the moving party conceded the existence of a forum selection clause).    *See also Continental Ins. Co. v. M/V Orsula*, 354 F.3d 603, 607-08 (7th Cir. 2003) (citing *Frietsch v. Refco, Inc.*, 56 F.3d 825, 830 (7th Cir. 1995); *Lipcon v.*

*Underwriters at Lloyd's, London*, 148 F.3d 1285, 1290 (11th Cir. 1998); *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 207 (7th Cir. 1993)).[4]

**A.    *New York law is inapplicable because New York lacks "sufficient contacts" with the transaction.***

Although New York permits contractual choice of law and forum among parties to a contract, "this freedom of choice on the part of the parties is *not* absolute." *Estee Lauder Companies, Inc. v. Batra*, 430 F.Supp.2d 158, 170 (S.D.N.Y. 2006) (emphasis added).  This Court has previously noted that "[t]o determine the appropriateness of the parties' choice of law, New York follows the 'substantial relationship' approach, as stated in Restatement (Second) of Conflicts of Law § 187." *Id.*  Section 187 provides that

> [t]he law of the state chosen by the parties to govern their contractual rights and duties will be applied . . . unless either (a) the chosen state has no substantial relationship to the parties . . . or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state.

*Id.* (quoting *S. Leo Harmonay, Inc. v. Binks Mfg. Co.*, 597 F.Supp. 1014, 1025 (S.D.N.Y. 1984)).  *See also* RESTATEMENT (SECOND) OF CONFLICTS OF LAW § 187 (1971).  Accordingly, New York courts will generally apply the parties' contractually chosen law "*if the [chosen] state has sufficient contacts with the transaction.*" *Batra*, 430 F.Supp.2d at 170 (quoting *Zerman v. Ball*, 735 F.2d 15, 20 (2d Cir. 1984) (citations omitted)) (emphasis added).  *See also Hartford Fire*

---

[4]    Nevertheless, the Angelles recognize the Second Circuit's previous holding in *Evolution Online System, Inc.*  Should this Court conclude that the proper vehicle for challenging a contractual choice of law and forum selection clause is a Rule 12(b)(6) motion, the Angelles repeat and re-urge the same arguments in their Motions to Dismiss pursuant to Rule 12(b)(6) and respectfully request that this Court fully consider these arguments therein.

*Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd.*, 230 F.3d 549, 556 (2d Cir. 2000) ("Absent fraud or violation of public policy, a court is to apply the law selected in the contract *as long as the state selected has sufficient contacts with the transaction.*" (emphasis added)). Therefore, although New York courts generally apply contractual choice of law clauses, this favorable rule presumes, as an initial matter, that the state has sufficient contacts with the transaction. Here, New York does not.

While Section 10.10 of the SPA provides for the application of New York law, New York lacks not just "sufficient contacts," but *any* contacts whatsoever to the subject matter of this litigation. ATC's own allegations in its Complaint support the Angelles' position:   ATC purchased the stock of a *Louisiana* corporation (D&D Pipe), from *Louisiana* residents (the Angelles), for the purposes of engaging in business *in Louisiana*. ATC (a Delaware corporation based in New Jersey) hired Dean Angelle under the Employment Agreement to assist in running the operations *in Louisiana*. The Angelles signed the various agreements *in Louisiana* and performance thereof was to occur *in Louisiana*.

Additionally, ATC's claims herein arise out of alleged misdeeds, misrepresentations, and misbehavior *in Louisiana*. ATC premises its claims on alleged acts or omissions *in Louisiana*, not New York. It cannot be said that New York has "sufficient contacts with the transaction" such that New York law should apply. Therefore, the Angelles respectfully request that this Court refuse to enforce the choice of law clause providing for the application of New York law to the present dispute. The parties' choice is "not absolute." *Batra*, 430 F.Supp.2d at 170.

