Steven J. Cohen (SC-1289)
WACHTEL & MASYR, LLP
Attorneys for Plaintiff
110 East 59th Street
New York, NY 10022
(212) 909-9500

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

ARGO TURBOSERVE CORPORATION,          :          07 CV 8410 (RMB)

                      Plaintiff,          :

                -against-          :

DEAN ANGELLE AND DENISE ANGELLE,          :

                    Defendants.          :

------------------------------------------------------------x

## PLAINTIFF'S MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

**WACHTEL & MASYR, LLP**
110 East 59th Street
New York, NY  10022
(212) 909-9500

Attorneys for Plaintiff
Argo Turboserve Corporation

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES……………………………………..………..……..…..….iii

PRELIMINARY STATEMENT…………………………………………….…………...…..1

STATEMENT OF FACTS……………………………………………………..………3

I.      VENUE IN THE SOUTHERN DISTRICT OF NEW YORK IS PROPER
        PURSUANT TO THE FORUM SELECTION CLAUSE CONTAINED IN
        THE STOCK PURCHASE AGREEMENT...…………………………………7

        A.      Whether or not Plaintiff's Chosen Forum is Proper is Governed by
                Federal Law…...……………………………………………………..8

        B.      Even Assuming, *Arguendo*, that Forum Selection Were Not a
                Procedural Matter Governed by Federal Law, the Parties Agreed That
                Their Relationship Should Be Governed by New York Law, and thus
                Louisiana Law Concerning the Enforceability of Forum Selection
                Clauses is Irrelevant…………………...…………………….………………9

        C.      Article 44 Is Inapplicable to Litigation in Federal Court, Has Never Been
                Invoked by A Federal Court to Invalidate a Forum Selection Clause, and
                Louisiana Courts Have Upheld Such Clauses Even Where a Foreign
                Venue Was Designated……………………………………………...…11

II.     ADHERENCE TO SECTION 9.3 OF THE STOCK PURCHASE
        AGREEMENT IS NOT A PREREQUISITE TO THE COMMENCEMENT
        OF THIS ACTION…………………………………………………...……13

        A.      Section 9.3 is Clear, Unambiguous and Must be Enforced According
                to its Plain Meaning ...……………………………………………...14

        B.      Whether Plaintiff was Required to and in Fact Did Comply
                with Section 9.3 of the SPA is a Question of Fact Requiring Trial...……15

III.    PLAINTIFF HAS PLED FRAUD WITH SUFFICIENT PARTICULARITY AS
        REQURIED BY FED. R. CIV. P. 9(b)…..………………………………16

        A.      The Misrepresentations Made by the Angelles are Set Forth
                In Great Detail……………………………………………...…....16

IV.    THE COMPLAINT DOES NOT ALLEGE A BREACH OF THE
       EMPLOYMENT AGREEMENT, THEREFORE DEFENDANTS'
       CLAIM THAT PLAINTIFF DOES NOT HAVE STANDING IS
       UNAVAILING …………………………………...…....................................20

V.     DEFENDANTS INCLUDE FACTS AND DOCUMENTS OUTSIDE
       THE PLEADINGS THAT, IF CONSIDERED BY THE COURT,
       PRECLUDE RESOLUTION OF THIS MOTION PURSUANT TO
       FED. R. CIV. P. 12…....…………………………………………………………21

       CONCLUSION…………………………………………………………………..22

# <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                                    <u>Page(s)</u>

<u>A.W. Fiur Co. v. Ataka & Co.</u>,
    71 A.D.2d 370, 422 N.Y.S.2d 419 (1st Dep't 1979)............................................15

<u>Bank of America National Trust and Savings Association v. Venezolanos</u>,
    740 F. Supp. 260, *aff'd*, 923 F.2d 843 (2d Cir. 1990)......................................10

<u>Braspetro Oil Services Co. v. Modec (USA), Inc.</u>,
    240 Fed. Appx. 612 (5th Cir. 2007)...................................................................8

<u>Creative Waste Management, Inc. v. Capitol Environmental Services, Inc.</u>,
    429 F. Supp.2d 582 (S.D.N.Y. 2006)................................................................16

<u>Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.</u>,
    375 F.3d 168 (2d Cir. 2004)............................................................................14

<u>Granite Partners, L.P. v. Bear, Stearns & Co.</u>,
    58 F. Supp.2d 228 (S.D.N.Y. 1999).................................................................19

<u>IUE AFL-CIO Pension Fund v. Herrmann</u>,
    9 F.3d 1049, *cert. denied*, 513 U.S. 822 (1994)................................................19

<u>Jones v. Weibrecht</u>,
    901 F.2d 17 (2d Cir. 1990)...............................................................................8

<u>Klaxon Co.v. Stentor Electric Manufacturing Co.</u>,
    313 U.S. 487, *cert. denied*, 316 U.S. 685 (1942).................................................9

<u>Licensed Practical Nurses, Technicians and Health Care Workers of N.Y., Inc. v. Ulysses
Cruises, Inc.</u>,
    131 F. Supp.2d 393 (S.D.N.Y. 2000).................................................................8

<u>M/S Breman v. Zapata Off-Shore Co.</u>,
    407 U.S. 1 (1972)...............................................................................8, 9, 12

<u>Manning v. Utils. Mut. Ins. Co.</u>,
    254 F.3d 399 (2d Cir. 2000)............................................................................19

<u>Odyssey Re: (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.</u>,
    85 F. Supp.2d 282, *aff'd*, 242 F.3d 366 (2d Cir. 2001)......................................17

