any of them (collectively the "*Buyer Indemnified Parties*"), harmless from and against any damages, liabilities, losses and expenses (including, but not limited to, reasonable expenses of investigation and reasonable attorneys' fees incurred in defending any claim, including claims by any third party, amounts paid in settlement of any claim or suit, including, Taxes, fines, penalties and interest) whether absolute, accrued or contingent, known or unknown, and whether or not disclosed by Sellers in this Agreement (including the Disclosure Schedule or most recent financial statements) (collectively, "*Loss*" or "*Losses*") which may be sustained or suffered by the Buyer Indemnified Parties, caused by, arising out of, or relating to:

(i) a breach of any representation or warranty made by Sellers in Article 2 herein;

(ii) a failure to perform any covenant made by Sellers in this Agreement;

(iii) any product warranty or product liability claims with respect to products, materials or services produced, invoiced, sold, performed or shipped by the Company on or prior to the Closing Date;

(iv) any employee related matters with respect to any person employed by the Company on or prior to the Closing Date;

(v) any act, omission to act or occurrence (but excluding such acts, omissions to act, and occurrences that are in the ordinary course of business (including, but not limited to, accounts payable in the ordinary course of business), pertaining in any way to the Company on or prior to the Closing Date;

(vi) any negligent act of or breach by the Company (or any of its affiliates or predecessors or any of the respective officers, directors, agents, consultants or employees of Sellers or any of their affiliates or predecessors) with respect to the performance by such parties of services, contracts, agreements, policies or similar undertakings on or prior to the Closing Date (collectively, Section 9.1(a)(i) through (vi), "*Buyer's General Liability Claims*");

(vii) any Taxes pertaining to the conduct or operation of the Company on or prior to the Closing Date, including, without limitation, the transactions contemplated by this Agreement or any of the Transaction Agreements ("*Tax Claims*"); and

(viii) any Environmental Laws, including, without limitation, any release or threatened release of hazardous substances or hazardous materials (as such terms are defined in any Environmental Laws) occurring on or prior to before the Remediation Report Date ("*Environmental Claims*");

20

provided, however, that (A) no indemnification shall be payable by the Sellers with respect to any claims asserted by the Buyer Indemnified Parties after the expiration or termination date prescribed for such claims in Section 9.5 hereof, and (B) the liability of the Sellers for indemnification payable under this Section 9.1(a) shall not exceed (1) for all Tax Claims, fifty percent (50%) of the Total Consideration, (2) for all Environmental Claims, fifty percent (50%) of the Total Consideration; and (3) for all Buyer's General Liability Claims, (i) for the period commencing on the Closing Date through and including the second anniversary of the Closing Date, fifty percent (50%) of the Total Consideration, (ii) after the second (2nd) anniversary of the Closing Date through and including the third (3rd) anniversary of the Closing Date, twenty percent (20%) of the Total Consideration, and (ii) after the third (3rd) anniversary of the Closing Date through and including the fifth (5th) anniversary of the Closing Date, ten percent (10%) of the Total Consideration.

(b)     For purposes of this Agreement, "*Taxes*" means federal, state, local or foreign taxes, assessments, interest, penalties, deficiencies, fees and other governmental charges or impositions (including without limitation, all income tax, unemployment compensation, social security, payroll, sales and use, excise, privilege, property, ad valorem, franchise, license, school and any other tax or similar governmental charge or imposition).

9.2     Indemnification By The Division. The Division agrees to indemnify and hold the Sellers, the Company and its employees, officers, directors, shareholders, members, employees and agents and the successors, heirs and personal representatives of any of them (collectively, the "*Sellers' Indemnified Parties*"), harmless from and against any damages, liabilities, losses and expenses (including, but not limited to, reasonable expenses of investigation reasonable attorney's fees and reasonable expenses of investigation incurred in defending any claim, including claims by a third person, amounts paid in settlement of any claim, or suit, Taxes, fines, penalties and interest) whether absolute, accrued or contingent, known or unknown, and whether or not disclosed by Sellers in this Agreement or on the Disclosure Schedule or most recent financial statements (collectively, "*Loss*" or "*Losses*") which may be sustained or suffered by Sellers' Indemnified Parties, caused by, arising out of, or relating to:

