**Gregory W. O'Neill** (GO 1944)
**Elizabeth A. McCoy** (EM 8448)
Hill, Betts & Nash L.L.P.
One World Financial Center
200 Liberty Street, 26th Floor
New York, New York 10281
Tel.:  (212) 839-7000
Fac.:  (212) 466-0514

**Carl D. Rosenblum** (LA Bar No. 02083) (Admitted *Pro Hac Vice*)
**Eric Michael Liddick** (LA Bar No. 31237) (Admitted *Pro Hac Vice*)
Jones, Walker, Waechter, Poitevent,
   Carrère & Denègre, L.L.P.
201 St. Charles Avenue, 49th Floor
New Orleans, Louisiana 70170
Tel.:  (504) 582-8000
Fac.:  (504) 582-8011

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **ARGO TURBOSERVE CORPORATION,**<br><br>                               **Plaintiff,**<br><br>**versus**<br><br><br>**DEAN ANGELLE AND DENISE ANGELLE,**<br><br>                               **Defendants.** | **CASE NO. 07 CIV 8410 (RMB) (GWG)**<br><br>**ECF**<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S AMENDED COMPLAINT AND ALTERNATIVELY FOR STAY** |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTIONS TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT AND ALTERNATIVELY FOR STAY**

# Table of Contents

**Page**

FACTUAL SUMMARY ................................................................................................. 1

STANDARDS APPLICABLE TO MOTIONS TO DISMISS ...................................... 5

    I.      Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction ............ 5

    II.     Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim .............................. 6

    III.    Rule 12(b)(7) Motion to Dismiss for Failure to Join a Party Under Rule 19 ......... 7

ARGUMENT .............................................................................................................. 9

    I.      ATC's Amended Complaint Fails to State a Claim Upon Which Relief May Be Granted Because ATC's Suit is, At Best, Premature ................................ 9

    II.     ATC's Amended Complaint Fails to State a Claim Upon Which Relief May Be Granted Because Many of the Claims for Relief Are Duplicative ......... 12

          A.     ATC's claim of fraudulent inducement is not sufficiently distinct from ATC's indemnification claim and should therefore be dismissed ................................................................................................ 13

          B.     ATC's other new claims are not sufficiently distinct from ATC's exclusive indemnification claim and should therefore be dismissed ........ 14

          C.     ATC's claim for breach of fiduciary duty is duplicative of its breach of Employment Agreement claim and should therefore be dismissed ................................................................................................ 15

    III.    ATC's Amended Complaint Fails to State a Claim Upon Which Relief May Be Granted Because ATC (Again) Fails to Plead Fraud with Particularity .................................................................................................... 16

    IV.    ATC Lacks Standing to Pursue a Claim for Losses Incurred Under the Lease ............................................................................................................... 19

    V.     ATC Failed to Join a Necessary Party in This Matter – D&D Pipe ..................... 21

CONCLUSION ........................................................................................................... 25

EXHIBITS

    EXHIBIT 1:   STOCK PURCHASE AGREEMENT
    EXHIBIT 2:   LEASE AGREEMENT

EXHIBIT 3a:  VERIFIED PETITION FOR INJUNCTIVE RELIEF AND ISSUANCE OF TRO AND DAMAGES FOR BREACH OF LEASE AGREEMENT

EXHIBIT 3b:  JOINT MOTION TO HOLD ACCOUNTS IN ESCROW

EXHIBIT 3c:  FIRST AMENDED AND RESTATED PETITION FOR DAMAGES FOR BREACH

EXHIBIT 4:   PROMISSORY NOTE

EXHIBIT 5:   GUARANTY

EXHIBIT 6:   EXECUTIVE EMPLOYMENT AGREEMENT

EXHIBIT 7a:  NOTICE OF RESIGNATION

EXHIBIT 7b:  ACCEPTANCE OF RESIGNATION

EXHIBIT 8:   NOTICE OF INDEMNIFICATION

EXHIBIT 9:   SEPTEMBER 5, 2007 LETTER

EXHIBIT 10:  SEPTEMBER 12, 2007 LETTER

EXHIBIT 11:  SEPTEMBER 21, 2007 LETTER

TABLE OF AUTHORITIES

**Cases**

*Achtman v. Kirby, McInerney & Squire, LLP*
    464 F.3d 328, 337 (2d Cir. 2006) ....................................................... 7

*Alexander & Alexander of New York, Inc. v. Fritzen*
    114 A.D.2d 814, 815 (N.Y. App. Div. 1985) ................................... 20

*Arnold Chevrolet LLC v. Tribune Co.*
    No. 04-3097, 2007 WL 2743490 (E.D.N.Y. Sept. 17, 2007) ........................................... 17

*Associated Dry Goods Corp. v. Towers Fin. Corp.*
    920 F.2d 1121, 1124 (2d Cir. 1990)..................................................... 8

*Bank of Am. Corp. v. Lemgruber*
    385 F.Supp.2d 200, 217 (S.D.N.Y. 2005) ................................. passim

*Bear, Stearns Funding, Inc. v. Interface Group-Nevada, Inc.*
    No. 03-8259, 2007 WL 1988150 (S.D.N.Y. July 10, 2007)............................................ 9

*Betancourt v. City of New York HRA/DSS*
    No. 07-2165, 2007 WL 2948345 (S.D.N.Y. 2007)..................................................... 7, 19

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*
    98 F.3d 13, 20 (2d Cir. 1996)........................................................... 13

*Bullmore v. Banc of Am. Securities, LLC*
    485 F.Supp.2d 464, 469 (S.D.N.Y. 2007) ................................. 15, 16

*Carey v. Klutznick*
    508 F.Supp. 404, 408 (D.C.N.Y. 1980) ........................................... 19

*Carte Blanche (Singapore) Pte., Ltd. v. Diners Club Int'l, Inc.*
    2 F.3d 24, 26 (2d Cir. 1993)............................................................. 20

*City of Pittsburgh v. West Penn Power Co.*
    147 F.3d 256, 263 n.13 (3d Cir. 1998), cert. denied, 532 U.S. 1038 (2001) .................... 7

*Cmty. Health Care Ass'n of New York v. Mahon*
    106 F.Supp.2d 523, 529 (S.D.N.Y. 2000) ......................................... 9

*Columbus Park Corp. v. Dept. of Hous. Pres. & Dev.*
    80 N.Y.2d 19, 31 (N.Y. 1992) ......................................................... 11

*Crouse-Hinds Co. v. InterNorth, Inc.*
    634 F.2d 690, 701 (2d Cir. 1980).................................................... 24

*Doug Grant, Inc. v. Greater Bay Casino Corp.*
    232 F.3d 173, 184 (3d Cir. 2000)................................................................. 7

*Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*
    261 F.Supp.2d 293, 294 (S.D.N.Y. 2003) ......................................... 6

*DynCorp v. GTE Corp.*
    215 F.Supp.2d 308, 325 (S.D.N.Y. 2002) ....................................... 14

*Envirotech Corporation v. Bethlehem Steel Corporation*
    729 F.2d 70, 76 (2d Cir. 1984)....................................................... 25

*First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.*
    219 F.Supp.2d 576, 581 (S.D.N.Y. 2002) ................................ 17, 19

*FW/PBS, Inc. v. City of Dallas*
    493 U.S. 215, 231 (1990)................................................................ 6

*Global Disc. Travel Servs., LLC v. Trans World Airlines, Inc.*
    960 F.Supp. 701, 704 (S.D.N.Y. 1997)............................... 6, 8, 22, 23

*Granite Partners, L.P. v. Bear, Stearns & Co.*
    58 F.Supp.2d 228, 257 (S.D.N.Y. 1999) ................................. 16, 17

