*Execution Copy*

# LEASE AGREEMENT

This Lease Agreement is executed on the dates noted below by and between:

ANGELLE PROPERTIES, L.L.C., a Louisiana liability company, authorized to do business in the State of Louisiana, having Taxpayer I.D. No. _____ whose address for the purposes hereof is _____,_____, Louisiana _____, herein represented by its duly authorized member, _____, ("*Landlord*"); and

D&D PIPE AND RENTALS, INC., a Louisiana corporation, authorized to do business in the State of Louisiana, having Taxpayer I.D. No. _____ whose address for the purposes hereof is _____,_____, _____ _____, herein represented by its duly authorized representative, _____, ("*Tenant*").

## WITNESSETH:

WHEREAS, Dean and Denise Angelle and Argo Turboserve Corporation have entered into a stock purchase agreement ("*Stock Purchase Agreement*") pursuant to which Argo Turboserve Corporation is purchasing one hundred percent (100%) of all of the outstanding stock of D&D Pipe and Rentals, Inc. ("*D&D*"), a Louisiana corporation and D&D will become a wholly owned subsidiary of Argo Turboserve Corporation on the Closing Date; and

WHEREAS, Capitalized terms used but not defined herein shall have the meanings assigned to such terms in the Stock Purchase Agreement.

THEREFORE IT IS AGREED that for and in consideration of the mutual covenants and promises hereinafter set forth, the parties hereto agree as follows:

1. **PREMISES**

    1.1 Landlord hereby leases unto Tenant and Tenant hereby leases from Landlord, upon and subject to the terms of this Lease Agreement (this "*Agreement*" or "*Lease*") the property described below (the "*Leased Property*") to-wit:

    *[INSERT PROPERTY DESCRIPTION]*

    Together with all Landlord's, easements, rights of way, servitudes and appurtenances and adjoining and adjacent land, highways, roads, streets, and lanes, whether public or private, reasonably required for the installation, maintenance, operation and service of sewer, water, gas, power, and other utility lines and for driveways and approaches to and from abutting highways for the use and benefit of the Leased Property, including the improvements which may be erected thereon.

    1.2 Landlord represents and warrants to Tenant that Landlord has good title to the Leased Property, and has full right and authority to lease the Leased Property to Tenant on the terms and conditions of this Agreement.

2. **RENT AND DEPOSIT**

    2.1 <u>Rent</u>.    During the term of this Agreement or any extensions thereof, Tenant agrees to pay Landlord rent on the Leased Property in the amount of Five Thousand and NO/100 ($5,000.00) DOLLARS per month. The rent shall be due and payable in advance, on or before the 1st day of each month at Landlord's address shown above.

1

EXHIBIT "2"

*Execution Copy*

2.2 Deposit. A security deposit of Five Thousand and NO/100 ($5,000.00) DOLLARS has been paid by Tenant to Landlord. With no interest payable to Tenant, Landlord will hold these funds until thirty (30) days after this Lease expires, is terminated, or is cancelled. After expiration, termination, or cancellation, Landlord may use this deposit to correct any damage to Leased Property or as a penalty for any unperformed obligation of Tenant. Any portion of the security deposit not used to correct damage to Leased Property or as a penalty shall be returned to Tenant.

3.   TERM

This Agreement shall have a term of five (5) years commencing on March 3, 2006, subject to any extension or continuation of said term as authorized by this Lease, unless sooner terminated by this Agreement. Upon six (6) months' notice prior to the expiration of the original term, Tenant shall have the right, but not the obligation, to extend the term for an additional five (5) years, and if Tenant elects to extend the term, at such time the Parties shall negotiate in good faith to mutually agree to a rate of rent for such extension. As used herein, "Term" or "term" shall refer to both the primary term and any extension thereof.

