## GUARANTY

GUARANTY (this "*Guaranty*"), dated as of February 1, 2006, made by ARGO TURBOSERVE CORPORATION, a Delaware corporation (the "*Guarantor*"), in favor of DEAN ANGELLE, an individual ("*Executive*") and DENISE ANGELLE, an individual (together with Executive, the "*Sellers*"). Reference is to the Stock Purchase Agreement entered into as of February 1, 2006 (the "*SPA*"), by and among Guarantor, the Sellers and D&D Pipe and Rentals, Inc., a Louisiana corporation ("*D&D*"). Capitalized terms used but not defined herein shall have the meanings assigned to such terms in the SPA.

### RECITALS

WHEREAS, the Guarantor, the Sellers and D&D have entered into (or substantially contemporaneously herewith are entering into) the SPA, whereby the Sellers have agreed to, *inter alia*, sell all of the issued and outstanding capital stock of D&D to the Guarantor (the "*Sale*") upon the terms and conditions set forth therein;

WHEREAS, as a condition to the Sale, the Sellers have required the execution and delivery of this Guaranty;

WHEREAS, D&D and Executive have entered into (or substantially contemporaneously herewith are entering into) the Employment Agreement pursuant which Executive shall be employed by D&D (the "*Employment*") upon the terms and conditions set forth therein;

WHEREAS, upon consummation of the Sale, D&D will become a wholly owned subsidiary of Guarantor and Guarantor has determined that it will derive substantial direct and indirect benefit from the Sale and the Employment; and

WHEREAS, to induce the Sellers and Executive to perform under the SPA and the Employment Agreement, respectively, the Guarantor has agreed to guaranty the Liabilities (as defined herein) upon and subject to the terms of this Guaranty.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, Guarantor hereby agrees as follows:

SECTION 1. <u>Nature of Guaranty</u>. Guarantor hereby unconditionally guarantees to the Sellers and Executive, as applicable, as a primary obligor and not merely as a surety, the full and timely payment when due by D&D of all Liabilities. This Guaranty is a guaranty of payment and not a guaranty of collection. This Guaranty is a continuing and irrevocable guaranty until terminated in accordance with Section 9 of this Guaranty. For purposes of this Guaranty, "*Liability*" or "*Liabilities*" means, individually or collectively, each and all indebtedness and obligations of D&D to pay, (i) the principal balance of the Promissory Note outstanding (subject to adjustment as provided therein) in a maximum amount of $5,000,000 minus any amount of the principal balance of the Promissory Note paid to the Sellers prior to

EXHIBIT "5"

Guarantor's payment in accordance with this Guaranty, (ii) Interest (as defined in the Promissory Note), (iii) Default Interest (as defined in the Promissory Note), if any, (iv) the Annual Earn-Out Payment, if any, in accordance with Section 1.6 of the SPA, (v) the End of Term Earn-Out Payment, if any, in accordance with Section 1.7 of the SPA, (vi) the Flip Fee, if any, in accordance with Section 1.8 of the SPA, (vii) the Base Salary (as defined in the Employment Agreement) upon the terms and conditions set forth in the Employment Agreement, and (viii) the monetary obligations, including fees, costs, expenses and indemnities, whether primary, secondary, direct, contingent, fixed or otherwise, of D&D to the Sellers and Executive with respect to the indemnity obligations of D&D, if any, in accordance with Section 9.2 of the SPA.

Anything contained in this Guaranty to the contrary notwithstanding, the obligations of Guarantor hereunder shall be limited to a maximum aggregate amount equal to the greatest amount that would not render Guarantor's obligations hereunder subject to avoidance as a fraudulent transfer or conveyance under Section 548 of Title 11 of the United States Code or any provisions of applicable state law (collectively, the "*Fraudulent Transfer Laws*"), in each case after giving effect to all other liabilities of Guarantor, contingent or otherwise, that are relevant under the Fraudulent Transfer Laws (specifically excluding, however, any liabilities of Guarantor (a) in respect of inter-company indebtedness to D&D to the extent that such indebtedness would be discharged in an amount equal to the amount paid by Guarantor hereunder and (b) under any guaranty of senior unsecured indebtedness subordinated in right of payment to the Liabilities which guaranty contains a limitation as to maximum amount similar to that set forth in this paragraph, pursuant to which the liability of Guarantor hereunder is included in the liabilities taken into account in determining such maximum amount) and after giving effect as assets to the value (as determined under the applicable provisions of the Fraudulent Transfer Laws) of any rights to subrogation, contribution, reimbursement, indemnity or similar rights of Guarantor pursuant to applicable law.