**B.    *Louisiana law should apply to the present action.***

Since the contractual choice of law selection cannot apply in this matter given New York's lack of sufficient contacts, and pursuant to the "substantial relationship" approach as outlined in Restatement (Second) of Conflicts of Law § 187, this Court should apply Louisiana

law to the present action. *See* RESTATEMENT (SECOND) OF CONFLICTS OF LAW § 187.    In

determining which state's substantive law should apply, "New York courts apply the contractual

'grouping of contacts' analysis." *Schwartz v. Twin City Fire Ins. Co.*, 492 F.Supp.2d 308, 327

(S.D.N.Y. 2007).  This analysis considers factors such as the place of contracting, the place of

performance, and the place of the alleged breach. *See id.*

    As noted *supra*, Louisiana has a substantial relationship to the parties and has a

"materially greater interest than the chosen state." *Batra*, 430 F.Supp.2d at 170.  The Angelles

and the acquired corporation, D&D Pipe, are Louisiana citizens.  The events leading to execution

of the stock purchase occurred in Louisiana.  ATC's due diligence of D&D Pipe took place in

Louisiana.    The parties anticipated performance of the various agreements in Louisiana.

Similarly, the events constituting the basis for ATC's claims, if true, arise out of transactions or

occurrences in Louisiana. *See Schwartz*, 492 F.Supp.2d at 327.  As such, the State of Louisiana

has a significant, if not substantial, interest in entertaining the current dispute between its own

citizens about the sale of a Louisiana corporation and a foreign corporation engaging in business

in that State.  Indeed, neither the parties nor the subject matter of this litigation have any contacts

to New York whatsoever.  Instead, the Angelles respectfully request that this Court apply the

laws of the State of Louisiana.

C.    *Under Louisiana law, venue in New York is improper because a party may not*
      *waive objections to venue prior to the institution of an action.*

    Article 44(A) of the Louisiana Code of Civil Procedure provides that "[a]n objection to

the venue may not be waived prior to the institution of the action."  LA. CODE CIV. PROC. art.

44(A) (2007).  Importantly, the Code of Civil Procedure, like all legislation in Louisiana, is of

paramount consideration. *See* LA. CIV. CODE ANN. art. 1 cmts. (a), (c) (2007) (noting that

"legislation is the superior source of law in Louisiana").  The United States Court of Appeals for

the Fifth Circuit has previously noted that "[i]t is axiomatic that in Louisiana, courts must begin every legal analysis by examining primary sources of law: the State's Constitution, codes, and statutes. Jurisprudence, even when it rises to the level of *jurisprudence constante*, is a secondary law source in Louisiana." *Prytania Park Hotel, Ltd. v. Gen. Star Indem. Co.*, 179 F.3d 169, 175 (5th Cir. 1999) (internal citation omitted).

In *United Rentals (North America), Inc. v. Myers*, the United States District Court for the District of Connecticut recognized that "Louisiana has, by statute, rendered forum selection clauses void and unenforceable, and evidences a public policy against the use of such clauses." *United Rentals (North America), Inc. v. Myers*, No. 303CV589, 2003 WL 23498385, *1 (D. Conn. May 22, 2003). Ultimately, however, the *Myers* court determined that "the enforceability of the forum selection clause is a matter of federal, not state, law in this Circuit." *See id.* For support, *Myers* noted that the Second Circuit had previously held that "[q]uestions of venue and the enforcement of forum selection clauses are essentially procedural, rather than substantive, in nature." *Jones v. Weibrecht*, 901 F.2d 17, 19 (2d Cir. 1990).

However, the Second Circuit's statement in *Jones* is neither uncontroversial nor is it a particularly "brightline" rule. Instead, this Court has called into doubt the wisdom of the decision in *Jones* on numerous occasions. *See, e.g., Stardad, Inc. v. Lawson Software, Inc.*, No. 04-5554, 2004 WL 2093512, *1 n.2 (S.D.N.Y. Sept. 16, 2004) (*obiter dictum*) (noting that the Second Circuit's holding in *Jones* is "not free from doubt"); *Sun Forest Corp. v. Shvili*, 152 F.Supp.2d 367, 381 n.22 (S.D.N.Y. 2001) (*obiter dictum*) (discussing "whether *Jones* correctly ruled that federal law controls this issue in diversity cases"); *Licensed Practical Nurses, Technicians and Health Care Workers of New York, Inc. v. Ulysses Cruises, Inc.*, 131 F.Supp.2d 393, 395-99 (S.D.N.Y. 2000) (*obiter dictum*). In *Ulysses Cruises, Inc.*, this Court noted that "the

validity of [forum-selection] clauses should be determined by state law, which generally governs substantive questions involving the making and enforcement of contracts." *Ulysses Cruises, Inc.*, 131 F.Supp.2d at 398. Indeed, several Circuits have concluded that the validity of a forum-selection clause is an issue "properly governed by state law." *Id.* (citing the various Circuits that have concluded that such review is governed by state law, including the Third, Fourth, Eighth, and Eleventh Circuits). Accordingly, the Angelles respectfully request that this Court apply Louisiana law to the issue of the validity of the venue clause.