## <u>TABLE OF AUTHORITIES</u> (Cont.)

**<u>Cases</u>**                                                                                                     **<u>Page(s)</u>**

<u>Orix Credit Alliance, Inc. v. Brown</u>,
        No. 93 Civ. 1019 (SWK), 1994 WL 392240, 1994 U.S. Dist. LEXIS 10206
        (S.D.N.Y. July 27, 1994). ...............................................................................................13

<u>Philips Credit Corporation v. Regent Health Group, Inc.</u>,
        953 F. Supp. 482 (S.D.N.Y. 1997)...................................................................................10

<u>Phillips v. Audio Active Ltd.</u>,
        494 F.3d 378 (2d. Cir. 2007)............................................................................................8

<u>Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela</u>,
        991 F.2d 42 (2d Cir. 1993)..............................................................................................13

<u>Rombach v. Chang</u>,
        355 F.3d 164 (2d Cir. 2004)............................................................................................17

<u>Terranova v. State of New York, et al.</u>,
        144 Fed. Appx. 143 (2d Cir. 2005)..................................................................................21

<u>United Rentals (N. Amer.), Inc. v. Myers</u>,
        No. 303CV589, 2003 WL 23498385, 2003 U.S. Dist. LEXIS 25274
        (D. Conn. May 22, 2003). ................................................................................................8

<u>Vallejo Enterprise, L.L.C. v. Boulder Image, Inc.</u>,
        950 So.2d 832 (La. App. 1 Cir. 11/3/06). .......................................................................12

<u>Wexner v. First Manhattan Co.</u>,
        902 F.2d 169 (2d Cir. 1990)............................................................................................17

<u>Williston v. Eggleston</u>,
        379 F. Supp.2d 561 (S.D.N.Y. 2005)..............................................................................15

<u>Zichichi v. Jefferson Ambulatory Surgery</u>,
        No. 07-2774, 2007 WL 3353304, 2007 U.S. Dist. LEXIS 82798 (E.D. La. Nov. 7, 2007).8

**<u>Statutes</u>**                                                                                                  **<u>Page(s)</u>**

Fed. R. Civ. P. 9..................................................................................................................2, 16, 20

Fed. R. Civ. P. 12....................................................................................................................2, 21

N.Y. GEN. OBLIG. § 5-1401 (2007)........................................................................................9, 10

## TABLE OF AUTHORITIES (Cont.)

**Statutes**                                                                **Page(s)**

LA. CODE CIV. PROC. ANN. art. 41 (2007). ........................................................................11

LA. CODE CIV. PROC. ANN. art. 42 (2007). ........................................................................11

LA. CODE CIV. PROC. ANN. art. 44 (2007). ....................................................................7, 8, 11

LA. CODE CIV. PROC. ANN. art. 44(A) (2007)..............................................................11, 12, 13

## PRELIMINARY STATEMENT

Plaintiff Argo Turboserve Corporation ("ATC") respectfully submits this memorandum of law in opposition to the motion by defendants Dean Angelle, and Denise Angelle to dismiss the Complaint.  This action arises out of a stock purchase agreement pursuant to which ATC purchased all of the stock of D&D Pipe & Rentals, Inc. ("D&D") from the defendants.  ATC commenced this action because the defendants defrauded ATC in connection with that transaction and others related to it.  The stock purchase agreement and related transaction agreements all contain New York governing law and exclusive forum selection provisions.

Defendants' motion is wholly without merit because the Federal Rules of Civil Procedure, and case law upon which defendants rely do not even remotely support their arguments.  Specifically, the defendants assert, despite binding precedent which they in fact cite, that issues of forum selection are based on substantive state law as opposed to federal procedural law.  Defendants then argue, despite prior agreement that New York law governs interpretation and enforcement of the stock purchase agreement, that Louisiana law, which purportedly prohibits forum selection clauses, governs this action.  Stunningly, the Louisiana law upon which defendants rely is a state rule of procedure, not substantive law, that even Louisiana courts do not interpret in the manner suggested by the defendants.

Defendants further argue that the stock purchase agreement requires that until they are afforded an opportunity to conduct pre-litigation discovery, ATC may not initiate litigation.  Section 9.3 of the stock purchase agreement, upon which the defendants rely, does afford them an opportunity for inspection, but quite plainly does not condition the initiation of litigation upon completion of such inspection.  Defendants

suggest that should the Court decline to dismiss this action pursuant to § 9.3, it should stay it to allow them to conduct discovery. In essence, defendants are essentially requesting this Court to stay discovery to conduct discovery.

Defendants also claim that ATC's fraud claim was not pled with the particularity required pursuant to Fed. R. Civ. P. 9(b). This argument relies largely on the fact that some of the misrepresentations alleged by ATC were made upon information and belief. Defendants conveniently ignore the fact that ATC alleges several misrepresentations on the basis of actual knowledge, one of which would be sufficient to support its fraud claims. Defendants also suggest that ATC did not sufficiently plead justifiable reliance on their misrepresentations. Such an argument fails. There is no question from the allegations contained in the Complaint that ATC entered into the stock purchase agreement based exclusively on representations made by the defendants. Not only did the defendants expressly state that their representations were complete and accurate, they agreed to indemnify ATC in the event that plaintiff suffered losses on the basis of incomplete or inaccurate representations. ATC's reliance was absolutely justified.