(i)     a breach of any representation or warranty made by Buyer in Article 3 hereof;

(ii)    a failure to perform any covenant made by Buyer in this Agreement;

(iii)   any product warranty or product liability claims with respect to products, materials or services produced, invoiced, sold, performed or shipped by the Division after the Closing Date;

(iv)    any employee related matters with respect to any person employed by the Division after the Closing Date;

 (v) any act, omission to act or occurrence pertaining in any way to the Division after the Closing Date;

 (vi) any negligent act of or breach by the Division (or any of its affiliates or any of the respective officers, directors, agents, consultants or employees of the Division) with respect to the performance by such parties of services, contracts, agreements, policies or similar undertakings after the Closing Date;

 (vii) any Taxes pertaining to the conduct or operation of the Division after the Closing Date, including, without limitation the transactions contemplated by this Agreement or any of the Transaction Agreements; and

 (viii) any Environmental Laws, including, without limitation, any release or threatened release of hazardous substances or hazardous materials (each as defined by any Environmental Law) occurring after the Remediation Report Date.

provided, however, that (A) no indemnification shall be payable by the Division with respect to any claims asserted by the Sellers' Indemnified Parties after the expiration or termination date prescribed for such claims in Section 9.5 hereof, and (B) the aggregate liability of the Division for indemnification payable for any and all Losses under this Section 9.2 shall not exceed fifty percent (50%) of the Total Consideration.

 9.3 Notice and Defence of Claims.

 (a) In the event that any of the parties shall incur or suffer any Losses in respect of which indemnification may be sought by such Party pursuant to the provisions of this Section 9, the Party seeking to be indemnified hereunder (the "*Indemnified Party*") shall assert a claim for indemnification by written notice (a "*Notice*") to the Party from whom indemnification is sought (the "*Indemnifying Party*") stating the nature and basis of such claim. In the case of Losses arising by reason of any third party claim, the Notice shall be given within thirty (30) days of the filing or other assertion of any such claim against the Indemnified Party, but the failure of the Indemnified Party to give the Notice within such time period shall not relieve the Indemnifying Party of any liability that the Indemnifying Party may have to the Indemnified Party unless the Indemnifying Party is actually prejudiced thereby.

 (b) The Indemnified Party shall provide to the Indemnifying Party on request all information and documentation reasonably necessary to support and verify any Losses which the Indemnified Party believes give rise to a claim for indemnification hereunder and shall give the Indemnifying Party reasonable access to all premises, books, records and personnel in the possession or under the control of the Indemnified Party which would have bearing on such claim.

 9.4 Exclusive Remedy. Except in the case of fraud or as otherwise provided in this Agreement or any of the Transaction Agreements, the sole recourse and

exclusive remedy of the Buyer, the Division, and Sellers against each other for claims arising out of this Agreement, whether based on tort, contract, statutory or common law remedy or equitable remedy or otherwise, including but not limited to, any misrepresentation, breach of warranty or otherwise, shall be to assert a claim for indemnification under the indemnification provisions of this Article IX, and the Buyer, the Division, and the Seller covenant that it or they will not seek to obtain any remedy except as provided in this Article IX.

9.5     Survival.

(a)     All representations and warranties made by a Party shall survive through and including the fifth (5th) anniversary of the Closing Date, except that representations and warranties made relating to tax issues shall survive through and including the seventh (7th) anniversary of the Closing Date.

(b)     Each Party's right to assert a claim for indemnification under this Article IX shall survive through and including the fifth (5th) anniversary of the Closing Date, except that each Party's right to make an indemnification claim based on tax issues shall survive through and including the seventh (7th) anniversary of the Closing Date.

(c)     Notwithstanding anything to the contrary contained in this Agreement, if an Indemnified Party shall have delivered a Notice to the Indemnifying Party of one of more claims for indemnification pursuant to this Article 9 in accordance with Section 9.3, the limitations set forth in this Section 9.5 shall not apply to such claims until such claims, and the losses with respect thereto, are finally resolved or settled or a final arbitral award (or other judgment, if applicable) has been issued by an arbitral tribunal (or other tribunal with competent jurisdiction) with respect to such claims.