*Hodel v. Irving*
    481 U.S. 704, 711 (1987)................................................................ 6

*Holland v. Fahnestock & Co., Inc.*
    210 F.R.D. 487, 495 (S.D.N.Y. 2002) ..................................... 7, 8, 24

*LaSalle Bank Nat. Ass'n v. Merrill Lynch Mortg. Lending, Inc.*
    No. 04-5452, 2007 WL 2324052 (S.D.N.Y. Aug. 13, 2007)............................ 9

*Lavian v. Haghnazari*
    884 F.Supp. 670, 675 (E.D.N.Y. 1995) ....................................... 18

*Local Union 813 v. Waste Mgmt. of New York, LLC*
    469 F.Supp.2d 80, 87 (E.D.N.Y. 2007) ......................................... 9

*Luce v. Edelstein*
    802 F.2d 49, 54 (2d Cir. 1986)...................................................... 18

*Manning v. Utils. Mut. Ins. Co.*
    254 F.3d 387, 399 (2d Cir. 2001).................................................. 17

*Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc.*
    500 F.3d 171 (2d Cir. 2007)......................................................... 14

*Nat'l Council of Young Israel v. Wolf*
963 F.Supp. 276, 281 (S.D.N.Y. 1997)....................................................... 17, 19

*Potomac Elec. Power Co. v. Babcock & Wilcox Co.*
54 F.R.D. 486, 492-93 (D. Md. 1972) ............................................................. 25

*Prescription Plan Serv. Corp. v. Franco*
552 F.2d 493, 496 (2d Cir. 1977)...................................................................... 8

*Provident Tradesmens Bank & Trust Co. v. Patterson*
390 U.S. 102, 118 (1968)............................................................................. 8, 24

*Ricciuti v. NYC Transit Auth.*
941 F.2d 119, 123 (2d Cir. 1991)...................................................................... 7

*Rivoli v. Gannett Co.*
327 F.Supp.2d 233, 239 (W.D.N.Y. 2004) ...................................................... 7

*Rosenblatt v. Christie, Manson & Woods, Ltd.*
No. 04-4205, 2005 WL 2649027, (S.D.N.Y. Oct. 14, 2005)........................... 13

*Scholastic, Inc. v. Harris*
259 F.3d 73, 82 (2d Cir. 2001)......................................................................... 9

*Schonfeld v. Raftery*
335 F.Supp. 846, 852 (S.D.N.Y. 1971)........................................................... 21

*Spira v. Nick*
876 F.Supp. 553, 557 (S.D.N.Y. 1995)...................................................... 17, 19

*Student Members of SAME v. Rumsfeld*
321 F.Supp.2d 388, 392 (D. Conn. 2004)..................................................... 6, 19

*Tasini v. New York Times Co.*
84 F.Supp.2d 350, 353 (S.D.N.Y. 2002) ......................................................... 6

*Textiles Network Ltd. v. DMC Enters., LLC*
No. 07-393, 2007 WL 2460767 (S.D.N.Y. Aug. 31, 2007)............................ 13

*Thompson v. Cty. of Franklin*
15 F.3d 245, 247 (2d Cir. 1994)....................................................................... 6

*Travelers Indem. Co. v. Household Int'l, Inc.*
775 F.Supp. 518, 527 (D. Conn. 1991)........................................................... 22

*Varo, Inc. v. Alvis PLC*
691 N.Y.S.2d 51, 55 (N.Y. App. Div. 1999) .................................................. 13

*William Kaufman Org., Ltd. v. Graham & James LLP*
    703 N.Y.S.2d 439, 442 (N.Y. App. Div. 2000) ............................................................... 16

*Zeising v. Kelly*
    152 F.Supp.2d 335, 342 (S.D.N.Y. 2001) ......................................................................... 7

## **<u>Rules</u>**

FED. R. CIV. P. 19(a)(1)........................................................................................................ 22

FED. R. CIV. P. 19(a)(2)(i).................................................................................................... 23

FED. R. CIV. P. 19(a)(2)(ii)................................................................................................... 23

Defendants, Dean Angelle and Denise Angelle (collectively, "the Angelles"), file this Memorandum in Support of their Motions to Dismiss Plaintiff's Amended Complaint and Alternatively for Stay pursuant to Rules 12(b)(1), 12(b)(6), and 12(b)(7) of the Federal Rules of Civil Procedure. As set forth more fully herein, this suit is, at best, premature. Additionally, Plaintiff's claims for relief for alleged fraudulent inducement, breach of the Employment Agreement, breach of fiduciary duty, and losses incurred under the Lease are improperly duplicative, and the requirements of Rule 9(b) of the Federal Rules of Civil Procedure have not been satisfied. Plaintiff also lacks standing as to any claim with respect to the Lease and has failed to join a necessary and indispensable party.

## FACTUAL SUMMARY

Effective February 1, 2006, Argo Turboserve Corporation ("ATC") and the Angelles entered into a Stock Purchase Agreement ("SPA"), whereby ATC purchased the stock of D&D Pipe and Rentals, Inc. ("D&D Pipe"). A copy of the SPA is attached hereto as Exhibit "1". Pursuant to the SPA, D&D Pipe, a corporation devoted to the "selling and refurbishing [of] pipe for oil and gas application," was to be operated as ATC's wholly-owned subsidiary at D&D Pipe's Lafayette, Louisiana location.

ATC agreed to pay the Angelles "Total Consideration" of approximately $8,500,000 consisting of (1) a cash payment of $2,500,000, (2) a cash advance of $1,000,000, which was subject to "Working Capital Adjustments," (3) a promissory note (the "Note") payable to the Angelles for the principal amount of $5,000,000, and (4) the opportunity for an (a) Annual Earn-Out Payment, an (b) End of Term Earn-Out Payment, and a (c) Flip Fee. (*See* Ex. "1" at § 1.2(a)). This proceeding is ATC's improper attempt to be released from its payment obligations to the Angelles.

The SPA contemplated numerous additional agreements, including provisions for a Lease Agreement (the "Lease"). (*See id.* at § 6.11). A copy of the Lease is attached hereto as Exhibit "2". The Lease was executed by and between Angelle Properties, LLC and D&D Pipe, both *non-parties* to this litigation, and governs the responsibilities of D&D Pipe as tenant. Angelle Properties, LLC, after learning that D&D Pipe would be auctioning off substantially all of its assets and concerned about several breaches of the Lease, filed a petition in Louisiana state court seeking a temporary restraining order. A copy of the Verified Petition for Injunctive Relief is attached hereto as "Exhibit 3a". After the parties agreed to place a portion of the auction proceeds in escrow, Angelle Properties, LLC filed its First Amended and Restated Petition for Damages for Breach (the "Louisiana action") of the Lease. A copy of the Joint Motion to Hold Accounts in Escrow and the First Amended and Restated Petition are attached hereto as Exhibit "3b" and "3c," respectively. Discovery is ongoing in the Louisiana action.

In accordance with the SPA, D&D Pipe executed, as maker, the Note, which is payable to the Angelles. A copy of the Note is attached hereto as Exhibit "4". Concurrently, ATC executed a "Guaranty," whereby ATC agreed to act as guarantor, and primary obligor, of "full and timely payment when due by D&D of all Liabilities." A copy of the Guaranty is attached hereto as Exhibit "5". ATC's guarantee was a "guaranty [sic] of payment and not a guaranty [sic] of collection." (*See* Ex. "5" at § 1).