4.   IMPROVEMENTS

Tenant shall make no alterations or improvements to the Leased Property of any kind or character, except with the prior written consent of Landlord, which consent shall not be unreasonably delayed or withheld. At the termination of this Lease, all fixtures added by Tenant, which may be removed without damage to the Leased Property, may be removed by Tenant so long as such fixtures are removed prior to termination of this Lease. At the termination of this Lease, Landlord shall also have the right to demand that all other improvements constructed on or added to Leased Property be removed by Tenant and the Leased Property restored to its original condition as of the Remediation Date, at Tenant's sole cost and expense; or, at the option of Landlord, to retain said other improvements constructed or added to the Leased Property as the property of Landlord after having paid Tenant such fair market value for such improvements.

5.   USE OF LEASED PROPERTY AND INSPECTION

5.1 Tenant shall operate and maintain the Leased Property in a careful and prudent manner and shall not commit or allow any waste or damage to be committed on any portion of the Leased Property; at the termination of this Agreement, by lapse of time or otherwise, and subject to the provisions of Section 4, above, Tenant shall deliver the Leased Property to Landlord in as good condition as the reasonable use thereof will permit. Upon termination of this Agreement, Landlord shall have the right to re-enter and resume possession of the Leased Property.

5.2 Tenant shall use the Leased Property for the sole and only purpose of office, shop and warehouse space for the operation of the business conducted by Tenant. Tenant shall not conduct any other activity on the Leased Property without the prior written consent of Landlord, which landlord may not unreasonably withhold.

5.3 Tenant shall comply with all valid laws, ordinances, rules and regulations made by any governmental authority applicable to the occupancy or use of the Leased Property, including, without limitation thereto, all laws, rules and regulations respecting zoning, safety, fire, and fire hazards.

5.4 Landlord reserves the right to inspect the Leased Property and all buildings and improvements thereto, with reasonable advance notice, at reasonable times during the term of this Lease Agreement.

6.   MAINTANENCE AND REPAIR

Tenant agrees, at Tenant's sole cost and expense, to keep in good order and repair, the entirety of the Leased Property including, without limitation thereto, all components of the air conditioning and heating system, coolers, and all plumbing and electrical components of the Leased Property. Tenant shall also be responsible for the repairs to the foundation, structural portion of the building and water well, if any, except as may be caused by

2

*Execution Copy*

Landlord. Tenant shall, at all times, keep the Leased Property in a neat, clean and orderly condition, and shall keep the grass cut and all shrubs, plantings and trees reasonably maintained.

7. INDEMNITY AND PUBLIC LIABILITY INSURANCE

7.1 In accordance with the Stock Purchase Agreement, Tenant shall, at its sole cost and expense, cause to be performed a Phase I Site Assessment and Building Inspection of the Lease Property to be performed.

7.2 On the Remediation Date, Tenant shall assume responsibility for the condition of the Leased Premises. Tenant agrees to indemnify and save harmless Landlord from and against all claims, of any nature, resulting from, any defect in the Leased Property arising after the Remediation Date, or from any act, omission or negligence, whether sole or concurrent, of Tenant or Tenant's contractors, agents, employees, invitees, licenses or servants, or arising from any accident or injury (including death) caused to person or property occurring during the term hereof, whether upon or in the Leased Property including, without limitation thereto, the building(s) constituting part of the Leased Property. This indemnity shall include costs incurred in proceedings brought upon the basis of such claims and the defense thereof, specifically including, but without limitation thereto, reasonable attorney's fees. Landlord shall have no responsibility for any condition of the Leased Property arising after the Remediation Date, and is not liable for injury, death and/or damage caused by any defect of the Leased Property arising after the Remediation Date therein to Tenant or anyone else.

7.3 Tenant shall maintain comprehensive general liability insurance for personal injury, death, pollution or environmental damage, and property damage on the Leased Property and shall name Landlord as an additional insured thereon, such insurance shall have minimum liability limits of $5,000,000 per occurrence, combined single limit, with respect to bodily injury, personal injury, death to any persons, or pollution or environmental damage; and of not less than $5,000,000 per occurrence with respect to property damage, but the amount of such insurance shall not limit Tenant's indemnity obligations pursuant to Section 7.2. Upon request, Landlord shall be provided certified copies of all such policies or other acceptable evidence of such coverage. All such policies shall also provide that they may not be amended or cancelled, without thirty (30) days prior notice to Landlord.