SECTION 2. Payments Under Guaranty. Upon the failure of D&D to pay any Liability when and as the same shall become due, whether at maturity, by acceleration, after notice of prepayment or otherwise (such failure to pay being called herein a "*Guaranty Trigger Default*"), Guarantor hereby promises to and will forthwith pay, or cause to be paid, to each of the Sellers and Executive, as applicable, in cash the amount of such unpaid Liabilities then due owed to such person. All payments under this Guaranty shall be made by Guarantor in U.S. Dollars in immediately available funds and, except as otherwise provided in the SPA, the Employment Agreement or the Promissory Note, without any condition, deduction, offset, netting, counterclaim or reservation of rights. To the fullest extent permitted by applicable law, Guarantor waives presentment to, demand of payment from and protest to D&D of any of the Liabilities, and also waives notice of acceptance of its guaranty and notice of protest for nonpayment.

SECTION 3. Obligations Not Waived. To the fullest extent permitted by applicable law, Guarantor waives presentment to, demand of payment from and protest to D&D of any of the Liabilities, and also waives notice of acceptance of its guaranty and notice of protest for nonpayment. To the fullest extent permitted by applicable law, the obligations of Guarantor hereunder shall not be affected by (a) the failure of any of the Sellers or Executive to assert any claim or demand or to enforce or exercise any right or remedy against D&D under the

2

provisions of the SPA, the Employment Agreement, the Promissory Note or otherwise, or (b) any rescission, waiver, amendment or modification of, or any release from any of the terms or provisions of, this Guaranty, any of the SPA, the Employment Agreement, the Promissory Note or any other agreement.

SECTION 4. <u>No Discharge or Diminishment of Guaranty</u>. Except as otherwise provided in the SPA, the Employment Agreement or the Promissory Note, the obligations of Guarantor hereunder shall not be subject to any reduction, limitation, impairment or termination for any reason (other than the final and indefeasible payment in full in cash of the Liabilities), including any claim of waiver, release, surrender, alteration or compromise of any of the Liabilities, and shall not be subject to any defense or setoff, counterclaim, recoupment or termination whatsoever by reason of the invalidity, illegality or unenforceability of the Liabilities or otherwise. Without limiting the generality of the foregoing, the obligations of Guarantor hereunder shall not be discharged or impaired or otherwise affected by the failure of any of the Sellers or Executive to assert any claim or demand or to enforce any remedy under the SPA, the Employment Agreement or the Promissory Note, by any waiver or modification of any provision of any thereof, by any default, failure or delay, willful or otherwise, in the performance of the Liabilities, or the failure to perfect or enforce, or the release of, any security interest or by any other act or omission that may or might in any manner or to any extent vary the risk of Guarantor or that would otherwise operate as a discharge of each Guarantor as a matter of law or equity (other than the indefeasible payment in full in cash of all the Obligations) (it being understood that the foregoing shall not be deemed to imply that any such security exists).

SECTION 5. <u>Defenses Waived</u>. To the fullest extent permitted by applicable law, Guarantor waives any defense based on or arising out of any defense of D&D to or the unenforceability against D&D of, the Liabilities or any part thereof from any cause, or the cessation from any cause of the Liabilities in respect of D&D, other than the final and indefeasible payment in full in cash of the Liabilities. The Sellers and Executive may, at their election, compromise or adjust any part of the Liabilities, make any other accommodation with any of D&D and Guarantor or exercise any other right or remedy available to them against D&D or Guarantor, without affecting or impairing in any way the liability of Guarantor hereunder except to the extent the Liabilities have been finally and indefeasibly paid in full in cash. Pursuant to, and to the fullest extent permitted by, applicable law, Guarantor waives any defense arising out of any such election even though such election operates, pursuant to applicable law or otherwise, to impair or to extinguish any right of reimbursement or subrogation or other right or remedy of Guarantor against D&D, or any security (it being understood that the foregoing shall not be deemed to imply that any such security exists).

SECTION 6. <u>Subordination</u>. Upon payment by Guarantor of any sums to the Sellers or Executive as provided above, all rights of Guarantor against D&D arising as a result thereof by way of right of subrogation, contribution, reimbursement, indemnity or otherwise shall in all respects be subordinate and junior in right of payment to the prior indefeasible payment in full in cash of all the Liabilities. In addition, any indebtedness of D&D now or hereafter held by Guarantor is hereby subordinated in right of payment to the prior indefeasible payment in full of the Liabilities during the existence of any Guaranty Trigger Default. If any amount shall erroneously be paid to Guarantor on account of (i) such subrogation, contribution,

3

reimbursement, indemnity or similar right or (ii) any such indebtedness of D&D, such amount shall be held in trust for the benefit of the Sellers and Executive and shall forthwith be paid to the Sellers and Executive, as applicable, to be credited against the payment of the Liabilities, whether matured or unmatured, in accordance with the terms of the SPA, the Employment Agreement and the Promissory Note, as applicable.