The line between substantive and procedural matters is "notoriously elusive"; nevertheless, although Article 44(A) is found in the Louisiana Code of Civil Procedure, the Article is substantive in nature. *Ulysses Cruises, Inc.*, 131 F.Supp.2d at 396.

Procedural rules govern conduct and procedure *during* a civil action; thus, absent a civil action, rules of procedure are inapplicable. Article 44(A)'s language indicates that it is substantive in nature. There are no circumstances where Article 44(A) could apply *after* the institution of an action: The filing of an action renders Article 44(A) moot. Instead, this provision clearly provides for a substantive limitation on the significant contractual freedom of parties to waive their objections to venue in advance: It governs "the making and enforcing of contracts." *Ulysses Cruises, Inc.*, 131 F.Supp.2d at 398. As a federal court sitting in diversity must apply state substantive law, the Angelles respectfully submit that Article 44(A) of the Louisiana Code of Civil Procedure governs this Court's interpretation of the parties' contractual abilities herein. *See generally Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938).

Section 10.10 of the SPA provides the following, in pertinent part:

> Any action to enforce any of the provisions of this Agreement shall be brought in a court of the State of New York located in the Borough of Manhattan of the City of New York, or in a Federal court located within the Southern District of New York. The

> parties consent to the jurisdiction of such courts and to the service of process in any manner provided by New York law. *Each party irrevocably waives any objection which it may now or hereafter have to the laying of the venue of any such suit, action or proceeding brought in such court and any claim that such suit, action or proceeding brought in such court has been brought in an inconvenient forum . . . .*

(Ex. "1" at § 10.10 (emphasis added)).  The italicized portion of Section 10.10 is a pre-litigation attempt to prevent challenges to the laying of venue in New York.  The parties entered into the SPA, and this provision, on February 1, 2006, over one (1) year prior to the filing of ATC's Complaint.  However, Louisiana Code of Civil Procedure Article 44(A) plainly provides that no party may waive any objection to venue, such as *forum non conveniens*, prior to the institution of an action.  LA. CODE CIV. PROC. art. 44(A).  Since the parties lacked the substantive capacity, under Louisiana law, to waive these objections, Section 10.10 of the SPA is void and unenforceable.  Therefore, the Angelles respectfully request that this Court dismiss this action pursuant to Rule 12(b)(3) for improper venue as ATC is unable to satisfy its burden.

The Angelles submit that the present circumstances are distinguishable from those claims presented in *Jones* and its progeny.  These decisions rely upon the federal law enunciated in *The Bremen v. Zapata OffShore Co*, 407 U.S. 1 (1972). to construe challenges to forum-selection clauses as procedural matters.  *See generally Jones*, 901 F.2d at 19.  Unlike *Myers* and *Jones*, and in the alternative, the Angelles do not object to the enforceability of the forum-selection clause in its entirety; instead, the Angelles challenge the explicit waiver of "any objection." (Ex. "1" at § 10.10).  The Angelles submit that, in the alternative, although Article 44(A) does not eliminate the right to include a forum selection clause, it prohibits parties from waiving *objections*, such as *forum non conveniens*, before a party brings an action.  *See* LA. CODE CIV. PROC. art. 44(A).  Thus, unlike the moving parties in *Jones* and *Myers*, the Angelles argue that the inability of contracting parties to waive *objections* is a matter of substantive state, and not

federal, law, which removes the forum selection clause at issue from analysis under *The Bremen*. Therefore, in the event that this Court determines that Article 44(A) of the Louisiana Code of Civil Procedure does not invalidate the entire forum selection clause *in toto*, the Angelles respectfully submit, in the alternative, that Louisiana law prohibits the waiver of objections contained therein.