Defendants also claim that ATC does not have standing to sue for breach of the employment agreement between D&D and Dean Angelle. This claim is immaterial because ATC did not bring a claim for breach of such agreement. Finally, despite moving to dismiss pursuant to one or more subsections of Fed. R. Civ. P. 12, a motion which should be decided on the pleadings alone, defendants submitted numerous exhibits with their motion. Tellingly, many of the exhibits submitted by defendants are incomplete; conspicuously absent are several pages wherein the Angelle's consent to this

jurisdiction and venue.  For all of these reasons and the facts and arguments set forth

below, the motion should be denied in its entirety.

<u>**STATEMENT OF FACTS**</u>

On February 1, 2006, a Stock Purchase Agreement ("SPA") was entered into

pursuant to which ATC agreed to purchase from the Angelles all of the issued and

outstanding capital stock of D&D. (Complt. ¶¶ 8, 9).[1]  The closing on the transactions

contemplated by the SPA and the related "Transaction Agreements" defined in §2.19 of

the SPA occurred in March 2006 (the "Closing").[2]  ATC was and is engaged in the

business of providing supply chain management, distribution and consulting services to

the aerospace, utility, industrial, and energy industries.  D&D is a Louisiana corporation

that was engaged in the purchase, sale, refurbishment, and storage of pipe used by the oil

---

[1] All references to the "Complt. ¶__", refer to Plaintiff's Complaint dated September 27,

2007.  (Docket Entry No. 1).  A complete copy of the SPA, and the "Disclosure

Schedule", Exhibit "D" thereto, is attached as Exhibit A to the Declaration of Steven J.

Cohen, Esq., dated December 22, 2007 ("Cohen Dec.").  All references to "Pl. Ex. ___"

refer to those attached to the Cohen Dec.

[2] Defendants attach as exhibits (hereafter "Def. Ex. _") to their memorandum the SPA,

other Transaction Agreements and correspondence that are incomplete and suspect.  The

omissions from defendants' exhibits attached as Transaction Agreements are as follows:

Exhibit 1 (SPA)-pp. 4-15, 17, 18 and 24; Exhibit 2 (Employment Agreement)-pp. 2-3, 6,

9-10; Exhibit 5 (Promissory Note)-pp.4-5; Exhibit 6 (Guaranty)-pp. 3-5.  Curiously,

among the omitted pages from 3 of these Transaction Agreements are the New York

forum selection clauses for each.

industry. (Complt. ¶¶ 6-7).   Both ATC and D&D were represented by counsel in connection with these transactions (Pl. Ex. A; §10.13).   The SPA, the guaranty by ATC (Pl. Ex. D) and Mr. Angelle's employment agreement (Pl. Ex. C) all have New York forum selection and choice of law provisions.

The Wells Fargo Bank division headquartered in New York City financed ATC's acquisition of D&D.   In connection with that financing, Wells Fargo required the defendants to execute a Subordination Agreement at the Closing, which agreement is cross-referenced in the legend atop the promissory note.   A copy of the Subordination Agreement is attached as Exhibit E to the Cohen Dec. Section 16 of that agreement contains New York governing law and forum selection clauses.

Mr. Angelle was hired as an executive of D&D for five years, to lead this newly formed division of ATC and receive an annual base salary of $250,000 plus benefits. (Complt. ¶ 10(c)).   Defendants' entitlement to an earn-out -- projected to exceed $20 million over the contemplated five (5) year term of the employment agreement -- would terminate if Mr. Angelle quit. (Complt. ¶ 10(d)).   Nonetheless, defendants elected to leave all of this money behind because Mr. Angelle quit just 13 months after entering into the employment agreement.

The parties agreed that indemnification was to be their exclusive remedy under the SPA except for fraud or as otherwise provided in the SPA or any of the Transaction Agreements.  (Pl. Ex. A; §9.4).  The indemnification procedure is set out in §9.3:

> 9.3   Notice and Defense of Claims
>
> (a) In the event that any of the parties shall incur or suffer any Losses in respect of which indemnification may be sought by such Party pursuant to the provision of this Section 9, the Party seeking to be indemnified hereunder (the "Indemnified Party") shall assert

a claim for indemnification by written notice (a "Notice") to the Party from whom indemnification is sought (the "Indemnifying Party") stating the nature and basis of such claim.  In the case of Losses arising by reason of any third party claim, the Notice shall be given within thirty (30) days of the filing or other assertion of any such claim against the Indemnified Party, but the failure of the Indemnifying Party to give the Notice within such time period shall not relieve the Indemnifying Party of any liability that the Indemnified Party may have to the Indemnified Party unless the Indemnifying Party is actually prejudiced thereby.

(b) The Indemnified Party shall provide to the Indemnifying Party on request all information and documentation reasonably necessary to support and verify any Losses which the Indemnified Party believes give rise to a claim for indemnification hereunder and shall give the Indemnifying Party reasonable access to all premises, books, records and personnel in the possession or under the control of the Indemnified Party which would have bearing on such a claim.

In accordance with §9.3, on August 14, 2007, ATC sent the Angelles a notice of indemnification alerting them that ATC planned to seek indemnification based upon the losses resulting from the Angelles' multiple breaches of the SPA.  (Def. Ex. 8).

Defendants' counsel responded with requests for further information under Section 9.3(b). (Def. Exs. 9 and 10).  In response, ATC's counsel, by letter dated September 21, 2007, agreed to provide access to the premises, books and records of D&D and informed defendants' counsel that they disagreed that such access must occur before the "contemplated filing of suit by Argo Turboserve" (Def. Ex. 11).  ATC filed the Complaint on September 27, 2007.  Arrangements were then made for defendants and their counsel to inspect documents at D&D's Louisiana office on October 15, 2007. Defendants' characterization of what transpired next is hardly accurate.