9.6     Limitations on Indemnification.  For purposes of this Article IX, in calculating the dollar amount limitations on indemnification, Total Consideration shall include all amounts earned during the Term of this Agreement without regard to the date such amounts are earned.  When contingent future earnings are earned, such amounts earned shall be included in the calculation of the indemnification limitation (which are based on a percentage of Total Consideration) and will retroactively apply in the calculation of Total Consideration to reimburse a Party for any indemnification claims made in a timely manner pursuant to this Article IX.

ARTICLE X
MISCELLANEOUS

10.1     Entire Agreement.  This Agreement, including the schedules and exhibits hereto, and the Transaction Agreements, contains the entire understanding among the parties hereto and with respect to the subject matter hereof and supersedes all prior and contemporaneous agreements, understandings, representations, inducements or conditions, express or implied, oral or written, except as set forth herein.  The express

23

terms hereof control and supersede any course of performance and/or usage of the trade inconsistent with any of the terms hereof.

   10.2  Amendment and Waiver. This Agreement may not be modified, amended or supplemented other than by an agreement in writing executed by all parties hereto. No waiver shall be binding unless executed in writing by the Party making the waiver. No waiver of any provisions, breach or default of this Agreement shall be deemed or shall constitute a waiver of any other provision, whether or not similar, nor shall any waiver constitute a continuing waiver.

   10.3  Delays or Omissions. It is agreed that no delay or omission to exercise any right, power or remedy accruing to any Party, upon any breach, default or noncompliance by another Party under this Agreement, shall impair any such right, power or remedy, nor shall it be construed to be a waiver of any such breach, default or noncompliance, or any acquiescence therein, or of or in any similar breach, default or noncompliance thereafter occurring. It is further agreed that any waiver, permit, consent or approval of any kind or character of any breach, default or noncompliance under this Agreement or any waiver of any provisions or conditions of the Agreement must be in writing and shall be effective only to the extent specifically set forth in such writing. All remedies, either under this Agreement or otherwise afforded to any Party, shall be cumulative and not alternative.

   10.4  Assignment. Neither Party hereto may assign any of its rights or obligations hereunder without the prior written consent of the other Party hereto (which consent shall not be unreasonably withheld). This Agreement will be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns.

   10.5  Notices. All notices, requests, demands and other communications required or permitted under this Agreement and the transactions contemplated herein shall be in writing and shall be deemed to have been duly given, made and received on the date when delivered by hand delivery with receipt acknowledged, or upon the next business day following receipt of telex or telecopy transmission, or upon the third day after deposit in the United States mail, registered or certified with postage prepaid, return receipt requested, addressed as set forth below:

    (a)    If to Buyer:

        Argo Turboserve Corporation
        49 Commerce Road
        Carlstadt, New Jersey
        Attention: Clyde Keaton
        Phone:
        Fax:

    (b)    If to Sellers:

Dean and Denise Angelle
100 Blue Ridge Drive
Carencro, Louisiana 70520
Phone: 1-337-896-0413
Fax: 1-337-896-1930

with a copy to:

Perret Doise, APLC
600 Jefferson Street, Suite 1600
Lafayette, Louisiana 70501
Attn: Dennis Doise
Phone: 1-337-262-9000
Fax: 1-337-262-9001

Any Party may alter the addresses to which communications or copies are to be sent by giving notice of such change of address in conformity with the provisions of this Section 10.5 for the giving of notice.

10.6 *Incorporation of Schedules And Exhibits*. All schedules, exhibits and other documents and written information required to be delivered pursuant to this Agreement are incorporated into this Agreement by this reference and are warranted by the Party or Parties which deliver the same to be accurate and complete in all material respects.

10.7 *Expenses*. Each Party will bear its respective expenses and legal fees incurred with respect to this Agreement, and the transactions contemplated hereby.