The Note established a payment schedule. (*See* Ex. "4" at § 1(b)). Section 4(a) provided that "the Maker shall default in payment of the principal of this Note, when and as the same shall become due and payable, within thirty (30) calendar days of the date when due," at which point the payees may accelerate payment of the Note. (*See id.* at §§ 4(a), 2(a)). D&D Pipe's first payment in the amount of $1,000,000 was due on February 1, 2007. (*See id.* at § 1(b)).

Subsequently, D&D Pipe failed to make the designated payment within 30 days of February 1, 2007, and the Angelles accordingly notified ATC of D&D Pipe's default.

Pursuant to Section 6.9 of the SPA, Dean Angelle and D&D Pipe entered into a separate Executive Employment Agreement (the "Employment Agreement"). A copy of the Employment Agreement is attached hereto as Exhibit "6." Importantly, ATC, plaintiff herein, is *not* a party to the Employment Agreement. (*See* Ex. "6" at § 1.1).[1] The Employment Agreement contained a term of five years and was subject to termination with or without cause. (*See id.*). On April 2, 2007, Dean Angelle voluntarily sent a Notice of Resignation to ATC, which responded on April 11, 2007 by accepting the same. A copy of the Notice of Resignation and the Acceptance are attached hereto as Exhibits "7a" and "7b," respectively. Section 5.1 of the Employment Agreement sought to establish a broad non-competition restriction, which Dean Angelle asserts is unenforceable as a matter of law. (*See id.* at § 5.1).

On August 14, 2007, in a clear retaliatory move due to the Angelles' efforts to collect on the Note, ATC sent the Angelles a Notice of Indemnification for the first time outlining several perceived breaches of the SPA, and invoking ATC's right to seek indemnification under Article IX of the SPA. A copy of the Notice of Indemnification is attached hereto as Exhibit "8". Article IX contains express rights available to any party who receives an indemnification claim, here the Angelles. Indeed, Section 9.3(b) states:

> The Indemnified Party *shall* provide to the Indemnifying Party on request all information and documentation reasonably necessary to *support* and *verify* any Losses which the Indemnified Party believes give rise to a claim for indemnification hereunder *and shall* give the Indemnifying Party reasonable access to all

---

[1] In its Amended Complaint, ATC asserts for the first time that D&D Pipe has assigned to it all rights and obligations under the Employment Agreement.

premises, books, records *and personnel* in the possession or under the control of the Indemnified Party which would have a *bearing* on such claim.

(Ex. "1" at § 9.3(b) (emphasis added)).  Accordingly, the Angelles seriously disputed ATC's "indemnification" allegations and sought to exercise their express rights under Section 9.3(b).  A copy of the Angelles' September 5, 2007 letter is attached hereto as Exhibit "9".  Relying upon the first clause of Section 9.3(b), the Angelles requested that ATC provide supporting documentation or evidence for its claims.  Incredibly, ATC never responded nor did it provide any support or evidence for the allegations, as required by Section 9.3(b) of the SPA.

On September 12, 2007, the Angelles forwarded a second letter to ATC formally exercising the balance of their rights under Section 9.3(b).  A copy of this letter is attached hereto as Exhibit "10".  The Angelles formally sought "reasonable access to all premises, books, records and personnel" in accordance with Section 9.3(b)'s second clause.  (*See* Ex. "10").  ATC responded and agreed to provide the Angelles with "reasonable access" pursuant to Section 9.3(b).  A copy of ATC's September 21, 2007 letter is attached hereto as Exhibit "11".

On September 27, 2007, two days after Dean Angelle sought to invalidate the broad non-competition restriction in the Employment Agreement in Louisiana state court, ATC filed its Complaint initiating this proceeding.

On October 15, 2007, with ATC's full knowledge and acquiescence, the Angelles visited D&D Pipe's Lafayette, Louisiana location with the intention of fully exercising their rights under Section 9.3(b).  Although ATC permitted review of various boxes of documents, none were identified by ATC's representative as either "verify[ing] any Losses" or "bearing" on ATC's indemnification claims.  Rather, ATC's representative indicated that he was unfamiliar with ATC's Notice of Indemnification and merely allowed the Angelles access to boxes of documents that were then in the process of being forwarded to ATC's New Jersey location.  Moreover,

when the Angelles requested to have reasonable access "to all . . . personnel . . . bearing on such claim," such access was expressly denied. The Angelles expressly reserved their rights.

Similarly, on November 19, 2007, and with ATC's agreement, the Angelles traveled to ATC's New Jersey headquarters with the intent of *partially* exercising their rights. ATC had previously indicated that the Angelles would not be given access to any "personnel." Contrary to the express directive of Section 9.3(b) of the SPA, ATC supplied ninety-three boxes of documents, which were not organized in a manner permitting verification of or support for any of ATC's claims. Once again, the Angelles, recognizing the restricted exercise of their rights under Section 9.3(b), expressly reserved their rights.

Thereafter, on December 5, 2007, the Angelles timely filed their original Motions to Dismiss Plaintiff's Complaint and Alternatively for Stay. (*See* Rec. Doc. Nos. 17-18). After the parties fully briefed the issues, this Court set a Conference for February 5, 2008 to address the Motions to Dismiss and various other discovery issues. (*See* Endorsement, Rec. Doc. No. 24). The evening before this Conference, however, ATC filed its Amended Complaint, thereby rendering the Angelles' then-pending Motions to Dismiss moot. (*See* Rec. Doc. No. 27, 26). Although ATC's Amended Complaint asserts three new claims for relief, ATC did not transmit another Notice of Indemnification pursuant to Section 9.3(a) of the SPA. The Angelles now file the present Motions to Dismiss Plaintiff's Amended Complaint and Alternatively for Stay.

**STANDARDS APPLICABLE TO MOTIONS TO DISMISS**

**I.     Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction**

Although it is unclear whether Rule 12(b)(1) or 12(b)(6) governs a party's dismissal for lack of standing, this Court has concluded that standing is properly addressed on a motion to dismiss for lack of subject matter jurisdiction. *See Bank of Am. Corp. v. Lemgruber*, 385 F.Supp.2d 200, 217 (S.D.N.Y. 2005). Subject matter jurisdiction requires that a district court

possess the "statutory or constitutional power to adjudicate" a claim. *Tasini v. New York Times Co.*, 84 F.Supp.2d 350, 353 (S.D.N.Y. 2002). The Supreme Court has noted that standing is "a jurisdictional prerequisite to a federal court's deliberations." *Hodel v. Irving*, 481 U.S. 704, 711 (1987). Accordingly, an action warrants dismissal where the plaintiff lacks the "constitutional standing to pursue a claim" as the lack of standing robs the court of its power to adjudicate a claim. *See Student Members of SAME v. Rumsfeld*, 321 F.Supp.2d 388, 392 (D. Conn. 2004).

The Second Circuit has also held that standing, "like other jurisdictional inquiries, 'cannot be inferred argumentatively from averments in the pleadings, . . . but rather must appear affirmatively in the record.'" *Thompson v. Cty. of Franklin*, 15 F.3d 245, 247 (2d Cir. 1994) (quoting *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)). As such, ATC bears the ultimate burden of proving the subject matter jurisdiction of this Court by clearly alleging "'facts demonstrating that [it] is a proper party to invoke judicial resolution of the dispute.'" *Thompson*, 15 F.3d at 247 (quoting *FW/PBS, Inc.*, 493 U.S. at 231). In its analysis, however, a district court is *not* constrained by the pleadings and may consider matters not contained therein. *See Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 261 F.Supp.2d 293, 294 (S.D.N.Y. 2003). ATC is unable to satisfy its burden under this standard as to the claims under the Lease.