7.4 Tenant shall keep in full force and effect during the term of this Agreement, at his sole cost and expense, insurance with minimum liability limits of $5,000,000.00 on the building and improvements constructed, erected, and/or located on the real estate constituting part of the Leased Property protecting Landlord against all risk of loss to the said building and improvements arising from fire, windstorm, explosion, lightening, flood (if the Leased Property is in a flood zone), vandalism and other similar casualties. Landlord shall be named an additional insured and the loss payee in said policy, which shall waive subrogation as against Landlord and shall provide that it may not be amended or cancelled without at least thirty (30) days prior written notice to Landlord. Landlord shall be provided, on request, a certified copy of such policy or other acceptable evidence of such insurance.

8. TAXES AND LIENS

8.1 <u>Taxes.</u> All taxes assessed against any of the Leased Property for the term of this Lease Agreement are to be paid by Tenant within twenty (20) days prior to the due date for such taxes after Landlord furnishes Tenant with written documentation of the amount of and purpose for such taxes. Property taxes for the first year and the final year of the Lease Agreement will be pro-rated.

8.2 <u>Liens.</u> If any lien which arises from Tenant's activities on, or use of, the Leased Property is claimed or filed against the interest of Landlord in the Leased Property during the continuance of this Agreement, Tenant shall, within 30 days after Landlord has transmitted written notice of the receipt of such claim to Tenant, caused the Leased Property to be released from such claim, either by payment or by the posting of bond in an amount necessary to relieve and release the Leased Property from such claim, or in any other manner which, as a matter of law, will result, within such period of 30 days, in releasing Landlord and the title of Landlord from such claim.

9. UTILITIES

3

*Execution Copy*

Tenant shall, before taking possession of and occupying the Leased Property, change all utilities (including gas, heat, water, sewer and electricity) for the Leased Property, to its name, and shall pay, as and when the same shall become due and payable, all such utilities, rents, rates, charges, and assessments.

## 10. ENVIRONMENTAL MATTERS AND BOND

10.1 <u>Compliance with Law</u>. Tenant shall strictly comply with and abide by all applicable environmental laws and regulations which may in any way affect or relate to the Leased Property, or the conduct of Tenant's business and operations on or about the Leased Property. Tenant shall properly label identify, store, package, and dispose of all pollutants, contaminants, solid wastes, petroleum and petroleum product, toxic substances, hazardous wastes, and hazardous substances generated or used by Tenant, or arising out of or in connection with its business and operations on the Leased Property, and shall not cause or suffer the storage of same on the Leased Property except to the extent necessary for the ultimate disposal thereof or as required and permitted in connection with the business and operations permitted under this Lease. Tenant shall not contaminate, pollute, or spill, or permit, cause, or suffer the contamination, pollution, or spill of any such pollutants, contaminants, substances, petroleum or petroleum products, or wastes on or about the Leased Property. Upon surrender of the Leased Property, or a termination, cancellation, or expiration of this Agreement, the Leased Property shall be free from all such pollutants, contaminants, wastes, petroleum and petroleum products, and substances occasioned by Tenant's use and operation of the Leased Property. To the extent not free thereof, Tenant shall at its expense, immediately effect the appropriate clean up, remediation, removal, and disposal of all such pollutants, wastes, contaminants, substances, and petroleum and petroleum wastes.

10.2 <u>Environmental Indemnity</u>. Tenant covenants to defend, indemnify, save, and hold Landlord, its members, partners, officers, directors, agents, employees, and invitees harmless from and against any claims, actions, damage, liability, and expense (including without limitation, penalties, attorneys' fees, court costs, and fees of witnesses) arising from or out of (i) any violations by Tenant, its employees, agents, customers, or invitees of any environmental laws and regulations affecting or relating to the Leased Property and/or (ii) any breach by Tenant, its employees, agents, customers, or invitees of the covenants in the preceding paragraph, including Tenant's obligations to clean up, remediate and remove all wastes, pollutants, contaminants, substances, petroleum and petroleum wastes, described in 10.1 above.