SECTION 7. Information. Guarantor assumes all responsibility for being and keeping itself informed of D&D's financial condition and assets, and of all other circumstances bearing upon the risk of nonpayment of the Liabilities and the nature, scope and extent of the risks that Guarantor assumes and incurs hereunder, and agrees that none of the Sellers and Executive will have any duty to advise Guarantor of information known to it or any of them regarding such circumstances or risks.

SECTION 8. Benefit to Guarantor. Guarantor hereby acknowledges and agrees that (a) upon consummation of the Sale D&D will become a wholly owned subsidiary of Guarantor and (b) Guarantor has determined that it will derive substantial direct and indirect benefit from the Sale and the Employment.

SECTION 9. Termination. The obligations hereunder (a) shall terminate when all the Liabilities (other than any right to indemnification of any of the Sellers and Executive with respect to any matter in respect of which no claim has been asserted and is outstanding) have been indefeasibly paid in full and (b) shall continue to be effective or be reinstated, as the case may be, if at any time payment, or any part thereof, of any Liability is rescinded or must otherwise be restored by any of the Sellers or Executive upon the bankruptcy or reorganization of D&D, Guarantor or otherwise. Upon any such termination, the Sellers and Executive (at Guarantor's request) will execute and deliver to Guarantor such documents as Guarantor may reasonably request to evidence such termination.

SECTION 10. Binding Effect. This Guaranty shall become effective upon delivery to the Sellers and Executive, without further act, condition or acceptance by the Sellers and Executive, and shall be binding upon Guarantor and the successors and assigns of Guarantor and shall inure to the benefit of the Sellers, Executive and their respective successors and assigns.

SECTION 11. Waivers; Amendment. (a) Guarantor waives promptness, diligence, notice of acceptance, notice of dishonor and any other notice with respect to any Liability and this Guaranty and any requirement that Sellers and Executive exercise any right or take any action against D&D or any collateral security or credit support.

(b) Neither this Guaranty nor any provision hereof may be waived, amended or modified except pursuant to Section 10.2 of the SPA.

SECTION 12. GOVERNING LAW. THIS GUARANTY SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK.

SECTION 13. <u>Notices</u>. All communications and notices hereunder shall be in writing and given as provided in Section 10.5 of the SPA. All communications and notices hereunder to Guarantor shall be given to it in care of D&D at the address set forth in the SPA.

SECTION 14. <u>Severability</u>. In the event any one or more of the provisions contained in this Guaranty should be held invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired thereby (it being understood that the invalidity of a particular provision in a particular jurisdiction shall not in and of itself affect the validity of such provision in any other jurisdiction).

SECTION 15. <u>Headings</u>. The various headings used in this Guaranty are for convenience of reference only, and shall not affect the meaning or interpretation of this Guaranty or any provision hereof.

SECTION 16. <u>Jurisdiction; Consent to Service of Process</u>. (a) Guarantor hereby irrevocably and unconditionally submits, for itself and its property, to the exclusive jurisdiction of any New York State court or Federal court of the United States of America sitting in New York City, and any appellate court from any thereof, in any action or proceeding arising out of or relating to this Guaranty, or for recognition or enforcement of any judgment, and hereby irrevocably and unconditionally agrees that all claims in respect of any such action or proceeding may be heard and determined in such New York State or, to the extent permitted by law, in such Federal court. Guarantor agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

(b) Guarantor hereby irrevocably and unconditionally waives, to the fullest extent it may legally and effectively do so, any objection that it may now or hereafter have to the laying of venue of any suit, action or proceeding arising out of or relating to this Guaranty in any New York State or Federal court. Guarantor hereby irrevocably waives, to the fullest extent permitted by law, the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.

(c) Guarantor irrevocably consents to service of process in the manner provided for notices in Section 13. Nothing in this Guaranty will affect the right of any of the Sellers or Executive to serve process in any other manner permitted by law.

SECTION 17. <u>WAIVER OF JURY TRIAL</u>. GUARANTOR HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION DIRECTLY OR INDIRECTLY ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS GUARANTY.

[Signature Page Follows]

5

IN WITNESS WHEREOF, the Guarantor has duly executed this Guaranty as of the day and year first above written.

ARGO-TURBOSERVE CORPORATION

By _____
Name: Paul Perialas
Title: Chief Financial Officer

ARGO TURBOSERVE CORPORATION
GUARANTY