**III.    ATC's Complaint Fails to State a Claim Upon Which Relief May Be Granted Because ATC Failed to Plead Fraud with Particularity Pursuant to Rule 9(b)**

Even if the suit is not, at best, premature, which the Angelles expressly deny, this Court should dismiss the Complaint under Rule 12(b)(6) for ATC's noncompliance with Rule 9(b). ATC levels a claim of fraudulent inducement premised upon the Angelles' alleged conduct prior to the Closing date. (Complaint at ¶¶ 13-25, 49-54). Under New York law, a plaintiff claiming fraud must sufficiently plead four elements: "(1) a misrepresentation or a material omission of material fact which was false and known by defendant to be false, (2) was made for the purpose of inducing the plaintiff to rely on it, and (3) was justifiably relied upon by the plaintiff (4) who then suffered an injury as a result of such reliance." *Lemgruber*, 385 F.Supp.2d at 230.[5] These elements, however, "must comply with the heightened pleading standard" of Federal Rule of Civil Procedure 9(b), which requires that fraud claims be stated with particularity. *Granite Partners, L.P. v. Bear, Stearns & Co.*, 58 F.Supp.2d 228, 257 (S.D.N.Y. 1999). "Particularity," as interpreted by this Court, "requires reasonable detail as well as the allegation of facts from

---

[5] Should this Court agree that Louisiana law applies to the present action, the Angelles submit that the elements for fraud under Louisiana law are essentially the same as those stated herein. *See Christensen v. WMA Consumer Servs., Inc.*, No. 03-1545, 2003 WL 22174240, *2 (E.D. La. Sept. 5, 2003). *See also* La. Civ. Code Ann. art. 1953 (2007). *See supra*. II.B.

which a strong inference of fraud reasonably may be drawn." *Brickellbush, Inc.*, 218 F.Supp.2d at 581.    Importantly, a plaintiff must particularly plead "*justifiable* reliance" on the misrepresentation.  New York courts have held that "whether a plaintiff has adequately pleaded justifiable reliance can be a proper subject for a motion to dismiss." *Lemgruber*, 385 F.Supp.2d at 230 (citing *Granite Partners, L.P.*, 58 F.Supp.2d at 259).  *See generally Brown v. E.F. Hutton Group, Inc.*, 991 F.2d 1020, 1032-33 (2d Cir. 1993) (dismissing fraud claims before any discovery was conducted).

Not only must the plaintiff *plead* justifiable reliance, but the plaintiff "must establish actual, direct reliance" upon the misrepresentation.  *Granite Partners, L.P.*, 58 F.Supp.2d at 259. "In evaluating whether a plaintiff has adequately alleged justifiable reliance, a court may consider, *inter alia*, the plaintiff's sophistication and expertise in finance, the existence of a fiduciary relationship, and whether the plaintiff initiated the transaction." *Id.*

Here, ATC's "justifiable reliance" allegations are insufficient; indeed, ATC makes no other "reliance claims," except to say that "ATC relied on the representations made by defendants when they negotiated and executed the SPA," nor does ATC claim that its reliance was "justifiable."  (Complaint at ¶ 50).  Such conclusory and non-specific "reliance" is insufficient under Rule 9(b).

ATC's allegations allegedly supporting its claim for fraudulent inducement are insufficient for another reason:  ATC premises a number of its misrepresentation allegations upon its "information and belief."  (*See* Complaint at ¶¶ 15, 19-20, 23-24).  Such allegations are insufficient under New York law "'unless the facts are peculiarly within the knowledge of the defendants, in which case the complaint must allege facts demonstrating the basis for the information and belief.'" *Nat'l Council of Young Israel v. Wolf*, 963 F.Supp. 276, 281 (S.D.N.Y.

1997) (quoting *Spira v. Nick*, 876 F.Supp. 553, 557 (S.D.N.Y. 1995)). Instead, "*pleadings* must contain sufficient detail to give Defendants notice of the transactions intended to be proven and the elements of the claims." *Manning v. Utils. Mut. Ins. Co.*, 254 F.3d 387, 399 (2d Cir. 2001) (emphasis in original). ATC's Complaint utterly fails this test.