Defendants and their counsel descended on D&D's premises on October 15, sought to interview witnesses, without the presence of ATC's counsel, and engaged in

harassment and intimidation. (Pl. Ex. F). Thereafter, ATC produced more than 3,000 pages of documents requested by defendants based upon their inspection at D&D in Louisiana. Defendants also requested the opportunity to inspect documents at ATC's home office in New Jersey. ATC accommodated that request and the inspection occurred on November 19. ATC is now preparing to produce over 9,000 additional documents in response to defendants' requests arising from that inspection. Moreover, ATC this week received from defendants requests for admissions, requests for additional documents and interrogatories under this action.

Defendants' suggestion in their Statement of Facts (pages 3 and 5) that ATC's notice of indemnification and subsequent filing of suit was "retaliatory" is completely misguided. First, ATC has no record of ever receiving the letter from defendants' counsel allegedly sent on May 11, 2007 (Def. Ex. 7; Cohen Dec., ¶ 3). Second, the suit that Dean Angelle filed in Louisiana state court against D&D on September 25 to declare his non-compete unenforceable truly looks like an effort, albeit a meaningless one, for purposes of this suit, to "file first".

As pointed out by defendants, their related entity, as landlord, filed another suit against D&D, after the Complaint in this action was filed, in Louisiana state court alleging breach of the real property lease between them. D&D denies any such breach and is vigorously defending that action. (Cohen Dec., ¶ 4).

Despite ATC's best efforts to overcome the fraud and misrepresentations by defendants as catalogued in the Complaint, and the misguided stewardship of the company by Mr. Angelle before he resigned, D&D was compelled to liquidate its operations in November 2007. (Cohen Dec. ¶ 5).

## POINT I

### VENUE IN THE SOUTHERN DISTRICT
### OF NEW YORK IS PROPER PURSUANT TO THE FORUM SELECTION
### CLAUSE CONTAINED IN THE STOCK PURCHASE AGREEMENT

The SPA and the related Transaction Agreements each contain an unambiguous forum selection and choice of law provision designating the Southern District of New York as the appropriate forum, and New York law as the applicable law. Section 10.10 of the SPA states:

> Governing Law.    In all respects, including all matters of construction, validity, and performance [the SPA] shall be governed by, and construed and enforced in accordance with the laws of the State of New York applicable to contracts made and performed in such state, without regard to the principles thereof regarding conflict of laws. Any action to enforce any of the provisions of this Agreement shall be brought in a court of the State of New York located in the Borough of Manhattan of the City of New York, or in a Federal court located within the Southern District of New York. The parties consent to the jurisdiction of such courts and to the service of process in any manner provided by New York law. Each Party irrevocably waives any objection which it may now or hereafter have to the laying of the venue of any such suit, action or proceeding brought in such court and any claim that such suit, action or proceeding brought in such court has been brought in an inconvenient forum and agrees that service of process in accordance with the foregoing sentences shall be deemed in every respect effective and valid personal service of process upon such Party.

(Pl. Ex. A, § 10.10). Defendants' entire *forum non-conveniens* argument is premised on the palpably incorrect premise that Louisiana state law governs the purely procedural issue of proper forum, thus rendering the forum selection clause invalid. The Louisiana law upon which Defendants rely, LA. CODE CIV. PROC. ANN. art. 44 (2007) ("Article 44"), is a rule of procedure applicable to actions brought in the courts of Louisiana and is

meaningless in litigation pending in a Federal District Court. Indeed, even courts in Louisiana do not apply Article 44 in the manner suggested by Defendants.

A.    **Whether or not Plaintiff's Chosen Forum is Proper is Governed by Federal Law**

Any district court sitting in diversity, whether in Louisiana or New York, will apply Federal, not State law to procedural matters, including proper forum. Jones v. Weibrecht, 901 F.2d 17, 19 (2d Cir. 1990) (holding that "[q]uestions of venue and the enforcement of forum selection clauses are essentially procedural, rather than substantive in nature."); Phillips v. Audio Active Ltd., 494 F.3d 378 (2d. Cir. 2007) (affirming the validity of Jones); Braspetro Oil Services Co. v. Modec (USA), Inc., 240 Fed. Appx. 612 (5th Cir. 2007); Zichichi v. Jefferson Ambulatory Surgery, No. 07-2774, 2007 WL 3353304 at *2, 2007 U.S. Dist. LEXIS 82798 (E.D. La. Nov. 7, 2007) (holding that "[f]ederal law applies to determine the enforceability of forum selection clauses in diversity cases.").[3] Because the issue is one of procedure, the standard set forth in M/S

---

[3] While the defendants cite several cases in support of their theory that the enforceability of forum selection clauses is substantive in nature, they also concede that the law in the Second Circuit on the matter is settled, and afford this Court no basis for ignoring the rule set forth in Jones, 901 F.2d at 19. See also Licensed Practical Nurses, Technicians and Health Care Workers of N.Y., Inc. v. Ulysses Cruises, Inc., 131 F. Supp.2d 393, 396 (S.D.N.Y. 2000) ("Since Jones, right or wrong, is the controlling authority in this circuit, it must be followed, and federal law applied.), United Rentals (N. Am.), Inc. v. Myers, No. 303CV589, 2003 WL 23498385 at * 1, 2003 U.S. Dist. LEXIS 25274 (D. Conn. May

Breman v. Zapata Off-Shore Co., 407 U.S. 1 (1972) applies.  Specifically, a party seeking to renege on its consent to a particular forum must show that

> the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court.  Absent that, there is no basis for concluding that it would be unfair, unjust, or unreasonable to hold that party to his bargain.