10.8 *Captions*. The captions contained in this Agreement are for convenience and reference purposes only and shall not affect in any way the meaning and interpretation of this Agreement.

10.9 *Severability*. If any provision of this Agreement, or the application thereof, will for any reason and to any extent be invalid or unenforceable, the remainder of this Agreement and application of such provision to other persons or circumstances will be interpreted so as reasonably to effect the intent of the parties hereto. The parties further agree to replace such void or unenforceable provision of this Agreement with a valid and enforceable provision that will achieve, to the greatest extent possible, the economic, business and other purposes of the void or unenforceable provision.

10.10 *Governing Law*. In all respects, including all matters of construction, validity and performance, this Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of New York applicable

to contracts made and performed in such state, without regard to the principles thereof regarding conflict of laws. Any action to enforce any of the provisions of this Agreement shall be brought in a court of the State of New York located in the Borough of Manhattan of the City of New York, or in a Federal court located within the Southern District of New York. The parties consent to the jurisdiction of such courts and to the service of process in any manner provided by New York law. Each Party irrevocably waives any objection which it may now or hereafter have to the laying of the venue of any such suit, action or proceeding brought in such court and any claim that such suit, action or proceeding brought in such court has been brought in an inconvenient forum and agrees that service of process in accordance with the foregoing sentences shall be deemed in every respect effective and valid personal service of process upon such Party.

      10.11   <u>Counterparts</u>. This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original and all of which shall together constitute one and the same instrument. This Agreement shall become binding when one or more counterparts hereof shall bear the signatures of all of the Parties indicated as the signatories hereto.

      10.12   <u>Attorneys' Fees</u>. In the event that any action or proceeding is brought by any Party to enforce or interpret any provision, covenant or condition contained in this Agreement, the prevailing party in such action or proceeding (whether after trial or appeal) shall be entitled to recover from the Party not prevailing its expenses therein, including reasonable attorneys' fees and allowable costs.

      10.13   <u>Representation</u>. This document is the result of negotiations between Parties, each of whom was represented or had the opportunity to be represented in the transaction, and has had the opportunity to have had the transactional documents reviewed by counsel of their own choice.

      10.14   <u>Right of Offset</u>. Buyer and the Division shall have the right to offset any amounts payable under any Transaction Agreement, by any monies owed to Buyer or the Division by the Sellers. This right shall survive the expiration and termination of this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**BUYER**
ARGO TURBOSERVE CORPORATION

By: ______________________
Name: Clyde Keaton
Title: President

**SELLERS**

By: ______________________
Name: Dean Angelle

By: ______________________
Name: Denise Angelle

**COMPANY**

D & D PIPE AND RENTALS, INC.

By: ______________________
Name: Dean Angelle
Title: President

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**BUYER**
ARGO TURBOSERVE CORPORATION

By: _____
Name:    Clyde Keaton
Title:    President

**SELLERS**

By: *[signature]*
Name:   Dean Angelle

By: *[signature]*
Name:   Denise Angelle

**COMPANY**

D & D PIPE AND RENTALS, INC.

By: *[signature]*
Name:   Dean Angelle
Title:   President

**STOCK PURCHASE AGREEMENT**

## Exhibit D
## Disclosure Schedule

Schedule 2.1   The Company is qualified to do business in the State of Texas where it reports sales and franchise taxes.
The Company reports sales taxes in the State of Mississippi, but has not qualified to do business there.

Schedule 2.2   The Company has the following undisclosed liabilities:
The Company is currently undergoing an Auto Liability Insurance Audit, #DS 0000028236 for the time period of June 13, 2004 to June 13, 2005.

Schedule 2.3   The Company has, and or will prior to Closing, pay off the loan to shareholders. To the extent that the shareholder loan is not fully paid prior to Closing, it will be documented with a promissory note, and interest accrued on the loan after the Closing Date shall not be included as a deduction from the Annual Earn-Out, End of Term Earn-Out, or Flip Fee.