## II.     Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

When confronted with a motion to dismiss pursuant to Rule 12(b)(6), a district court must take the facts alleged in the complaint as true. *See Global Disc. Travel Servs., LLC v. Trans World Airlines, Inc.*, 960 F.Supp. 701, 704 (S.D.N.Y. 1997). While a court may only consider facts set forth in the complaint, "the complaint *includes* any written instrument attached as an exhibit *and any statements or documents incorporated by reference*" *therein*. *Lemgruber*, 385 F.Supp.2d at 228 (emphasis added). The Angelles submit that all attachments hereto (with the exception of Exhibits 3a-c, 9-11) were incorporated by reference in ATC's Amended Complaint.

If, after viewing the plaintiff's allegations in the complaint as true, the court determines that "the plaintiff can prove no set of facts in support of his [or her] claim that would entitle him [or her] to relief," then dismissal is warranted. *Id.* (quoting *Ricciuti v. NYC Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)). Such is the case here.

Although the facts as alleged must be viewed in the "most favorable light" to the plaintiff, *Lemgruber*, 385 F.Supp.2d at 228, this does not mean that the Court must "strain to find inferences that are favorable to the plaintiff." *Zeising v. Kelly*, 152 F.Supp.2d 335, 342 (S.D.N.Y. 2001). Furthermore, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." *Betancourt v. City of New York HRA/DSS*, No. 07-2165, 2007 WL 2948345, *2 (S.D.N.Y. 2007) (quoting *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (citation omitted)). A district court is under an obligation not to draw "unreasonable inferences in plaintiff's favor" and should instead consider "allegations in a 'realistic, rather than a slavish, manner.'" *Rivoli v. Gannett Co.*, 327 F.Supp.2d 233, 239 (W.D.N.Y. 2004) (citing *Doug Grant, Inc. v. Greater Bay Casino Corp.*, 232 F.3d 173, 184 (3d Cir. 2000) (quoting *City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263 n.13 (3d Cir. 1998)), *cert. denied*, 532 U.S. 1038 (2001)).

Under the foregoing standards, ATC's Amended Complaint should be dismissed as premature, as seeking claims beyond the exclusive remedy, and as not satisfying the particularity requirements of Rule 9(b). Alternatively, this proceeding should be stayed until the Angelles are able to properly exercise their express rights under Section 9.3(b) of the SPA.

## III.    Rule 12(b)(7) Motion to Dismiss for Failure to Join a Party Under Rule 19

When ruling on a Rule 12(b)(7) motion to dismiss for failure to join an indispensable party, a court "may consider matters outside the pleadings." *Holland v. Fahnestock & Co., Inc.*, 210 F.R.D. 487, 495 (S.D.N.Y. 2002). Analysis under Rule 12(b)(7) involves two prongs.

*Global Disc. Travel Servs., LLC*, 960 F.Supp. at 707.  A court must first determine whether the absent party constitutes a "necessary" party under Federal Rule of Civil Procedure 19(a).  *Id.* Under Rule 19(a), an absent party is "necessary" if:

> (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

FED. R. CIV. P. 19(a) (2007).

If the absent party is "necessary," but joinder of the party would deprive the court of jurisdiction, then a court must proceed to the second prong of the analysis.  *See Global Disc. Travel Servs., LLC*, 960 F.Supp. at 707.  Rule 19(b) sets forth various factors that a court must consider in determining whether the necessary party is "indispensable."  *See id.* at 707.  In *Patterson*, the Supreme Court listed the Rule 19(b) factors:

> (1) whether the party sought to be joined has an interest in having a forum and whether an adequate alternative forum exists; (2) the interest of the party seeking joinder in avoiding "multiple litigation, or inconsistent relief, or sole responsibility for a liability he shares with another;" (3) "the interest of the outsider whom it would have been desirable to join;" (4) "the interest of the courts and the public in complete, consistent, and efficient settlement of controversies."

*Holland*, 210 F.R.D. at 494 (citing *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 118 (1968)).  The weight accorded to these factors depends upon "the facts of [the] given case and in light of the governing equity-and-good-conscience test."  *Associated Dry Goods Corp. v. Towers Fin. Corp.*, 920 F.2d 1121, 1124 (2d Cir. 1990).  *See also Prescription Plan Serv. Corp. v. Franco*, 552 F.2d 493, 496 (2d Cir. 1977) (noting that a "mechanical determination of who is an indispensable party is clearly inappropriate").  Accordingly, where

the absent party is "indispensable," Rule 19(b) permits dismissal of the action.  *See Cmty. Health Care Ass'n of New York v. Mahon*, 106 F.Supp.2d 523, 529 (S.D.N.Y. 2000).  Such is the case here with non-party, D&D Pipe.

## ARGUMENT

I.    **ATC's Amended Complaint Fails to State a Claim Upon Which Relief May Be Granted Because ATC's Suit is, At Best, Premature**

New York law recognizes the ability of parties to a contract to "precisely define their rights and obligations in any way they wish." *Local Union 813 v. Waste Mgmt. of New York, LLC*, 469 F.Supp.2d 80, 87 (E.D.N.Y. 2007).  "Freedom of contract," as it is colloquially known, is a "fundamental contract principle." *Id.*  In upholding this freedom, courts seek "'to effectuate the intention of the parties as evidenced by the language they use[]'" by enforcing "'the terms of the agreement as set down in an integrated, written instrument.'" *LaSalle Bank Nat. Ass'n v. Merrill Lynch Mortg. Lending, Inc.*, No. 04-5452, 2007 WL 2324052, *8 (S.D.N.Y. Aug. 13, 2007) (quoting *Scholastic, Inc. v. Harris*, 259 F.3d 73, 82 (2d Cir. 2001)).  Accordingly, a court should enforce a contract "in accordance with the plain meaning of its terms" where those terms are "complete, clear and unambiguous." *LaSalle Bank Nat. Ass'n*, 2007 WL 2324052 at *8 (internal quotation marks and citations omitted).  Where a contract is "reasonably susceptible of only one meaning, a court is not free to alter the contract to reflect its personal notions of fairness and equity." *Bear, Stearns Funding, Inc. v. Interface Group-Nevada, Inc.*, No. 03-8259, 2007 WL 1988150, *11 (S.D.N.Y. July 10, 2007).

ATC and the Angelles freely entered into the SPA.  Article IX of the SPA governs the parties' right of indemnification.  (*See* Ex. "1" at Art. IX).  Indeed, the indemnification right contained in Article IX represents the *exclusive* remedy available to the contracting parties for such claims, and includes a monetary limit.  (*See id.* at §§ 9.4, 9.1(a)).  Article IX contains a

provision covering "Notice and Defence [sic] of Claims," which enunciates the procedure applicable to a party's claim for indemnification. Importantly, Section 9.3(b) states:

> The Indemnified Party *shall* provide to the Indemnifying Party on request all information and documentation reasonably necessary to *support* and *verify* any Losses which the Indemnified Party believes give rise to a claim for indemnification hereunder *and shall* give the Indemnifying Party reasonable access to all premises, books, records and personnel in the possession or under the control of the Indemnified Party which would have *bearing* on such claim.

(emphasis added). ATC has ignored the Angelles' express rights under this Section.

As noted *supra*, ATC dispatched a Notice of Indemnification on August 14, 2007, and therein referenced Article IX of the SPA. (*See* Ex. "8"). In response, the Angelles transmitted two letters dated September 5, 2007, and September 12, 2007, respectively, which sought to fully exercise their express rights under Section 9.3(b). (*See* Exs. "9", "10"). ATC, however, failed to comply with its obligations and specifically precluded the Angelles from exercising their full rights under Section 9.3(b) both before and after it filed suit herein.