10.3 <u>Definitions</u>. For purposes of this Lease, the phrase "environmental laws and regulations" shall mean any federal, state, or local statute, regulation, or ordinance, and all amendments thereto, relating to the environment, and/or relating to regulating, or prohibiting the use, storage, transportation, control, release, or generation of, or exposure to, hazardous substances, hazardous wastes, pollutants, contaminants, solid or toxic wastes, or other substances, including without limitation, the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended by the Superfund Amendments and Reauthorization Act of 1986, 42 U.S.C. 9601, <u>et seq</u>., the Resource Conservation and Recovery Act 42 U.S.C. 9601, <u>et seq</u>., the Clean Water Act, 33 U.S.C. Section 1251, <u>et seq</u>., the Clean Air Act, 42 U.S.C. Section 7401, <u>et seq</u>., and the Toxic Substances Control Act, 15 U.S.C. Section 2601, et seq. The provisions of this Section shall survive the termination or expiration of this Agreement, howsoever caused.

10.4 <u>Final Inspection</u>. Within 30 days after the termination of this Agreement, Tenant shall, at its sole cost and expense, cause a Phase I Site Assessment, and if recommended by the Phase I Site Assessor, a Phase II Site Assessment, of the Leased Property (the "Final Inspection") to be performed and completed. Tenant shall at its sole cost and expense, perform any such clean up, remediation, removal, and disposal of all pollutants, contaminants, wastes, substances and petroleum and petroleum wastes, and shall take any other such remedial actions as may be deemed necessary as a result of said Final Inspection to restore the Leased Property to its original condition as of the inception of the Remediation Date.

## 11. LANDLORD'S COVENANT OF TITLE AND QUIET ENJOYMENT

4

*Execution Copy*

Landlord covenants that Landlord has good title to the Leased Property, does warrant and will defend the title thereto, and will indemnify Tenant against any damage and expense which Tenant may suffer by reason of any lien, encumbrance, restriction or defect in the title or description herein of the Leased Property.

12. **DISCLAIMER OF CERTAIN WARRANTIES**

EXCEPT AS EXPRESSLY STATED IN THIS AGREEMENT, LANDLORD HAS NOT MADE AND DOES NOT HEREBY MAKE ANY OTHER REPRESENTATION OR WARRANTY, WHETHER ORAL OR WRITTEN, EXPRESS OR IMPLIED, AS TO ANY MATTER WHATSOEVER, INCLUDING, WITHOUT LIMITATION, THE WARRANTIES AS TO THE HABITABILITY, ZONING, OR CONDITION OF THE LEASED PROPERTY. EXCEPT AS EXPRESSLY STATED IN THIS AGREEMENT, ALTHOUGH LANDLORD IS NOT AWARE OF ANY DEFECTS ON OR IN THE LEASED PROPERTY, THE LEASED PROPERTY IS BEING LEASED BY LANDLORD AND ACCEPTED BY TENANT "AS IS", "WHERE IS", WITH ALL VICES, FAULTS, AND DEFECTS WHETHER OBVIOUS OR LATENT. EXCEPT AS EXPRESSLY STATED IN THIS AGREEMENT, TENANT EXPRESSLY WAIVES ANY AND ALL WARRANTIES WHATSOEVER, INCLUDING, WITHOUT LIMITATION, ANY WARRANTIES AS TO THE HABITABILITY, ZONING, OR CONDITION OF THE PREMISES, AS WELL AS ANY WARRANTIES AGAINST HIDDEN OR LATENT DEFECTS, INCLUDING BUT NOT LIMITED TO THE IMPLIED WARRANTY IMPOSED BY LOUISIANA CIVIL CODE ARTICLE 2476 WITH RESPCET TO HIDDEN DEFECTS AND REDHIBITORY VICES. TENANT ALSO WAIVES ANY RIGHT ARISING UNDER LOUISIANA CIVIL CODE ARTICLES 2520 ET SEQ. AND 2541 ET SEQ. TO AVOID THE LEASE OR REDUCE THE RENT ON ACCOUNT OF SOME HIDDEN DEFECT OR REDHIBITORY VICE. ANY LISTING OR WARRANTIES TO BE WAIVED IS BY WAY OF EXAMPLE ONLY AND NOT INTENDED AS AN EXCLUSIVE LIST.