ATC's allegations of fraud contain insufficient detail to provide the Angelles with adequate notice. ATC bases at least five of the misrepresentations on "information and belief" without providing sufficient detail that might alert the Angelles to any one transaction in particular. ATC alleges, on "information and belief," that Dean Angelle "altered or caused the alteration of pipe inspection reports in order to misrepresent the quality of pipe sold to D&D's customers." (Complaint at ¶ 15). It claims that, "on more than one occasion," the Angelles "caused D&D to sell pipe owned by D&D's customers, without their consent, to other D&D customers, without their knowledge, and disguised such sales by replacing pipe they wrongfully sold with that of an inferior quality which they marked with bands and/or stencils corresponding to the grade of pipe sold." (*Id.* at ¶ 19). In Paragraph 20, ATC alleges, on "information and belief," that, "on more than on occasion," the Angelles "fraudulently misrepresented the quality of pipe sold to D&D customers by marking inferior quality pipe with bands and/or stencils indicating that it was of a higher quality than its actual quality." (*Id.* at ¶ 20). Paragraph 23 contains the allegations that, on "information and belief," the Angelles "failed to disclose bribes" that they allegedly paid to "several" customers and "failed to disclose that several of D&D's customers had indicated prior to the Closing that they intended to cease doing business with D&D." (*Id.* at ¶ 23). ATC further alleges, on "information and belief," that the Angelles "failed to disclose the nature of the business relationship of Dean Angelle with, among others, Fortune Operating Company, Russell Vera, PetroFortune and Bayou Sorrel." (*Id.* at ¶ 24). These

accusations, which are based solely upon ATC's "information and belief," are conclusory and speculative. ATC must specify the "time, place, speaker, and . . . content of the alleged misrepresentations" in order to comply with the particular statement of the "circumstances constituting fraud" required by Rule 9(b) of the Federal Rules of Civil Procedure. *See Lavian v. Haghnazari*, 884 F.Supp. 670, 675 (E.D.N.Y. 1995) (quoting *Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir. 1986)). Details regarding specific D&D Pipe customers and other specifics as to the alleged bribes, for example, are certainly required under Rule 9(b). As such, the allegations can hardly qualify as containing ample detail.

Even if this Court determines that the foregoing averments contain facts "within the knowledge of the defendants," ATC must still "allege facts demonstrating the basis for the information and belief." *Wolf*, 963 F.Supp. at 281 (quoting *Spira*, 876 F.Supp. at 557). This requirement alone establishes that ATC failed to state a claim for relief under both a heightened and a relaxed pleading standard. The various assertions contained in ATC's Complaint rely upon "conclusory allegations or legal conclusions masquerading as factual conclusions." *Betancourt*, 2007 WL 2948345 at *2. None of the paragraphs provide the basis for ATC's "information and belief" that the Angelles committed the alleged misrepresentations. Without more, ATC cannot provide "a strong inference" that fraud "reasonably may be drawn." *Brickellbush, Inc.*, 218 F.Supp.2d at 581.

Due to ATC's noncompliance with Rule 9(b) of the Federal Rules of Civil Procedure, this Court should dismiss ATC's claim for fraudulent inducement under Rule 12(b)(6). Alternatively, the Court should require ATC, if it can, to assert any such fraud allegations with particularity.

**IV.    ATC Lacks Standing to Pursue a Claim for Breach of the Employment Agreement**

Finally, under Rule 12(b)(1), ATC lacks standing to assert the breach of a contract to which it is not a party. ATC alleges that Dean Angelle breached the Employment Agreement by conducting himself in a manner contrary to the terms of that agreement. (Complaint at ¶¶ 26-30). Additionally, ATC argues that the Angelles "formed a competing company . . . in violation of their obligations to ATC and D&D." (*Id.* at ¶ 31). ATC omits that the Employment Agreement is between Dean Angelle and D&D Pipe, a non-party, and not ATC.