Id. at 18.  Here, the defendants cannot, and do not even bother to try, to show that the forum selection clause will deprive them of their day in court.

In short, although defendants take issue with Section 10.10 of the SPA because it limits their ability to object to the forum, they have so objected and have not even come close to carrying their burden.  Defendants' characterization of Section 10.10 of the SPA as a "pre-litigation attempt to prevent challenges to the laying of venue in New York," is misplaced.  Under that logic, all contracts might be described as pre-litigation attempts to enumerate and/or limit the parties' rights.

**B.      Even Assuming, *Arguendo*, that Forum Selection Were Not a Procedural Matter Governed by Federal Law, the Parties Agreed That Their Relationship Should Be Governed by New York Law, and thus Louisiana Law Concerning the Enforceability of Forum Selection Clauses is Irrelevant**

A New York court sitting in diversity must apply the choice of law rules of the State of New York.  Klaxon Co.v. Stentor Electric Manufacturing Co., 313 U.S. 487, *cert. denied*, 316 U.S. 685 (1942).  New York has a choice of law statute which provides a basis for enforcing choice of law provisions that adopt New York law.  Section 5-1401 of the New York General Obligations Law provides:

---

22, 2003) ("[t]he enforceability of the forum selection clause is a matter of federal, not state law in this Circuit.").

> The parties to any contract, agreement or undertaking, contingent or otherwise, in consideration of, or relating to any obligation arising out of a transaction covering in the aggregate not less than two hundred fifty thousand dollars, including a transaction otherwise covered by subsection one of section 1-105 of the uniform commercial code, may agree that the law of this state shall govern their rights and duties in whole or in part, whether or not such contract, agreement or undertaking bears a reasonable relation to this state. This section shall not apply to any contract, agreement or undertaking (a) for labor or personal services, (b) relating to any transaction for personal, family or household services, or (c) to the extent provided to the contrary in subsection two of section 1-105 of the uniform commercial code.

N.Y. GEN. OBLIG. § 5-1401 (2007).

The passage of § 5-1401 "explicitly eliminated the 'contacts' analysis of choice of law provisions in New York."  Bank of America National Trust and Savings Association v. Venezolanos, 740 F. Supp. 260, 264, *aff'd*, 923 F.2d 843 (2d Cir. 1990).  In Bank of America, the plaintiff bank brought a default action against the defendant for failure to repay loans pursuant to a restructuring agreement containing a New York choice of law provision. The court held that

> [i]t is clear that where a contract is for more than $250,000, was entered into after 1984, and contains a choice of law provision designating New York law as controlling on disputes arising out of that contract, N.Y. Gen. Oblig. Law § 5-1401 mandates the enforcement of that choice of law provision.

Id. at 265.  (emphasis added).  Because the statute was enacted in order to ensure that New York courts retain jurisdiction over suits designating New York as the forum, the statute will be given effect, and New York law will apply, "regardless of whether the contract bears a reasonable relation to New York."  Philips Credit Corporation v. Regent Health Group, Inc., 953 F. Supp. 482, 502 (S.D.N.Y. 1997).  In other words, because the

10

parties chose that their relationship be governed by New York law, only substantive New York law, and Federal procedural law, have any bearing on this case.

**C.     Article 44 Is Inapplicable to Litigation in Federal Court, Has Never Been Invoked by A Federal Court to Invalidate a Forum Selection Clause, and Louisiana Courts Have Upheld Such Clauses Even Where a Foreign Venue Was Designated**

Even in the extremely unlikely event that this Court were to ignore binding precedent and apply Louisiana law, Article 44 is no more applicable to this action than is New York's Civil Practice Law and Rules.   Both are rules of procedure governing litigation in their respective State courts.   A plain reading of Article 44 and the application of a little logic demonstrates as much.

Article 44(A), the subsection upon which defendants rely, states, "[a]n objection to the venue may not be waived prior to the institution of the action."  LA. CODE CIV. PROC. ANN. art. 44(A) (2007).  The Louisiana Code of Civil Practice defines "venue" as "the parish where an action or proceeding may properly be brought and tried under the rules regulating the subject."  LA. CODE CIV. PROC. ANN. art. 41 (2007).  "The general rules of venue are that an action against . . . [a]n individual who is domiciled in the state shall be brought in the parish of his domicile; or if he resides but is not domiciled in the state, in the parish of his residence."  LA. CODE CIV. PROC. ANN. art. 42 (2007)

Given that there are 64 parishes in Louisiana and only three Federal Districts, were Article 44 applicable to litigation in Federal Court, only persons living in Orleans Parish, East Baton Rouge Parish, Rapides Parish, Lafayette Parish, Calcasieu Parish, and Ouachita Parish (the six Parishes in which a Federal District Court is present), would be subject to the jurisdiction of Federal Courts.