Schedule 2.5   The following property of the Company is held under certain leases:

   Forklifts
   _____

Schedule 2.6   The schedule of Accounts Receivables is attached as Exhibit D-1. The following accounts receivable are either uncollectible or subject to dispute:



   _____

Schedule 2.7   The only intellectual property the Company owns is its logo, a copy of which is attached as Exhibit D-2, and website (_____). The Company has no other Trade Names, Trademarks, Copyrights, or Patents.

Schedule 2.8   The Company has the following bank notes (copies of some of these documents are attached as Exhibit D-3) which encumber the respective property below:

   Whitney National Bank
   -   2004 Chevrolet Suburban, VIN 1GNEC16Z44J172593, Loan #00324
   -   2000 Ford F350, VIN 1FTWW33F6YED19537, Loan #010004000005/00083695
   GMAC
   -   2006 Chevrolet Tahoe, VIN 1GNEC132X6R169211, Loan #024-9083-53261

   -  2006 1500 Crew Cab, VIN 2GCEK13T561231002, Loan #024-9085-55891
   -  2002 GMC Pick-Up Truck, VIN 2GTFK69U821343143, Loan #

  The Company's line of credit with Whitney National Bank is secured by liens against all the Company's accounts receivable, inventory, and Equipment.

Schedule 2.9 See customer list attached as <u>Exhibit D-4</u>.
  Aspen Exploration, one of the Company's customers, filed for Chapter 7 Bankruptcy protection.

Schedule 2.10 The Company is currently under a DEQ remediation order and copies of the relevant documents are attached as <u>Exhibit D-5</u>.
  Also, the Company has been made a party to that certain lawsuit entitled ***Rathborne Properties, L.L.C., et. al. vs. Exxon Mobil Corporation, et. al.***, CDC No. 2001-12081 Division "N," Section 8.

Schedule 2.11 The Company is party to the following lawsuits and/or claims:

  Worker's Compensation claim filed by Alvin Gilbert.

  ***Atlas Tubular, L.P. v. Flash Gas & Oil Southwest, Inc.***, Docket # 2003-10266-A, 22nd Judicial District Court, Parish of St. Tammany, State of Louisiana.

  ***Rathborne Properties, L.L.C., et. al. vs. Exxon Mobil Corporation, et. al.***, CDC No. 2001-12081 Division "N," Section 8

  ***Joe Livings, Jr. v. D & D Pipe Rentals, Inc.***, Docket 2003-09005, District of Louisiana, Office of Workers' Compensation.

Resolved Matters:
  ***D & D Pipe & Rentals, Inc. v. Aspen Exploration, Inc.***, Docket # 04-CV-1279, Federal Court, Western District of Louisiana.

  ***D & D Pipe & Rentals, Inc. v. Aspen Exploration, Inc.***, Docket # 04-CV-976, Federal Court, Western District of Louisiana.

  ***D & D Pipe and Rentals, Inc v. Umma Resources, Inc.***, Docket # 03-CV-273, Federal Court, Western District of Louisiana.

  ***Umma Resources, Inc. v. D & D Pipe & Rentals, Inc.***, Docket # 03-CV-181, Federal Court, Western District of Louisiana.

*Franks International, Inc. v. D & D Pipe & Rentals, Inc.*, Docket # 00-CV-1993, Federal Court, Western District of Louisiana.

*Transtrade International Comercio Importacao Exportacao, Ltda. V. D & D Pipe & Rentals, Inc.*, Docket # 98-CV-1070, Federal Court, Western District of Louisiana.

*Arthur Felscher v. Dean Michael Angelle, et al*, Docket # 2003-2477, 15th Judicial District Court, Parish of Lafayette, Louisiana, State of Louisiana.

*Goldin Associates, LLC v. D &D Pipe & Rentals, Inc.*, Docket # 98-5079, Federal Court.

*Umma Resources, Inc. v. D & D Pipe & Rentals, Inc.*, Docket # 03-CV-33, Federal Court, Southern District of Texas.

*Dean Angelle v. Hanover Insurance Company and Safeway Insurance Company*, Docket # 1993-4863, 15th Judicial District Court, Parish of Lafayette, State of Louisiana.