The September 12, 2007 letter asserted that until the Angelles were provided with the "opportunity to reasonably exercise their rights under ¶ 9.3(b) of the Purchase Agreement, any filing of a suit by your client, Argo Turboserve Corporation, in the United States District Court for the Southern District of New York, or anywhere else, would be premature." (Ex. "10"). ATC agreed to provide access, but "disagree[d] with [the Angelles'] claim that the contemplated filing of suit by Argo Turboserve would be premature before that [access] occurs." (Ex. "11"). Through this motion, the Angelles respectfully request the Court to address that issue.

In accordance with its plain meaning, Section 9.3(b) of the SPA is an exhaustion of remedies provision that contemplates access to supporting information and personnel *before* the filing of suit by the Indemnified Party. Any other interpretation renders this Section meaningless

and ineffectual.  If the Indemnified Party may refuse to honor its contractual commitment to provide reasonable access to the Indemnifying Party *before* filing suit, then Section 9.3(b) is displaced entirely by the discovery rules in the Federal Rules of Civil Procedure.  Any "construction which makes a contract provision meaningless is contrary to basic principles of contract interpretation." *Columbus Park Corp. v. Dept. of Hous. Pres. & Dev.*, 80 N.Y.2d 19, 31 (N.Y. 1992).  Consequently, pursuant to Section 9.3(b)'s clear and unambiguous language, suit is premature where the party seeking indemnification files suit *before* the Indemnifying Party exhausts its rights under Section 9.3(b).  The Angelles have not been permitted to do so.

As is apparent from the express language of the SPA, the parties included Section 9.3(b) as a means of potentially avoiding the time and expense of litigation.  If the Indemnifying Party could verify that the Indemnified Party did sustain "Losses," as defined in the SPA, then the Indemnifying Party might indemnify the injured party without the need for expensive and time-consuming litigation.  Section 9.3(b) permits the parties to review support (both documents and people), seek to resolve the dispute, and continue the contractual relationship with relative ease.  Section 9.3(b), then, is about economics and efficiency.  Instead, ATC is on a mission to deplete the Angelles' economic resources by prematurely filing this suit.

Here, it is undisputed that ATC failed to respond to the September 5, 2007 demand for supporting documentation and/or evidence as required.  Additionally, ATC did not afford "reasonable access to *all* premises, books, records *and personnel*," vis-à-vis the second clause, when it denied the Angelles the opportunity to speak with personnel at the Lafayette, Louisiana, and Lyndhurst, New Jersey locations who may have possessed information "bearing on [ATC's] claim."  (emphasis added).  ATC made absolutely no effort to organize the documents in a

manner that would reveal alleged verification for the claimed losses or support for ATC's allegations, nor did the documentation provide any support for ATC's claims.

ATC's suit is premature for yet another fundamental reason. When ATC filed its Amended Complaint, it asserted three new claims for relief: (1) Indemnification for Losses Incurred Under the Lease; (2) Breach of Employment Agreement; and (3) Breach of Fiduciary Duty. (*See* Rec. Doc. No. 27). None of these indemnification claims were mentioned in ATC's indemnification letter of August 14, 2007. As Article IX represents the exclusive remedy available to the contracting parties, and as these claims for relief are new, ATC must again comply with Section 9.3's requirements by giving written notice pursuant to subsection (a) and providing reasonable access under subsection (b). ATC's failure to comply with Section 9.3 with respect to the new allegations further evidences the prematurity of this suit.

Accordingly, the Angelles respectfully request that this Court dismiss ATC's current claim as premature pursuant to Rule 12(b)(6) since the Angelles have not been able to fully exercise their express rights under the SPA. In the alternative, the Angelles respectfully request that this Court stay the current proceedings until such time as the Angelles have exercised their full rights under Section 9.3(b) and the parties are given an opportunity to amicably resolve the "indemnification claims." Any other result is contrary to the parties' bargain as reflected by the language in the freely negotiated SPA.

## II.    ATC's Amended Complaint Fails to State a Claim Upon Which Relief May Be Granted Because Many of the Claims for Relief Are Duplicative

While ATC asserts six semantically different claims for relief, at least four are duplicative of the First Claim for Relief (Indemnification). Therefore, the Angelles respectfully submit that this Court should dismiss the following claims as duplicative and contrary to the

exclusive remedy of indemnification: (1) Fraudulent Inducement; (2) Losses Incurred Under the Lease; (3) Breach of Employment Agreement; and (4) Breach of Fiduciary Duty.

### A.    ATC's claim of fraudulent inducement is not sufficiently distinct from ATC's indemnification claim and should therefore be dismissed.

When a party asserts a breach of contract (indemnification) claim alongside a claim of fraud, "the fraud claim will be dismissed where it is not sufficiently distinct from the breach of contract claim." *Textiles Network Ltd. v. DMC Enters., LLC*, No. 07-393, 2007 WL 2460767, *3 (S.D.N.Y. Aug. 31, 2007). In order to assert both claims simultaneously, the plaintiff must differentiate the two "by (1) demonstrating a legal duty separate from the duty to perform under the contract, (2) demonstrating a fraudulent misrepresentation collateral or extraneous to the contract, or (3) seeking special damages caused by the misrepresentation and unrecoverable as contract damages." *Id.* (citing *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996)). ATC is not able to satisfy this test. Instead, ATC's fraud claim is "merely a disguised contract claim." *Rosenblatt v. Christie, Manson & Woods, Ltd.*, No. 04-4205, 2005 WL 2649027, *11 (S.D.N.Y. Oct. 14, 2005).

ATC seeks indemnification for certain misrepresentations allegedly made by the Angelles *in the SPA*. (*See* Rec. Doc. No. 27 at ¶¶ 15-31). Yet, ATC's claim for indemnification and its claim for fraud are based entirely upon alleged violations of particular Sections and Exhibits to the SPA. (*See, e.g.*, *id.* at ¶¶ 16-18, 22-26, 28-29, 31). As noted in a similar case, "the claim for fraud does not arise out of collateral facts, but is merely duplicative of the claim for indemnification, since it is based on the same facts as underlie the contract claim and is not collateral to the contract." *Varo, Inc. v. Alvis PLC*, 691 N.Y.S.2d 51, 55 (N.Y. App. Div. 1999) (internal quotations and citations omitted).

The Second Circuit has previously addressed a dual pleading of fraudulent inducement and indemnification in the context of a purchase agreement. *See generally Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171 (2d Cir. 2007). After recognizing the *Bridgestone* test, the Second Circuit rejected the duplicative pleading objection because of the existence of facts *extraneous* to the contract. *Id.* at 183-84. Here, however, ATC does not allege facts extraneous to the SPA, and therefore cannot assert both claims simultaneously.

Indeed, Section 10.1 of the SPA makes clear that the SPA "*contains the entire understanding* among the parties . . . and supersedes all prior and contemporaneous agreements, understandings, representations, inducements or conditions, express or implied, oral or written, except as set forth herein." (*See* Ex. 1 at § 10.1 (emphasis added)). As such, ATC's allegations of fraudulent misrepresentations cannot be "collateral or extraneous to the terms of the parties' agreement." *DynCorp v. GTE Corp.*, 215 F.Supp.2d 308, 325 (S.D.N.Y. 2002). Claims of fraud premised upon representations and warranties set forth in a purchase agreement are not "collateral or extraneous," but are instead duplicative. *Id.*

Simply put, ATC's fraud claim, no matter what mask it wears, is, in essence, a contract claim. This is particularly important where the SPA has an express monetary limit on the amount of indemnification claims. (*See* Ex. "1" at § 9.1(a)). Accordingly, the Angelles respectfully submit that this Court should dismiss ATC's claim for fraudulent inducement.