13. **DEFAULT**

13.1 If Tenant fails to pay any rent or other amount herein provided within fifteen (15) days after receipt of written notice thereof from Landlord, (which notice may be forwarded by Landlord to Tenant immediately upon the failure of Tenant to pay the rent or other amount when due), Landlord shall have the right to exercise any one of the remedies provided in Section 13.3 below.

13.2 If Tenant fails to observe, keep or perform any other provision of this Agreement required to be observed, kept or performed by Tenant, and if Tenant fails, within a reasonable time period, to remedy, cure or remove such failure after receipt of written notice thereof from Landlord, (which notice may be forwarded by Landlord to Tenant immediately upon the failure of Tenant to keep or perform any provision of this Lease), Landlord shall have the right to exercise any one of the remedies provided in Section 13.3 below.

13.3 In the event a default enumerated in either Sections 13.1 or 13.2 hereinabove occurs, Landlord shall be entitled to exercise any, or all, of the following remedies: (a) to immediately terminate this Agreement, and to sue for and collect past due rent plus attorney's fees and court costs, (b) to take possession of the Leased Property and to sue for and recover all rents, and other payments, then accrued or thereafter accrued, plus any attorney's fees and court costs, (c) to accelerate all rent due under this Agreement and to sue for and recover any and all past rent and future rent due under this Agreement, plus any attorney's fees and court costs, or (d) any remedy otherwise authorized under law. Should Landlord re-lease the Leased Property to any other person or entity after abandonment of the Leased Property by Tenant or after Landlord has taken possession of the Leased Property, Tenant's obligation under this Lease shall not terminate, but any rent paid by the new Tenant shall reduce Tenant's obligations hereunder pro rata.

13.4 Tenant fails to timely pay any rent, taxes or other monies due from Tenant pursuant to this Agreement, then Tenant shall pay landlord interest at the rate of twelve (12%) percent per annum, or the highest lawful legal interest authorized by law, whichever is lower, on such rent, taxes or other monies which interest shall accrue from, and beginning with, the date as of which Tenant should have paid such monies.

*Execution Copy*

13.5. Notwithstanding anything to the contrary, Tenant shall look solely to Landlord's interest in the Leased Property for the satisfaction of any remedy it may have for a default by Landlord under this Lease and shall not look to any other assets of Landlord. Such exculpation of liability shall be absolute and without any exception whatsoever.

13.6. The remedies of Landlord and Tenant hereunder shall be deemed cumulative and no remedy of Landlord or Tenant, whether or not exercised by Landlord or Tenant, shall be deemed to be to the exclusion of any other.

13.7. Neither party to this Lease shall be liable to the other for any indirect, special, or consequential damages caused by a breach of this Lease. This Section 13.7 shall not apply to any claim by either Party for indemnification pursuant to this Lease if, but only if and to the extent that, such claim by such Party is based upon an independent third party claim against such Party for indirect, special, or consequential damages caused solely by Tenant's act(s) or omission(s).

14. NOTICES

Service of all notice under this Agreement shall be sufficient if given personally or mailed via registered mail or certified mail return receipt requested to the party involved at his respective address set forth above, or at such address as such party may provide in writing from time to time. Any such notice mailed to Tenant shall be effective when deposited in the United States mail, duly addressed and with postage prepaid.

15. WAIVER

No delay in or failure to exercise any right granted herein shall impair any such right or shall act as a waiver of any subsequent breach by either party, and any acceptance by Landlord of any payment by Tenant shall not constitute a waiver with regard to any such default committed prior thereto, nor of any subsequent or continued breach of this Agreement by Tenant.