As discussed *infra*, standing "focuses on whether a plaintiff is the proper party to bring suit." *Student Members of SAME*, 321 F.Supp.2d at 392. Standing consists of three elements: "(1) concrete harm to the plaintiff (2) caused by the challenged actions of the defendant (3) that can be redressed by the Court." *Carey v. Klutznick*, 508 F.Supp. 404, 408 (D.C.N.Y. 1980) (citing *Duke Power Co. v. Carolina Envtl. Study Group*, 438 U.S. 59, 72-74 (1978)). The Angelles respectfully submit that ATC's claim for breach of the Employment Agreement and the non-competition clause therein lacks the first and third elements above.

ATC was not a party to the Employment Agreement at issue. It is well ingrained in New York law that "one corporation will generally not have legal standing to exercise the rights of other associated corporations." *Alexander & Alexander of New York, Inc. v. Fritzen*, 114 A.D.2d 814, 815 (N.Y. App. Div. 1985).[6] Indeed, "a parent corporation and its subsidiary are regarded

---

[6] Should this Court agree that Louisiana law applies to the present action, the Angelles submit that Louisiana law essentially mirrors New York law as enunciated herein. *See, e.g., Calhoun v. Louisiana Materials Co.*, 206 So. 2d 147, 150 (La. App. 4 Cir. 1968). *See also Laitram Machinery, Inc. v. Carnitech/AS*, No. 92-3841, 1993 WL 370624, *1 (E.D. La. Sept. 10, 1993). *See supra.* II.B.

as *legally distinct entities and a contract under the corporation name of one is not treated as that of both.*" *Carte Blanche (Singapore) Pte., Ltd., v. Diners Club Int'l, Inc.*, 2 F.3d 24, 26 (2d Cir. 1993) (emphasis added). ATC is a Delaware corporation, whereas, D&D Pipe is a Louisiana corporation.

Assuming, *arguendo*, that Dean Angelle did breach the Employment Agreement and the associated non-competition clause, which is vehemently denied, ATC, as a non-party thereto, is unable to show that it suffered "concrete harm." The Employment Agreement executed by and between Dean Angelle and D&D Pipe sought to protect the latter from any misconduct of the former. The real party in interest for any breach of contract claim arising out of the Employment Agreement is D&D Pipe. ATC has no rights directly against Dean Angelle under the Employment Agreement and ATC lacks privity.

Additionally, the Louisiana action between Dean Angelle and D&D Pipe already addresses the Employment Agreement in the context of seeking to declare the competition restrictions invalid as a matter of Louisiana law. (*See* Ex. "4"). Consequently, any claims arising out of the Employment Agreement should be litigated, if at all, in the Louisiana action. The Louisiana action was filed prior to this proceeding and is between the parties to that contract. ATC simply lacks standing to assert rights under the Employment Agreement. Accordingly, this Court should dismiss ATC's associated claims for lack of standing under Rule 12(b)(1) as to any alleged breach under the Employment Agreement.

## CONCLUSION

For the foregoing reasons, Dean Angelle and Denise Angelle respectfully request that this Court grant their Motions to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(3), and 12(b)(6), or alternatively stay this proceeding.

Respectfully Submitted,

GREGORY W. O'NEILL (GO 1944)
ELIZABETH A. McCOY (EM 8448)
Hill, Betts & Nash L.L.P.
One World Financial Center
200 Liberty Street, 26th Floor
New York, New York 10281
Telephone:  (212) 839-7000
Facsimile:  (212) 466-0514

AND

*/s/ Eric Michael Liddick*
CARL D. ROSENBLUM (LA Bar No. 02083)
(Admitted *Pro Hac Vice*)
ERIC MICHAEL LIDDICK (LA Bar No. 31237)
(Admitted *Pro Hac Vice*)
Jones, Walker, Waechter, Poitevent,
    Carrère & Denègre, L.L.P.
201 St. Charles Avenue, 49th Floor
New Orleans, Louisiana 70170
Telephone:  (504) 582-8000
Facsimile:  (504) 582-8011
**Attorneys for Dean Angelle and Denise Angelle,**
**Defendants**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been forwarded this day to counsel of record for Argo Turboserve Corporation, ☒ by CM/ECF, ☐ by e-mail, ☐ by telefax, ☐ by hand, and/or ☐ by United States mail.

New Orleans, Louisiana, this 4th day of December 2007.

*/s/ Eric Michael Liddick* _____
ERIC MICHAEL LIDDICK