Defendants do not cite a single case in which any Court has interpreted Article 44(A) to preclude enforcement of a forum selection clause by a federal court sitting in Diversity.  Louisiana courts have upheld forum selection clauses and choice of law provisions that designate foreign law and a foreign forum.  In Vallejo Enterprise, L.L.C. v. Boulder Image, Inc., 950 So.2d 832, 835 (La. App. 1 Cir. 11/3/06), the Court of Appeals for Louisiana's First Circuit upheld a clause wherein an Arizona company and a Louisiana company designated Arizona as the appropriate forum and designated Arizona law as the applicable law.  The Valejo court stated, "[f]orum-selection clauses, or choice-of-exclusive-forum clauses, are *prima facie* valid, legal and binding in Louisiana, and a party seeking to set aside such a provision bears a heavy burden of proof."  As in Valejo, "[Defendants have] pointed to no authority supporting a proposition that commercially sophisticated parties may not limit their disputes to any forum of their choosing."  Id. at 837.

> In determining whether enforcement of a forum-selection clause would be unreasonable or unjust, the party to avoid its enforcement must show that the chosen forum is seriously inconvenient for the trial of the action. Since the claimed inconvenience would generally be foreseeable at the time the freely negotiated agreement was made, the party seeking to escape the clause must demonstrate that trial in the contractual forum will be so gravely difficult and inconvenient that it will for all practical purposes be deprived of its day in court. Mere inconvenience or additional expense should not suffice as proof of hardship since these are burdens that were allocated by the parties' private bargain.

Id. at 836-37 citing M/S Bremen, 407 U.S. at 15-16.  Here, Defendants have failed to show that litigating in New York is so "gravely difficult" that absent a change in venue each will be "deprived [his] day in court." M/S Breman, 407 U.S at 18.

Plaintiff and both defendants are sophisticated persons who were represented by counsel throughout the entire process that resulted in the Closing.  In fact, in each of the Transaction Agreements, defendants, with the advice of counsel, agreed to litigate in New York.  (Pl. Ex. A, § 10.10; Pl. Ex. B, § 10; Pl. Ex. C, § 7.2; Pl. Ex. D, § 12; and Pl. Ex. § 16).  There is no sound reason why defendants should be excused from fulfilling this part of their contractual obligation.  See Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela, 991 F.2d 42 (2d Cir. 1993) ("[a] party who signs a written contract is conclusively presumed to know its contents and to assent to them, and he is therefore bound by its terms and conditions."); see also Orix Credit Alliance, Inc. v. Brown, No. 93 Civ. 1019 (SWK), 1994 WL 392240 at * 4, 1994 U.S. Dist. LEXIS 10206 (S.D.N.Y. July 27, 1994) (holding that "a signatory to a contract is presumed to have read, understood and agreed to be bound by all terms, including the forum selection clauses, in the documents he or she signed").  Defendants' reliance on Article 44(A) to obtain a dismissal is a misplaced attempt to delay these proceedings and to avoid answering the merits of ATC's claims.

## POINT II

### ADHERENCE TO SECTION 9.3 OF THE STOCK PURCHASE AGREEMENT IS NOT A PREREQUISITE TO THE COMMENCEMENT OF THIS ACTION

Not only are defendants' contentions regarding the interpretation of Section 9.3 of the SPA contrary to its plain meaning, but because defendants argue that ATC was required, and failed, to adequately comply with that section, they have raised issues of fact requiring resolution at trial.  Moreover, Section 9.3 of the SPA does not apply where, as here, fraud is alleged.  (Pl. Ex. A, § 9.3).

**A.      Section 9.3 is Clear, Unambiguous and Must be Enforced According to its Plain Meaning**

The indemnification provision in Section 9.3 of the SPA is clear and unambiguous.  Defendants attempt an interpretation which simply does not comport with the plain language of the text. Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 177 (2d Cir. 2004) (where the plain terms of a contract are "'complete, clear and unambiguous,' "the contract should be enforced in accordance with the plain meaning of its terms.").

While defendants characterize the clause as an "exhaustion of remedies provision", Section 9.3 does not contain any language suggesting that the "reasonable access to all premises, books, records and personnel" is a prerequisite to filing suit.  (Pl. Ex. A, § 9.3(b)).  Had the parties intended such a meaning, the clause would have indicated that "access" was required before any subsequent measures were taken. Section 9.3(a) includes a requirement that in the case of third party indemnification, notice shall be given prior to filing suit.  Because the parties included specific limits on the initiation of an action under those circumstances, it stands to reason had they wished to do the same for actions not involving third parties, the text would have indicated so.

Defendants also fail to address the fact that a fraud claim -- ATC's Second Claim in the Complaint -- is expressly not governed by Section 9.3's notice procedure.  As such, there is simply no basis for defendants strained interpretation of Section 9.3 concerning that claim.

Even if Section 9.3 did require that ATC afford defendants access to documents prior to filing suit, ATC has already given defendants and their counsel access to all of the documents of its subsidiary, D&D, at D&D's principal location in Lafayette, LA on

October 15 and in ATC's home office in New Jersey on November 19.  Plaintiff has produced and is in the process of producing thousands of documents in response to requests made by defendants under Section 9.3 alone.  Were the Court to stay this action and allow for further inspection of documents under Section 9.3, defendants could theoretically make requests in perpetuity, as the SPA places no time limits for fulfilling the requirements of Section 9.3.

**B.      Whether Plaintiff was Required to and in Fact Did Comply with Section 9.3 of the SPA is a Question of Fact Requiring Trial**

While "issues of contract interpretation 'are generally matters of law and therefore [are] suitable for disposition on a motion to dismiss,'" defendants' argument that ATC did not adequately comply with that section is, at best, an issue of fact.  Williston v. Eggleston, 379 F. Supp.2d 561 (S.D.N.Y. 2005).