*Mohammad Ladjevardian v. Dean Angelle and D & D Pipe and Rentals, Inc.*, Docket # 2003367182, Harris County, District Court, State of Texas.

Schedule 2.13  The Company has contracts with the following parties:

    Ken Burton (deer lease)
    Verandas at Old Farm (Houston apt.)
    Angelle Properties, L.L.C. (D&D property)
    Acadiana Bottling Srvc.
    Bellsouth (telephone)
    Grass Roots (lawn maintenance)
    Kentwood Springs (water)
    Verizon Wireless (cell phone)
    Waste Management (trash collection)
    John Deer (forklift lease)
    Aflac (insurance)
    Cintas (rugs)
    AICCO (auto, GL Financing)

**Hunting Camp**
Big Bend Telephone
MCI Long distance
Dish network

Rio Grande electric coop
Sanderson wool commission
Eddins-Walcher

**Houston Apartment**
Southwestern Bell
Reliant energy communication
Time Warner cable
Verandas de Old farm water & sewage
Julie's cleaning service

**D & D Pipe & Rentals**
A-1 professional service (answering service)
American express business card
AT&T calling card
Joe Anderson reports
Ardoin's exterminating
Atmos service (gas)
Cintas first aid & safety
Chevron gas card
Federal express
Fleetcor technologies (fuelman gas cards)
Hibernia MasterCard business card
Judice well service (water well maintenance)
LUS
Petroleum club of Lafayette
Pitney bowes (Stamp machine)
Romero & McGee (CPA)
Thelma Sargent (Office cleaning)
Slemco
Texaco Fleet Card
U.S. postal service (Annual Rental of PO Box)

Copies of certain of these contract documents are attached as <u>Exhibit D-6</u>.

Schedule 2.14   The Employee List is attached as <u>Exhibit D-7</u>.

Schedule 2.15   The Company is currently under a DEQ remediation order for which copies of the relevant documents are attached as <u>Exhibit D-5</u>. Costs associated with the subject remediation were accrued on the Company's year-end financials.

Also, the Company has been made a party to that certain lawsuit entitled *Rathborne Properties, L.L.C., et. al. vs. Exxon Mobil Corporation, et. al.*, **CDC No. 2001-12081 Division "N," Section 8.**

Schedule 2.17  This transaction may constitute a default under the Whitney loan documents.

Schedule 2.21  The Company leases the property it operates its business on from Angelle Properties, L.L.C.

Schedule 2.22  The Company has the following bank notes, copies of some of which are attached as Exhibit D-3.

>   Whitney National Bank Line of Credit #03674001
>   - Loan, 2004 Chevrolet Suburban, VIN 1GNEC16Z44J172593, Loan #00324
>   - Loan, 2000 Ford F350, VIN 1FTWW33F6YED19537, Loan #010004000005/00083695
>   -
>   GMAC
>   - 2006 Chevrolet Tahoe, VIN 1GNEC132X6R169211, Loan #024-9083-53261
>   - 2006 1500 Crew Cab, VIN 2GCEK13T561231002, Loan #024-9085-55891
>   - 2002 GMC Pick-Up Truck, VIN 2GTFK69U821343143, Loan #

>   The Company has the following bank accounts with Whitney National Bank:
>
>   - Operating Account #713820438
>   - Payroll Account #713819987
>
>   The Company's accounting firm has a signature stamp used to sign Company checks in the absence of the Sellers.

Schedule 4.2   See Exhibit D-7.

Other Disclosures:

- There are 3 bill boards on the property which generate revenue that may have at some point been paid to the Company, however, these Lease Agreements are not being transferred in this Agreement as some are assets of the Sellers or one of their other Companies.

- Dean has an ownership interest in the following companies which the Company does business with.

    1.   Cypress Tree
    NEED ADDRESS INFOR

2. MSF
   603 Myra Street
   New Iberia LA 70563-1923
   Attn: Bob Wapnarski

3. Mid-Southern Pipe & Supply, Inc.
   P.O. Box 81381
   Lafayette LA 70598
   Attn: Hugh Brasier

4. _____