**B.    ATC's other new claims are not sufficiently distinct from ATC's exclusive indemnification claim and should therefore be dismissed**

Article IX contains the exclusive mode of relief for the parties thereto: indemnification. (*See generally* Ex. "1" at § 9.4). Section 9.1 outlines indemnification by the Sellers, here the Angelles, and sets forth the relief available for such indemnification, including indemnification

for "a breach of any representation or warranty made by Sellers in Article 2 herein" and "failure to perform any covenant made by Sellers in this Agreement." (*Id.* at § 9.1).

Since indemnification is the exclusive remedy for non-fraud based claims, ATC's claims for breach of the Employment Agreement, breach of fiduciary duty, and losses incurred under the Lease should be dismissed because they fall within these provisions and are bound by Section 9.4's exclusivity. ATC alleges that Dean Angelle's "disruptive tenure," said tenure being governed by the Employment Agreement, "was a material interference . . . in direct violation of Section 8.4" of the SPA. (*See* Rec. Doc. No. 27 at ¶ 54). Indeed, ATC asserts that the Employment Agreement contains "the exact language . . . as set forth in the SPA." (*Id.* at ¶ 33). ATC's claim for losses incurred under the Lease arises, in ATC's view, "under Section 8.8 of the SPA." (*Id.* at ¶ 89). Finally, ATC's claim for breach of fiduciary duty arises out of Dean Angelle's alleged violation of his Employment Agreement. All three claims arise from and/or are connected to various warranties, representations, and/or covenants allegedly made in the SPA. ATC cannot seek a windfall by pleading all three claims particularly in light of Section 9.4's limitation on indemnification claims. ATC's new claims are duplicative of its exclusive indemnification claim. Therefore, the Angelles respectfully request that this Court dismiss the claim for Breach of Employment Agreement, Breach of Fiduciary Duty, and Losses Incurred Under the Lease.

### C.    ATC's claim for breach of fiduciary duty is duplicative of its breach of Employment Agreement claim and should therefore be dismissed.

Even if ATC's new claims are not duplicative of its exclusive claim for indemnification, which the Angelles expressly deny, ATC's claim for breach of fiduciary duty is redundant and should be dismissed. "Under New York law, claims of . . . breach of fiduciary duty that merely duplicate contract claims must be dismissed." *Bullmore v. Banc of Am. Securities, LLC*, 485

F.Supp.2d 464, 469 (S.D.N.Y. 2007). *See also William Kaufman Org., Ltd. v. Graham & James LLP*, 703 N.Y.S.2d 439, 442 (N.Y. App. Div. 2000) ("A cause of action for breach of fiduciary duty which is merely duplicative of a breach of contract claim cannot stand.").

Here, ATC's claim for breach of fiduciary duty is predicated on the same allegations that support ATC's claim for breach of the Employment Agreement.  ATC is unable to demonstrate any separation or distinction between these two claims:  the same allegations set forth in the Amended Complaint underlie both claims and ATC seeks no distinct damages for either.  Accordingly, ATC's claim for breach of fiduciary duty is nothing more than a disguised claim for breach of the Employment Agreement and should be dismissed for this additional reason.

## III.    ATC's Amended Complaint Fails to State a Claim Upon Which Relief May Be Granted Because ATC (Again) Fails to Plead Fraud with Particularity

This Court should dismiss ATC's claim of fraudulent inducement for another reason: noncompliance with Rule 9(b) of the Federal Rules of Civil Procedure.  Despite the Angelles' objections to the initial Complaint's pleading deficiencies, ATC still has not satisfied Rule 9(b).

ATC's claim of fraudulent inducement is premised upon the Angelles' alleged conduct prior to the Closing date as reflected in representations and warranties set forth in the SPA.  (*See* Rec. Doc. No. 27 at ¶¶ 15-31).  Under New York law, a plaintiff claiming fraud must plead four elements:  "(1) a misrepresentation or a material omission of material fact which was false and known by defendant to be false, (2) was made for the purpose of inducing the plaintiff to rely on it, and (3) was justifiably relied upon by the plaintiff (4) who then suffered an injury as a result of such reliance." *Lemgruber*, 385 F.Supp.2d at 230.  A pleading, however, "must comply with the heightened pleading standard" of Rule 9(b), which requires that fraud claims be stated with particularity.  *Granite Partners, L.P. v. Bear, Stearns & Co.*, 58 F.Supp.2d 228, 257 (S.D.N.Y. 1999).  Particularity "requires reasonable detail as well as the allegation of facts from which a

strong inference of fraud reasonably may be drawn." *First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.*, 219 F.Supp.2d 576, 581 (S.D.N.Y. 2002). Additionally, not only must the plaintiff plead justifiable reliance, but the plaintiff "must establish actual, direct reliance" upon the misrepresentation. *Granite Partners, L.P.*, 58 F.Supp.2d at 259. "In evaluating whether a plaintiff has adequately alleged justifiable reliance, a court may consider, *inter alia*, the plaintiff's sophistication and expertise in finance, the existence of a fiduciary relationship, and whether the plaintiff initiated the transaction." *Id.*

ATC's allegations supporting its claim for fraudulent inducement are legally and factually insufficient: ATC premises a number of misrepresentation allegations upon its "information and belief." (*See* Rec. Doc. No. 27 at ¶¶ 17, 20, 24-25, 28-29). Such allegations are insufficient under New York law "'unless the facts are peculiarly within the knowledge of the defendants, *in which case the complaint must allege facts demonstrating the basis for the information and belief*.'" *Nat'l Council of Young Israel v. Wolf*, 963 F.Supp. 276, 281 (S.D.N.Y. 1997) (quoting *Spira v. Nick*, 876 F.Supp. 553, 557 (S.D.N.Y. 1995)) (emphasis added). Instead, "*pleadings* must contain sufficient detail to give Defendants notice of the transaction intended to be proven and the elements of the claims." *Manning v. Utils. Mut. Ins. Co.*, 254 F.3d 387, 399 (2d Cir. 2001) (emphasis in original). Formal discovery under the Federal Rules of Civil Procedure is *not* a substitute for the requirements of Rule 9(b). *See Arnold Chevrolet LLC v. Tribune Co.*, No. 04-3097, 2007 WL 2743490, *5 (E.D.N.Y. Sept. 17, 2007). ATC's Amended Complaint fails to provide detailed notice of the alleged fraud.

ATC bases at least six of the misrepresentations upon "information and belief" without providing sufficient detail that might alert the Angelles to any one transaction in particular. ATC alleges, upon "information and belief," that: Dean Angelle "altered or caused the alteration of

pipe inspection reports in order to misrepresent the quality of pipe sold to D&D's customers" (Rec. Doc. No. 27 at ¶ 17); Dean Angelle "changed, or caused others to change, bands on pipe from time to time prior to the Closing" (*Id.* at ¶ 20); the Angelles "caused D&D to sell pipe owned by D&D's customers, without their consent, to other D&D customers, without their knowledge, and disguised such sales by replacing pipe they wrongfully sold with that of an inferior quality which they marked with bands and/or stencils corresponding to the grade of pipe sold" (*Id.* at ¶ 24); "on more than one occasion," the Angelles "fraudulently misrepresented the quality of pipe sold to D&D customers by marking inferior quality pipe with bands and/or stencils indicating that it was of a higher quality than its actual quality" (*Id.* at ¶ 25); the Angelles "failed to disclose bribes" that they allegedly paid to "several" customers and/or auctioneers and "failed to disclose that several of D&D's customers had indicated prior to the Closing that they intended to cease doing business with D&D" (*Id.* at ¶ 28); and, the Angelles "failed to disclose the nature of the business relationship of Dean Angelle with, among others, Fortune Operating Company, Russell Vera, PetroFortune, and Bayou Sorrell [sic]." (*Id.* at ¶ 29).