16. DESTRUCTION OF PREMISES

16.1 In event of damage to the Leased Property caused by fire, flood, lightning, storm, earthquake, explosion, or other similar casualty not the fault of tenant, and if as a result of such casualty the Leased Property should be damaged so as to be wholly unfit for occupancy, then Tenant shall have the option, exercisable within 30 days after the occurrence of such casualty by notice in writing to Landlord, to declare this Agreement cancelled. However, all proceeds of the insurance for damage to the Lease Property required to be carried by Tenant on the Leased Property shall nonetheless be paid to Landlord. Should the Leased Property be only partially damaged by such casualty, Landlord shall have the option, exercisable within 30 days after receipt of written notice form Tenant of the occurrence of such casualty, by Landlord giving notice in writing to Tenant, to declare this Agreement cancelled; if Landlord does not exercise his said option to declare this Agreement cancelled, Landlord shall repair such damage with due diligence using the proceeds of the insurance policy required to be carried on the Leased Property herein and the rent paid by Tenant shall be reduced prorata, until such repairs are completed, based on the unusable space in the building constituting part of the Leased Property.

16.2 Tenant waives subrogation against Landlord and agrees to have waivers of subrogation included in any policies taken out by Tenant and which cover the Leased Property and/or the use or occupancy of the Leased Property.

17. ASSIGNMENT AND SUBLETTING

Tenant may not assign this Lease or sublease the Leased Property unless Tenant obtains Landlord's prior written consent. Lessor's prior written consent may be withheld for any or no reason, and if consent is obtained for

6

*Execution Copy*

such assignment or sublease, Tenant shall remain personally liable and responsibility, during the balance of the term of this Agreement, for the fulfillment and performance of all obligations of the Tenant provided for in this Agreement, as it may be amended and supplemented from time to time hereafter.

18. **ESTOPPEL CERTIFICATES**

Either parties shall, without charge, at any time and from to time, within thirty (30) days after written request of the other, certify by written instrument duly executed and acknowledged to any person, firm, or corporation specified in such request:

(a) as to whether this Lease has been supplemented or amended, and if so, the substance and manner of such supplement or amendment;
(b) as to the validity and force and effect of this Lease, in accordance with its tenor as then constituted;
(c) as to the existence of any default hereunder;
(d) as to the existence of any offsets, counterclaims, or defenses thereto on the part of such other party;
(e) as to the commencement and expiration dates of the term of this Lease; and
(f) as to any other matters as may reasonably so requested.

Failure to respond within the time period specified shall constitute default representations that (i) there has been no supplement or amendment to this Lease, (ii) this Lease remains in full force and effect, (iii) there is then no default under this Lease which has not been cured, and (iv) there are no offsets, counterclaims or defenses which the party not responding has to assert against the other party with respect to this Lease. Any such certificate or the default representations may be relied on by the party who requested it and any other person, firm or corporation to whom the same may be exhibited or delivered, and the contents of such certificate shall be binding on the party executing same. Any request for such estoppel certificate and the subsequent reply shall be deemed given and time shall begin to run when such notice in the consequent reply, respectively, are deposited in the United States certified mail, with sufficient prepaid postage to carry them to their addressed destinations, and they shall be addressed to Landlord and Tenant at the places and in the manner described as being the places in the manner for giving notice.

19. **CONDEMNATION**

19.1. <u>Tenant's Rights</u>. If the whole of the Leased Property shall be taken or condemned by any competent authority for any public use or purpose during the term of this Lease, this Lease shall be canceled.

19.2. <u>Tenant's Right To Terminate</u>. In the event that at least twenty-five percent of the Leased Property shall be taken or condemned, then and in any such event, Tenant may at any time, either prior to or within a period of 60 days after the date when possession of the Leased Property shall be required by the condemning authority, elect to terminate this Lease and not be required to make any future lease payments. In the event Tenant shall fail to exercise any such option to terminate this Lease or in the event that a part of the Leased Property shall be taken or condemned under said circumstances that Tenant has no such option, then and in either such event, this Lease shall continue in effect with respect to the portion of the Leased Property not so taken with no reduction in the Rent for the balance of the Term, and Tenant will, with all due diligence and at its own cost and expense, repair and restore the Leased Property or what may remain thereof to their former condition, and until the completion of such work, the obligation of Tenant to pay rent and real estate taxes shall not abate.