ATC completely disagrees with defendants' interpretation of Section 9.3 as requiring an "exhaustion of remedies" treatment without time limits or specific procedures.  (Defendant's Brief, p. 10).  Even if the Court were to somehow accept defendants' argument and rewrite Section 9.3, in such a case whether ATC has complied with § 9.3 is an issue of fact to be resolved at trial.  See e.g. A.W. Fiur Co. v. Ataka & Co., 71 A.D.2d 370, 375, 422 N.Y.S.2d 419, 423 (1st Dep't 1979) (holding that whether a party's actions constituted breach of an agreement is an issue of fact for trial).

Defendants ask this Court to rewrite the SPA to better suit their defense of this action, and for no reason other than to hinder and delay the prosecution of this action.  Defendants have already served three discovery demands on ATC in this action and have had the benefit of separate document discovery under the SPA, yet now effectively seek a stay of discovery to pursue discovery.  Such a request is silly.  The stay of an action to

allow the parties to exchange documents subject to disclosure pursuant to discovery rules is bizarre, a waste of judicial resources, a waste of time, and inequitable as it will serve only to prejudice ATC's ability to secure discovery from defendants.

## POINT III

### PLAINTIFF HAS PLED FRAUD WITH SUFFICIENT PARTICULARITY AS REQURIED BY FED. R. CIV. P. 9(b)

ATC's claim of fraudulent inducement is well pled and sets forth the elements with adequate particularity to satisfy the requirements of Fed. R. Civ. P. 9(b). The Complaint sets forth at least nine specific misrepresentations made by the Angelles in connection with the SPA, only five of which were based "on information and belief." Only one misrepresentation upon which ATC reasonably relied to its detriment is necessary to satisfy the pleading requirements for fraud in the inducement. Moreover, the five allegations made "on information and belief" concern forgery, bribery, theft, and other matters about which only the defendants have actual knowledge, and of which ATC can, at this time, only infer from other evidence it is in the process of marshalling.

**A.    The Misrepresentations Made by the Angelles are Set Forth In Great Detail**

To recover on a theory of fraudulent inducement under New York law, the plaintiff must prove: (1) misrepresentation of a material fact; (2) falsity of the representation; (3) scienter; (4) reasonable reliance; and (5) damages. Creative Waste Management, Inc. v. Capitol Environmental Services, Inc., 429 F. Supp.2d 582, 607 (S.D.N.Y. 2006). Federal Rule 9(b) requires that a plaintiff state "with particularity" the events giving rise to the fraud. Id.; Fed. R. Civ. P. 9(b). Rule 9(b) requires that a plaintiff allege "(1) the specific statement or omission; (2) the aspect of the statement or omission that makes it false or misleading; (3) when the statement was made; (4) where the

statement was made; and (5) which defendant was responsible for the statement or omission." Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd., 85 F. Supp.2d 282, 293, *aff'd*, 242 F.3d 366 (2d Cir. 2001); see Rombach v. Chang, 355 F.3d 164 (2d. Cir. 2004).  While a plaintiff seeking redress for fraud must plead the "factual basis giving rise to a 'strong inference' of fraudulent intent . . . allegations may be based on information and belief when facts are peculiarly within the opposing party's knowledge." Wexner v. First Manhattan Co., 902 F.2d 169, 172 (2d Cir. 1990).

Defendants apparently take issue primarily with paragraphs 15, 19, 20, 23, and 24.  Paragraph 15 of the Complaint alleges that Dean Angelle altered documents to misrepresent the quality of pipe sold by D&D, and did not disclose that fact to ATC prior to the Closing.  Such an allegation identifies a specific omission, why it was misleading, when and where it was made (i.e. in the SPA at the Closing), and whom made the omission.  Moreover, that defendant forged documents and hid that fact from ATC is a fact "peculiarly within" his own knowledge.  Similarly, paragraph 19 of the Complaint alleges that defendant sold pipe that did not belong to ATC and failed to disclose that fact to ATC.  Paragraph 20 of the Complaint alleges that defendant forged markings on pipe sold by D&D to misrepresent its quality and failed to disclose that fact to ATC. Paragraph 23 of the Complaint alleges that defendant bribed customers to make orders, and failed to disclose that several customers decided, prior to the closing, that they had decided to cease doing business with ATC.  Paragraph 12 of the Complaint fully sets forth Section 2.9 of the SPA, in which defendants specifically represented that:

> The Company has no information, nor is aware of any facts, indicating that any of these customers intend to cease doing business with the Company, or materially alter the

> amount of business that they are presently doing with the
> Company.

(Complt. ¶ 12).

Finally, it is also unclear why the defendants find the allegation that the "Angelles failed to disclose the nature of the business relationship of Dean Angelle with, among others, Fortune Operating Company, Russell Vera, PetroFortune and Bayou Sorrel" insufficient. (Complt. ¶ 24). While Exhibit D of the SPA (the "Disclosure Schedule") lists Cypress Tree, MSF and Mid-Southern Pipe & Supply, Inc. as entities in which "Dean Angelle has an ownership interest", the Disclosure Schedule omits reference to those entities referenced in paragraph 24 of the Complaint in which he holds a pecuniary interest. The precise interest held by Dean Angelle in those entities is a matter peculiarly within his own knowledge.

Each of the aforementioned allegations detail the misrepresentation or omission, by whom each was made, and why each was misleading. (Complt. ¶¶ 15, 19-20, and 23-24). The Complaint contains a reproduction of Section 2.23 of the SPA, the "Full Disclosure Clause" in which the Angelles pledged that:

> None of the representations and warranties made by Sellers, or made
> in any certificate, Disclosure Schedule, or memorandum furnished or
> to be furnished pursuant to this Agreement contains or will contain
> and untrue statement of material fact, or omit and statement of
> material fact the omission of which would be misleading.