These accusations are Kafkaesque in nature. ATC must specify the "time, place, speaker, and . . . content of the alleged misrepresentations" in order to comply with the particular statement of the "circumstances constituting fraud" required by Rule 9(b). *See Lavian v. Haghnazari*, 884 F.Supp. 670, 675 (E.D.N.Y. 1995) (quoting *Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir. 1986)). Details regarding specific D&D Pipe customers and other specifics as to the alleged bribes, for example, are certainly required. As such, the allegations (whether upon information and belief, or otherwise) can hardly qualify as containing ample detail.

Even if this Court determines that the foregoing averments contain facts "within the knowledge of the defendants," ATC *must still* "*allege facts demonstrating the basis for the*

*information and belief*." *Wolf*, 963 F.Supp. at 281 (quoting *Spira*, 876 F.Supp. at 557) (emphasis added). This requirement alone establishes ATC's failure to state a claim for relief under both a heightened and relaxed pleading standard. The various assertions contained in ATC's Amended Complaint rely upon "conclusory allegations or legal conclusions masquerading as factual conclusions." *Betancourt*, 2007 WL 2948345 at *2. None of the paragraphs provide the basis for ATC's mysterious "information and belief." Without more, ATC cannot provide "a strong inference" that fraud "reasonably may be drawn." *Brickellbush, Inc.*, 219 F.Supp.2d at 581.

Due to ATC's noncompliance with Rule 9(b) of the Federal Rules of Civil Procedure, this Court should dismiss ATC's claim for fraudulent inducement under Rule 12(b)(6).

## IV.    ATC Lacks Standing to Pursue a Claim for Losses Incurred Under the Lease

Pursuant to Rule 12(b)(1), ATC lacks standing to assert any claim for losses allegedly incurred under the Lease. Importantly, neither ATC nor the Angelles are parties to the Lease. ATC alleges that the Angelles are responsible for any remediation necessary as a result of D&D Pipe's failure to comply with applicable environmental laws and regulations. (*See* Rec. Doc. No. 27 at ¶¶ 58-61, 88-90). ATC explicitly notes that two separate and distinct entities – Angelle Properties, LLC and D&D Pipe – are involved in ongoing litigation in Louisiana state court over D&D Pipe's breach of the Lease. (*See id.* at ¶¶ 58-61). However, what ATC fails to tell this Court is that the Lease is solely between Angelle Properties, LLC and D&D Pipe, both non-parties here. ATC simply has no standing under the Lease.

Standing "focuses on whether a plaintiff is the proper party to bring suit," *Student Members of SAME*, 321 F.Supp.2d at 392, and consists of three elements: "(1) concrete harm to the plaintiff (2) caused by the challenged actions of the defendant (3) that can be redressed by the Court." *Carey v. Klutznick*, 508 F.Supp. 404, 408 (D.C.N.Y. 1980). The Angelles respectfully submit that ATC's claim for losses incurred under the Lease lacks all three elements.

Notably, ATC is not a party to the landlord-tenant relationship formed by the Lease. Nevertheless, ATC, in filing its Amended Complaint, advances a claim for relief for losses incurred thereunder.  It is well ingrained in New York law that "one corporation will generally not have legal standing to exercise the rights of other associated corporations."  *Alexander & Alexander of New York, Inc. v. Fritzen*, 114 A.D.2d 814, 815 (N.Y. App. Div. 1985).  Indeed, "a parent corporation and its subsidiary are regarded as *legally distinct entities* and a contract under the corporation name of one is not treated as that of both."  *Carte Blanche (Singapore) Pte., Ltd. v. Diners Club Int'l, Inc.*, 2 F.3d 24, 26 (2d Cir. 1993) (emphasis added).  ATC is a Delaware corporation, whereas D&D Pipe is a Louisiana corporation; and, while the Angelles are members of Angelle Properties, LLC, they are not one and the same.  Nor does ATC even allege it has been "assigned" rights under the Lease since the Lease is not assignable without the consent of Angelle Properties, LLC.  (*See* Ex. "2" at § 17).

ATC is unable to show that it suffered "concrete harm."  The Lease governs the relationship between two non-parties to the present suit.  Thus, the real parties in interest for any claims brought pursuant to the Lease are Angelle Properties, LLC and D&D Pipe, *not* the Angelles and/or ATC.  The rights between the parties to the Lease are currently the subject of the Louisiana action.  ATC has no rights directly against the Angelles (or Angelle Properties, LLC for that matter) under the Lease and concomitantly lacks privity.  Moreover, if any alleged losses arising from the Lease are due to ATC, which the Angelles dispute, those losses are the responsibility of Angelle Properties, LLC, not of the Angelles personally.  ATC simply cannot seek relief on these grounds as the Angelles are not the party that caused any alleged "concrete harm" that ATC must ultimately prove.

Additionally, the Louisiana action already addresses the issue of payment for any necessary remediation resulting from D&D Pipe's breaches of the Lease. (*See* Ex. "2", "3"). Consequently, any claims arising out of the Lease should be, and indeed are being, litigated in the Louisiana action, which is between the proper parties to the Lease. Accordingly, this Court should dismiss ATC's associated claims for lack of standing under Rule 12(b)(1) as to any alleged losses incurred under the Lease.

## V.    ATC Failed to Join a Necessary Party in This Matter – D&D Pipe

The present matter involves several critical documents, chiefly the SPA, the Note, and the Lease. The SPA was executed by and among ATC, the Angelles, and D&D Pipe, who are the "Parties" under the SPA. (*See* Ex. "1"). On the other hand, only D&D Pipe and Angelle Properties, LLC executed the Lease. (*See* Ex. "2"). Finally, D&D Pipe is the maker of the Note, even though ATC guaranteed performance thereof to the Angelles. (*See* Exs. "4", "5").

A threshold issue that a court must consider before commencing a Rule 19 analysis is whether the absent party, here D&D Pipe, can be joined. *See Lemgruber*, 385 F.Supp.2d at 232. "Where . . . the court can order that [the absent party] be joined, there is no need shown for dismissal under Rule 12(b)(7)." *Schonfeld v. Raftery*, 335 F.Supp. 846, 852 (S.D.N.Y. 1971). Since joinder is *not* appropriate here, dismissal is.

ATC invokes this Court's subject-matter jurisdiction pursuant to 28 U.S.C. § 1332. Diversity exists between the Angelles, Louisiana domiciliaries, and ATC, a domiciliary of Delaware and New Jersey. However, since D&D Pipe is incorporated in Louisiana and has its principle place of business in Lafayette, Louisiana, and is thereby a Louisiana domiciliary, joinder of D&D Pipe as a plaintiff in this matter would destroy diversity and divest this Court of jurisdiction over the subject matter of the dispute. Thus, dismissal is proper.

Courts frequently support the proposition that a party to a contract is both a necessary and indispensable party. *See Lemgruber*, 385 F.Supp.2d at 232; *Global Disc. Travel Servs., LLC*, 960 F.Supp. at 704 (noting that a direct party to a contract is a necessary party to the litigation). *See also Travelers Indem. Co. v. Household Int'l, Inc.*, 775 F.Supp. 518, 527 (D. Conn. 1991) ("A contracting party is the paradigm of an indispensable party."). D&D Pipe is a party to both the SPA and the Lease, both of which form the bases of a significant portion of ATC's claims. D&D Pipe is also the maker of the Note. As a contracting party, D&D Pipe is a necessary and indispensable party. *See Global Disc. Travel Servs., LLC*, 960 F.Supp. at 704; *Travelers Indem. Co.*, 775 F.Supp. at 527. Despite the clear need for inclusion of D&D Pipe in these matters, ATC has failed to join D&D Pipe here.