19.3. <u>Compensation for Condemnation</u>. In the event any portion of the Leased Property is condemned as contemplated in Sections 19.1 and 19.2, Tenant shall have no right, title or interest in any award made for such condemnation. In the event any portion of the Leased Property is condemned as contemplated in Sections 19.1 and 19.2, Landlord shall have the exclusive right, title or interest in and to receive any award made for such condemnation.

7

*Execution Copy*

## 20. ASSIGNING LANDLORD'S INTEREST IN LEASE

20.1. <u>Tenant's Consent</u>. Tenant gives its consent to any security interest Landlord voluntary grants on or any assignment Landlord makes of its interest in the Lease.

20.2. <u>Tenant's Commitment to Security Interest Holders</u>. In the event Landlord assigns, or in any other way creates a security interest in its interest, and any rights under this Lease, and the holder(s) of indebtedness (the "Lien Holders") secured by a security interest granted by Landlord in its interest gives notice to Tenant (which shall include a copy of the assignment or other security interest, proof of perfection as required by the law of the state in which the Premises is located, and a street address for the service of any notices on the assignee or other holder of indebtedness) of the assignment, then and in such event Tenant agrees, for the benefit of such assignees or holders of indebtedness from time to time, as follows:

(a) Tenant will give to any such Lien Holder, simultaneously with service on Landlord, a duplicate of any and all notices or demands given by Landlord from time to time in the manner provided herein.

(b) Each such Lien Holder shall have the right to perform any of Landlord's covenants hereunder, to cure any default by Landlord hereunder or to exercise any election, option or privilege conferred on Landlord by this Lease, all without assuming or otherwise incurring any personal liability for Landlord's obligations under this Lease.

(c) Tenant shall give each such Lien Holder written notice of any failure of Landlord to cure a default under this Lease within the time provided herein.

(d) Subject to Tenant's 1st Refusal Right, any such assignment or security interest may grant the Lien Holder the right to sell, at public or private sale, the interest of Landlord in this Lease hereto subject to the purchaser assuming, by a written agreement provided to Tenant, all obligations of Landlord under this Lease.

## 21. MORTGAGING OF TENANT'S LEASEHOLD ESTATE

21.1. <u>Subordination of Tenant's Leasehold Estate</u>. Tenant agrees that its interest under this Lease is, and shall be subordinate to any lien, mortgage, deed of trust or similar device now or hereafter placed by Landlord upon all or any part of the Leased Property.

21.2. <u>Mortgage Granted by Tenant</u>. Tenant has no right, at any time, to create an encumbrance against its leasehold interest in the Leased Property or any part thereof, as security for any indebtedness owed by it, unless the mortgage, trust deed or instrument creating such encumbrance shall contain provisions under the terms of which any lien, mortgage, deed of trust or similar security device now or hereafter placed by Landlord upon all or any part of the Leased Property shall be recognized as superior to any mortgage, trust deed or instrument by Tenant creating a security interest in Tenant's leasehold interest, and such provision shall make it clear that the superiority of any such security device placed by Landlord upon all or any part of the Leased Property applies without regard for whether the security devise was executed by Landlord and/or recorded in the applicable mortgage records before or after recordation of an instrument executed by Tenant granting a security interest in Tenant's leasehold interest under this Lease.

## 22. CONTRACTUAL SECURITY INTEREST

As collateral security for the performance by Tenant of its obligations under this Lease, Tenant does hereby grant to Landlord a security interest in all of Tenant's goods, equipment, inventory, owned now or at anytime in the future and located now, or in the future, in or on the Leased Property, together with all accessions, additions, replacements and substitutions, and all related accounts, chattel paper, documents and general intangibles, all

*Execution Copy*

records of any kind relating to the foregoing and all proceeds (including insurance, chattel paper and account proceeds). The security interest granted under this Section 22 by Tenant is in addition to any privilege or lien granted to Landlord by the law of the state in which the Leased Property are located. Following any default by Tenant in its obligations under this Lease, and in the event Landlord exercises its rights as against the collateral in which a security interest is granted herein, then and in that event Tenant expressly agrees that Landlord, or either of them, or their designee, may act as keeper or custodian of such collateral pending the sale of same.