(Complt. ¶ 12). Importantly, it was the Angelles' failure to disclose activities outside of the ordinary course of business that constitutes fraud against ATC, not the individual allegations of forgery, theft, etc. Were information about the Angelles' fraud readily obtainable, ATC would not have purchased D&D to begin with. ATC went to great

lengths to describe in the Complaint, with the information it had at the time, the Angelles' fraud in detail.

> The specificity required by Rule 9(b) is distinct from Rule 8(a)'s liberal "plain statement" rule. This distinction serves several purposes: (1) to afford defendant fair notice of the plaintiff's claim and the factual ground upon which it is based; (2) [to] safeguard[] defendant's reputation and goodwill from improvident charges of wrongdoing; and (3) to inhibit the institution of strike suits.  Nevertheless, Rule 9(b) must be read together with rule [8(a)'s requirement that pleadings set forth "a short and plain statement of the claim"].

IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1057, *cert. denied*, 513 U.S. 822 (1994) (citations and quotation marks omitted).  The defendants actually acknowledge that a party need only plead facts to support fraud, "in sufficient detail to give defendants notice of the transactions intended to be proven and the elements of the claims." (Defendant's Brief, p. 21 (citing Manning v. Utils. Mut. Ins. Co., 254 F.3d 399 (2d Cir. 2001)).   ATC's Complaint affords the Angelles with fair notice of ATC's fraud allegations and is specific enough to alleviate any concern that the allegations contained therein are frivolous.

The defendants' argument that ATC failed to adequately plead reliance is patently absurd.  The Angelles expressly represented that the representations made in the SPA were true.  (Complt. ¶ 12, at 2.23).   ATC's decision to proceed to closing was unquestionably based upon its reliance on such representations.   This case is demonstrably different from Granite Partners, L.P. v. Bear, Stearns & Co., 58 F. Supp.2d 228, 257 (S.D.N.Y. 1999) wherein the plaintiff relied on implied representations.  Here, the Complaint explicitly states that ATC relied on the Angelle's representations, and would have insisted on changes to the SPA had it known the truth.  (Complt. ¶¶ 22, 50).

ATC has provided sufficient allegations in the disputed causes of action of the Compliant to satisfy the threshold set forth in Fed. R. Civ. P. 9(b). Should this Court, however, grant defendants' motion to dismiss any or all of the causes of action in the Complaint, ATC respectfully requests leave to replead.

## POINT IV

### THE COMPLAINT DOES NOT ALLEGE A BREACH OF THE EMPLOYMENT AGREEMENT, THEREFORE DEFENDANTS' CLAIM THAT PLAINTIFF DOES NOT HAVE STANDING IS UNAVAILING

Contrary to defendants' assertions, ATC has not included a claim for breach of employment agreement in the Complaint. The Complaint alleges that "Dean Angelle's disruptive tenure as the executive of the Business for little more than a year was a material interference with the rights that ATC obtained under the SPA, and in direct violation of Section 8.4 of that agreement." (Complt. ¶ 40). While it further alludes to the specific activities of Dean Angelle which were in violation of specific provisions of his employment agreement, the Complaint references that behavior only to further highlight defendants' breaches of Section 8.4 of the SPA in which each pledged not to "undertake any course of action which materially interferes in any way with the rights obtained by Buyer [ATC] hereunder or is otherwise inconsistent with the satisfaction of its obligations or agreements set forth in this agreement." (Pl. Ex. A, § 8.4). In the Complaint, ATC makes no claim for damages, nor any other relief, based upon any breach of the employment agreement. However, should ATC determine that it has standing to raise such claims, it reserves its right to do so in the future.

## POINT V

### DEFENDANTS INCLUDE FACTS AND DOCUMENTS OUTSIDE THE PLEADINGS THAT, IF CONSIDERED BY THE COURT, PRECLUDE RESOLUTION OF THIS MOTION PURSUANT TO FED. R. CIV. P. 12

Although styled as a motion pursuant to one or more sub-sections of Fed. R. Civ. P. 12, defendants' motion to dismiss includes evidence outside the pleadings. While ATC believes that the instant motion can and should be decided without reference to defendants' exhibits, ATC has taken the liberty of including additional, and indeed more accurate, versions of the Transaction Agreement, should the Court determine that the instant motion be properly decided pursuant to Rule 56. Terranova v. State of New York, et al., 144 Fed. Appx. 143 (2d Cir. 2005). In addition, some of the exhibits included by defendants were certainly not "incorporated by reference" in ATC's Complaint (Def. Memo, p. 7). Exhibits 3a, 3b, 4 (conceded by defendants not to be so incorporated), 9 and 10 were not incorporated by reference. Moreover, Defendants' Exhibit 7 was never even received by ATC.

## <u>CONCLUSION</u>

Based upon the foregoing reasons, the Court should deny defendants' motion to dismiss, or, alternatively, for a stay in its entirety with prejudice and award such other and further relief as may be just and proper.

Dated: New York, New York
       December 22, 2007

WACHTEL & MASYR, LLP


By:_____/s/_____
        Steven J. Cohen (SC 1289)

110 East 59th Street
New York, New York  10022
(212) 909-9500

Attorneys for Plaintiff
Argo Turboserve Corporation