D&D Pipe is a "necessary" party under Rule 19(a) for several reasons. First, Rule 19(a) provides that a party is "necessary" where "complete relief cannot be accorded among those already parties" in that party's absence. FED. R. CIV. P. 19(a)(1). The Angelles argue *supra* that ATC lacks standing to pursue any claim for remediation costs caused by D&D Pipe's failure to comply with environmental laws and regulations. Citing the Advisory Committee's note to Rule 19(a)(1), this Court has previously noted that "the complete relief clause of Rule 19(a) was designed to 'stress[] the desirability of joining those persons in whose absence the court would be obliged to grant partial or "hollow" rather than complete relief to the parties before the court.'" *Global Disc. Travel Servs., LLC*, 960 F.Supp. at 708. Since ATC lacks standing to assert claims arising out of the Lease, any judgment by this Court would naturally be "partial or 'hollow.'" Notably, the Angelles personally have no obligations under the Lease. And, any action by this Court as to rights under the Lease could conflict with the adjudications of rights under the same contract in the ongoing Louisiana action where D&D Pipe *is* a party.

Second, Rule 19(a)(2)(i) provides that a party is "necessary" if "the person claims an interest relating to the subject of the action and is so situated that disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest." FED. R. CIV. P. 19(a)(2)(i).  In *Global Discount Travel Services, LLC*, this Court considered the effect of the interpretation of a contract on an absent party with interests in the agreement, and noted that the interpretation of the contract "will undoubtedly have a *practical* effect on any subsequent action" concerning that contract.  *Global Disc. Travel Servs., LLC*, 960 F.Supp. at 708.  Judge Sotomayor opined that

> Rule 19(a) does not require that this Court's finding on the meaning of the contract literally bind all other courts that might give attention to the matter.  Rather, Rule 19(a)(2) "recognizes the importance of protecting the person whose joinder is in question against the *practical* prejudice to him which may arise through a disposition of the action in his absence."

*Id.* (citing FED. R. CIV. P. 19(a) advisory committee's note (emphasis added)).  This is precisely why D&D Pipe is a necessary party in this matter.

Third, even if this Court concludes that complete relief can be accorded in D&D Pipe's absence and that D&D Pipe will not be exposed to conflicting requirements, D&D Pipe is a necessary party because disposition in its absence will "leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest."  FED. R. CIV. P. 19(a)(2)(ii).  This Court's adjudication in favor of ATC on the Lease claim in D&D Pipe's absence could, as a practical matter, expose the Angelles to lease obligations inconsistent with whatever lease obligations Angelle Properties, LLC may have in the Louisiana action.  "This situation is precisely what Rule 19 seeks to avoid . . . ."  *Global Disc. Travel Servs., LLC*, 960 F.Supp. at 709.

Fourth, it is crucial to note that ATC seeks rescission of the SPA, a contract to which D&D Pipe is a party. (*See* Rec. Doc. No. 27 at Prayer for Relief (b)(i)). Where a party seeks rescission of a contract a court must join *all parties* to the contract and those having a substantial interest therein as their "presence is required." *Crouse-Hinds Co. v. InterNorth, Inc.*, 634 F.2d 690, 701 (2d Cir. 1980) (citing *Patterson*, 390 U.S. at 110). *See also Holland*, 210 F.R.D. at 502 ("[C]ases involving requests . . . to set aside a contract have been held to require the presence of all parties to the contract."). D&D Pipe is a signatory and named party to the SPA. Thus, D&D Pipe's presence is required as it is a necessary party.

Since D&D Pipe is a necessary party whose joinder would destroy diversity, this Court must next consider whether D&D Pipe is an indispensable party pursuant to Rule 19(b). The second prong of the analysis under Rule 19 focuses on the four factors enunciated *supra*. In light of these factors, the Angelles submit that D&D Pipe is an indispensable party under Rule 19(b).

The first factor concerns whether the absent party has access to an adequate alternative forum. *See Holland*, 210 F.R.D. at 494 (citing *Patterson*, 390 U.S. at 118). D&D Pipe, the absent party, and ATC, the present plaintiff, both have alternative forums in which to litigate their current claims: the state courts of Louisiana and New York. The first factor, therefore, weighs in favor of dismissal.

The second factor in a 19(b) analysis considers the Angelles' interest in seeking joinder to avoid "multiple litigation, or inconsistent relief, or sole responsibility for liability" that they potentially share. *See Holland*, 210 F.R.D. at 494 (citing *Patterson*, 390 U.S. at 118). D&D Pipe is the named party to the Lease and has a substantial interest in the SPA. Indeed, the fact that ATC seeks rescission mandates joinder of D&D Pipe. *See Crouse-Hinds Co.*, 634 F.2d at 701 (citing *Patterson*, 390 U.S. at 110); *Holland*, 210 F.R.D. at 502. This action, therefore,

should be dismissed and both ATC and D&D Pipe should be required to assert any claims under the SPA and the Note in Louisiana or New York state court. The Lease issues are currently addressed in the Louisiana action in Louisiana state court.

The Second Circuit in *Envirotech Corporation v. Bethlehem Steel Corporation* stated that

> [e]quity and good conscience would seem to require that under circumstances such as those present here, parties should present their claims in a state court rather than attempt to manipulate jurisdiction by dropping plaintiffs with a substantial interest in the claim solely for the purpose of retaining jurisdiction in the federal forum.

*Envirotech Corp. v. Bethlehem Steel Corp.*, 729 F.2d 70, 76 (2d Cir. 1984) (quoting *Potomac Elec. Power Co. v. Babcock & Wilcox Co.*, 54 F.R.D. 486, 492-93 (D. Md. 1972). The Angelles agree and respectfully submit that D&D Pipe is a necessary and indispensable party under Rule 19, thereby necessitating dismissal under Rule 12(b)(7).

## CONCLUSION

For the foregoing reasons, Dean Angelle and Denise Angelle respectfully request that this Court grant their Motions to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(b)(7), or alternatively stay this proceeding since it is premature.

Respectfully Submitted,

GREGORY W. O'NEILL (GO 1944)
ELIZABETH A. MCCOY (EM 8448)
Hill, Betts & Nash, L.L.P.
One World Financial Center
200 Liberty Street, 26th Floor
New York, New York 10281
Telephone:  (212) 839-7000
Facsimile:  (212) 466-0514

AND

*/s/ Eric Michael Liddick*
CARL D. ROSENBLUM (LA Bar No. 02083)
(Admitted *Pro Hac Vice*)

ERIC MICHAEL LIDDICK (LA Bar No. 31237)
(Admitted *Pro Hac Vice*)
Jones, Walker, Waechter, Poitevent,
  Carrère & Denègre, L.L.P.
201 St. Charles Avenue, 49th Floor
New Orleans, Louisiana 70170
Telephone:  (504) 582-8000
Facsimile:  (504) 582-8011
**Attorneys for Dean Angelle and Denise Angelle,**
**Defendants**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been forwarded this day to counsel of record for Argo Turboserve Corporation, ☒ by CM/ECF, ☒ by e-mail, ☐ by telefax, ☐ by hand, and/or ☐ by United States mail.

New Orleans, Louisiana, this 3rd day of March, 2008.

*/s/ Eric Michael Liddick*
**ERIC MICHAEL LIDDICK**