23. **MISCELLANEOUS PROVISIONS**

23.1 The terms hereof shall be binding upon and shall inure to the benefit of the heirs, executors, administrators, successors and assigns, of Landlord and Tenant. Tenant may not sublease or assign his rights under this Agreement without the prior written consent of Landlord, which may not be unreasonably withheld; in the event of such consent Tenant shall remain primarily and solidarily responsible for the obligations of Tenant herein.

23.2 This Agreement shall be governed exclusively by the provisions hereof and by the laws of the State of Louisiana as the same may from time to time exist.

23.3 The paragraph headings throughout this instrument are for convenience and reference only, and the words contained herein shall in no way be held to explain, modify, amplify or aid in the interpretation, construction or meaning of the provisions of this Agreement.

23.4 This instrument contains the entire Agreement between the parties as of this date. The execution hereof has not been induced by either party by representations, promises, or understandings not expressed herein and there are no collateral agreements, stipulations, promises or undertakings whatsoever by the respective parties in any way touching the subject matter of this Lease which are not expressly contained in this Lease.

23.5 If any term or provision of this Lease or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Lease, or the application of such term or provision to persons who's circumstances are other than those as to which it is held invalid or unenforceable, shall not be affected thereby.

23.6 This instrument may be executed in any number of counterpart copies, each of which counterpart copy shall be deemed an original for all purposes.

23.7 In the event of a dispute, controversy or claim arising out of or related to any provision of this Agreement, all costs and expenses, including reasonable attorney's fees, incurred by the prevailing party and exercised in defending any of the rights or remedies hereunder or enforcing any of the terms, conditions or provisions hereof shall be paid by the unsuccessful party or parties.

23.8 Landlord and Tenant have jointly participated in the negotiations and drafting of this Agreement. In the event any question of intent or interpretation arises, this agreement shall be construed as if drafted by all parties.

**THE BALANCE OF THIS PAGE INTENTIONALLY LEFT BLANK**

THUS DONE AND SIGNED on this 3rd day of March, 2006, at Lafayette, Louisiana.

WITNESSES:

NAME: BRODIE MECHE

NAME: Margaret Hayt

LANDLORD:
ANGELLE PROPERTIES, L.L.C.

By: _____
DEAN ANGELLE, Authorized Member

_____
NOTARY PUBLIC in and for
Lafayette Parish, State of Louisiana
My Commission Expires: At Death
Printed Name of Notary Public: Frank S. Slaughter, III
Number Assigned Notary Public: 27087

THUS DONE AND SIGNED on this _____ day of _____, 2006, at
_____, _____.

WITNESSES:

NAME: _____

NAME: _____

TENANT:
D&D PIPE AND RENTALS, INC.

By: _____

_____
NOTARY PUBLIC in and for
_____ Parish/County, State of _____
My Commission Expires: _____
Printed Name of Notary Public: _____
Number Assigned Notary Public: _____

LEASE AGREEMENT

THUS DONE AND SIGNED on this _____ day of _____, 2006, at _____, Louisiana.

WITNESSES:

NAME:_____

NAME:_____

LANDLORD:
ANGELLE PROPERTIES, L.L.C.

By:_____
_____, Authorized Member

_____
NOTARY PUBLIC in and for
_____ Parish, State of Louisiana
My Commission Expires: At Death
Printed Name of Notary Public:_____
Number Assigned Notary Public:_____

THUS DONE AND SIGNED on this 3rd day of March, 2006, at Lafayette, Louisiana.

WITNESSES: _Brodie Meche_
NAME: BRODIE MECHE

_Margaret Hay_
NAME: MARGARET HAY

TENANT:
D&D PIPE AND RENTALS, INC.

By: _____
Clyde Keaton, Chairman

_____
NOTARY PUBLIC in and for
Lafayette Parish/County, State of Louisiana
My Commission Expires: At Death
Printed Name of Notary Public: Frank S. Slavich, III
Number Assigned Notary Public: 27087

LEASE AGREEMENT