WACHTEL & MASYR, LLP
Attorneys for Plaintiff
110 East 59th Street
New York, NY 10022
(212) 909-9500
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ARGO TURBOSERVE CORPORATION,           :        07 CV 8410 (RMB)(GWG)

                    Plaintiff, :
          -against- :
DEAN ANGELLE AND DENISE ANGELLE,       :

                    Defendants.         :
------------------------------------------------------------x

**PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

**WACHTEL & MASYR, LLP**
110 East 59th Street
New York, NY 10022
(212) 909-9500
Attorneys for Plaintiff
Argo Turboserve Corporation

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................iii

PRELIMINARY STATEMENT .................................................................................. 1

STATEMENT OF FACTS ........................................................................................... 3

ARGUMENT ............................................................................................................... 7

I.  ADHERENCE TO SECTION 9.3 OF THE STOCK PURCHASE AGREEMENT IS
    NOT A PREREQUISITE TO THE COMMENCEMENT OF THIS ACTION .............7

    A.  Section 9.3 is Clear, Unambiguous and Must be Enforced According to its
        Plain Meaning ……………………………………...…………………………… 8

    B.  Whether Plaintiff was Required to and in Fact Did Comply with Section 9.3
        of the SPA is a Question of Fact Requiring Trial …..………………………… 9

II. ATC'S CLAIMS ARE NOT DUPLICATIVE OF ONE ANOTHER AS EACH CLAIM
    RELIES ON SEPARATE AGREEMENTS AND BECAUSETHE DAMAGES
    AVAILABLE FOR EACH CLAIM ARE DISTINCT ………………………………... 10

    A.  ATC's Fraud in the Inducement Claim Is Distinct from its Indemnification
        Claim ……………………………………………………………………………... 11

    B.  ATC's Additional Contract Claims are Not Duplicative of its Indemnification
        Claim as Such Were Assigned to ATC by D&D……………………………….. 11

    C.  ATC's Breach of Fiduciary Duty and Breach of Employment Agreement Claims
        Are Not Duplicative……………………………………………………………….. 12

III. PLAINTIFF HAS PLED FRAUD WITH SUFFICIENT PARTICULARITY TO
     SATISFY FED. R. CIV. P. 9(b)……………………………………………………………14

    A.  The Misrepresentations Made by the Defendants Are Set Forth In Great
        Detail………………………………………………………………………………….15

    B.  ATC's Fraud Claim Is More Than Sufficient to Afford Defendants Notice of the
        Basis of ATC's Claim…………………………………………………………....17

IV. AS A PARTY TO THE SPA, ATC HAS STANDING TO SEEK INDEMNIFICATION
    FOR ENVIRONMENTAL REMEDIATION DEFENDANTS EXPRESSLY AGREED
    TO UNDERTAKE…………………………………………………………………… 20

V.    AS THE WHOLLY OWNED SUBSIDIARY OF ATC, D&D IS NEITHER A
      NECESSARY NOR INDESPENSIBLE PARTY UNDER RULE 19…………………..21

      A.    D&D Is Not a Necessary Party under Rule 19(a)………………………….....21

      B.    Even Were D&D a Necessary Party, It Is Not an Indispensible Party…………..24

CONCLUSION ………………………………………………………………………………… 25

## TABLE OF AUTHORITIES

### Federal Cases

Bank of Am. Corp. v. Lemgruber,
  385 F. Supp.2d 200 (S.D.N.Y. 2005)............................................................... 22

Bayer Corp. v. Smithkline Beecham PLC,
  No. 95 Civ. 5582, 1996 WL 34164 (S.D.N.Y. Jan. 29, 1996)................................ 23

Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.,
  98 F.3d 13 (2d Cir.1996)................................................................................ 11

Creative Waste Mgmt., Inc. v. Capitol Envtl. Servs., Inc.,
  429 F. Supp.2d 582 (S.D.N.Y. 2006).............................................................. 15

Dyncorp. v. GRE Corp.,
  215 F.Supp.2d 308 (S.D.N.Y. 2002)............................................................... 11

Devaney v. Chester,
  813 F.2d 566 (2d Cir. 1987)........................................................................... 20

Envirotech Corp. v. Bethlehem Steel Corp.,
  729 F.2d 70 (2d Cir. 1984)............................................................................. 24

Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.,
  375 F.3d 168 (2d Cir. 2004)............................................................................. 8

Global View Ltd. Venture Capital v. Great Basin Exploration L.L.C.,
  288 F. Supp.2d 473 (S.D.N.Y. 2003).............................................................. 16

Greenleaf v. Safeway Trails, Inc.,
  140 F.2d 889 (2d Cir. 1944)........................................................................... 25

Holland v. Fahnestock & Co., Inc.,
  210 F.R.D. 487 (S.D.N.Y. 2002) ............................................................... 22, 24

In re Refco, Inc. Sec. Litig.,
  503 F. Supp.2d 611 (S.D.N.Y. 2007)........................................................... 15,16

IUE AFL-CIO Pension Fund v. Herrmann,
  9 F.3d 1049 (2d Cir. 1993), *cert. denied*, 513 U.S. 822 (1994)........................... 19

Jaser v. New York Prop. Ins. Underwriting Ass'n,
  815 F.2d 240 (2d Cir. 1987)........................................................................... 24

Lufti v. Dow Jones,
    No. 95 Civ. 8775, 1996 WL 343065 (S.D.N.Y. June 20, 1996)............................................. 23

May Dep't Stores Co. v. Int'l Leasing Corp., Inc.,
    1 F.3d 138 (2d Cir. 1993) ............................................................................................. 15

Mills v. Polar Molecular Corp.,
    12 F.3d 1170 (2d Cir. 1993)....................................................................................... 15,16

N.L.R.B. v. United Technologies Corp.,
    706 F.2d 1254 (2d Cir. 1983)..................................................................................... 23

Nat'l Council of Young Israel v. Wolf,
    963 F. Supp. 276 (S.D.N.Y. 1997)............................................................................ 17

Primavera Familienstiftung v. Askin,
    173 F.R.D. 115 (S.D.N.Y. 1997) ............................................................................. 20

Provident Tradesmens Bank & Trust Co. v. Patterson,
    390 U.S. 102 (1968)................................................................................................... 24

Rose v. Simms,
    No. 95 Civ. 1466, 1995 WL 702307 (S.D.N.Y. Nov. 29, 1995) ............................. 22

Schlick v. Penn-Dixie Cement Corp.,
    507 F.2d 374 (2d Cir. 1974), *cert. denied*, 421 U.S. 976 (1975)....................... 17, 18

Textiles Network Ltd. v. DMC Enters., LLC,
    No. 07 Civ. 393, 2007 WL 2460767 (S.D.N.Y. Aug. 31, 2007) ............................. 11

Universal Reins. Co. v. St. Paul Fire & Marine Ins. Co.,
    No. 95 Civ. 8436, 2001 WL 585638 (S.D.N.Y. May 30, 2001)............................... 25

Wexner v. First Manhattan Co.,
    902 F.2d 169 (2d Cir. 1990)..................................................................................... 15,16

Williston v. Eggleston,
    379 F. Supp.2d 561 (S.D.N.Y. 2005)........................................................................ 9

Wilshire Limited v. Rajaei,
    No. 06 Civ. 5613, 2007 WL 2457410 (S.D.N.Y. Aug. 22, 2007) ........................... 23

## State Cases

A.W. Fiur Co. v. Ataka & Co., Ltd.,
    71 A.D.2d 370, 422 N.Y.S.2d 419 (1st Dep't 1979)................................................. 9

Gomez v. Bicknell,
    302 A.D.2d 107, 756 N.Y.S.2d 209 (2d Dep't 2002).................................................. 14

Lamdin v. Broadway Surface Adver. Corp.,
    272 N.Y. 133 (1936) ...................................................................................................... 14

Mandelblatt v. Devon Stores, Inc.,
    132 A.D.2d 162, 521 N.Y.S.2d 672 (1st Dep't 1987) ................................................. 13

Mayo, Lynch & Assocs., Inc. v. Fine,
    148 A.D.2d 425, 538 N.Y.S.2d 579 (2d Dep't 1989).................................................. 13

Sommer v. Federal Signal Corp.,
    79 N.Y.2d 540, 583 N.Y.S.2d 957 (1992) ................................................................... 13

## **Federal Rules**

Fed. R. Civ. P. 8................................................................................................................. 17, 19

Fed. R. Civ. P. 9............................................................................................................... 2, 14, 15

Fed. R. Civ. P. 19............................................................................................................. 24, 23

## PRELIMINARY STATEMENT

Plaintiff Argo Turboserve Corporation ("ATC") respectfully submits this memorandum of law in opposition to the motion by defendants Dean Angelle and Denise Angelle to dismiss the Amended Complaint (the "Complaint"). This action arises out of a stock purchase agreement pursuant to which ATC purchased all of the stock of D&D Pipe & Rentals, Inc. ("D&D") from the defendants for a purchase price of more than $7 million, subject to adjustment (the "SPA"). Mr. Angelle was given a 5 year employment agreement to lead the business, and he and Mrs. Angelle stood to receive an earn-out projected to exceed $20 million, provided that he, among other things, fulfilled his term. Mr. Angelle, however, quit about one year after the closing and ATC learned of a multitude of fraudulent misrepresentations made by defendants and other misconduct that is detailed in the Complaint. Despite its best efforts to salvage the business, ATC was forced to liquidate the business in November 2007. This is an action to recover compensatory and punitive damages, rescind the SPA and for related relief based upon ATC's claims for indemnification, fraudulent inducement, declaratory judgment, breach of employment agreement and breach of fiduciary duty.

Defendants first argue that the SPA required that they be afforded an opportunity to conduct pre-litigation discovery before ATC may initiate litigation. Although section 9.3 of the SPA, upon which the defendants rely, does provide for notice and an opportunity for inspection on an indemnification claim, it quite plainly does not condition the initiation of litigation upon such notice or completion of such inspection. Defendants suggest that should the Court decline to dismiss this action pursuant to section 9.3, it should stay the action to allow defendants to conduct the informal discovery described therein. In essence, defendants request that the this Court halt ongoing formal discovery to enable defendants to conduct "informal" discovery under a time frame that they unilaterally dictate.

Defendants next argue that ATC's fraudulent inducement claim is duplicative of its indemnification claim.  However, the SPA expressly contemplates the possibility of both fraud and indemnification claims.  Whereas the recovery available to ATC under its indemnification claim is capped by the SPA, such limitation is inapplicable to ATC's fraud claim.  Defendants also suggest that ATC's claims for Mr. Angelle's breach of his employment agreement with D&D, Mr. Angelles' breach of his fiduciary duty owed to D&D, and ATC's indemnification claim for losses incurred under the lease between D&D and Angelle Properties, L.L.C. are duplicative of its indemnification claim.  Defendants ignore several important facts:  (a) the breach of employment agreement and breach of fiduciary duty claims originally belonged to D&D and were assigned to ATC; (b) those claims are separate from those arising under the SPA; and (c) the indemnification claim relating to the lease and environmental remediation required at the leased premises is a separate and distinct one contemplated under section 8.8 of the SPA.

Defendants also claim that ATC's fraud claim was not pled with the particularity required pursuant to Fed. R. Civ. P. 9(b).  This argument relies largely on the fact that some of the misrepresentations alleged by ATC were made upon information and belief.  Defendants conveniently ignore the fact that ATC alleges several misrepresentations on the basis of actual knowledge, one of which would be sufficient to support its fraud claims.

Further, under the SPA, defendants expressly agreed to undertake any environmental remediation required at the premises of D&D.  After determining that such remediation was necessary, ATC now demands that defendants fulfill their obligations under the agreement and indemnify ATC for the cost of that remediation.  Defendants claim that ATC seeks to assert rights under a lease between D&D and defendants-owned landlord entity, when in reality, it seeks nothing more than to what it is entitled – full performance of the SPA.

Defendants finally argue that D&D is an indispensable party to the action despite the fact that D&D ceased operations and was forced to liquidate its assets in November of 2007, as it was unable to recover from the consequences of defendants' misconduct. D&D a wholly owned subsidiary of ATC, presently has no interests separate and apart from ATC, and is neither necessary nor indispensable to this action.

## STATEMENT OF FACTS

On February 1, 2006, the SPA was entered into between D&D, defendants and ATC, pursuant to which ATC agreed to purchase from the Angelles all of the issued and outstanding capital stock of D&D. (Complt. ¶¶ 8, 9).[1] The closing on the transactions contemplated by the SPA and the related "Transaction Agreements" defined in section 2.19 of the SPA occurred in March 2006 (the "Closing").[2] ATC was and is engaged in the business of providing supply chain management, distribution and consulting services to the aerospace, utility, industrial, and energy industries. D&D is a Louisiana corporation that was engaged in the purchase, sale, refurbishment, and storage of pipe used by the oil industry. (Complt. ¶ 7).

---

[1] All references to the "Complt. ¶__", refer to Plaintiff's Amended Complaint dated February 4, 2008. (Docket Entry No. 27). A complete copy of the SPA, and the "Disclosure Schedule", Exhibit "D" thereto, is attached as Exhibit A to the Declaration of Steven J. Cohen, Esq., dated April 2, 2008 ("Cohen Dec."). All references to "Pl. Ex. ___" refer to those attached to the Cohen Dec.

[2] A copy of the "Transaction Agreements" (the lease (the "Lease"), the promissory note (the "Note"), the ATC guaranty (the "Guaranty") and employment agreement) are attached to the Declaration of Mr. Liddick in support of defendants' motion as Exhibits 2,4,5 and 6, respectively, and are referred to hereinafter as "Def. Ex. ___".

Mr. Angelle was hired pursuant to an executive employment agreement (the "Employment Agreement") as an executive of D&D for five years to lead this newly formed division of ATC and receive an annual base salary of $250,000 plus benefits. (Complt. ¶ 10(c); Def. Ex. 6). Defendants' entitlement to an earn-out -- projected to exceed $20 million over the contemplated five year term of the Employment Agreement -- would terminate if Mr. Angelle quit. (Complt. ¶ 10(e)). Nonetheless, defendants elected to leave all of this money behind because Mr. Angelle quit just 13 months after entering into the Employment Agreement. (Complt. ¶ 36).

Any amounts that would have been payable under the "Transaction Agreements," including the Note and the Guaranty, were subject to offset in the event that defendants failed to satisfy their indemnity obligations under the SPA. (Complt. ¶ 10(1); Def. Ex. 4; ¶ 3; Def. Ex. 5, ¶ 2). Defendants have failed to satisfy such obligations and ATC has, accordingly, sought as its Third Claim for Relief in the Complaint a judgment declaring that defendants have no right to payment under the Note or Guaranty unless and until it is adjudicated that the losses suffered by ATC are less than any amount that may be claimed due by defendants under the Note and Guaranty.

Pursuant to the SPA, the Angelles were obligated to remediate the property leased by D&D in the event that a Phase II environmental assessment of the property recommended that any environmental remediation was required. Consistent with its obligations under section 8.8, ATC caused a Phase II environmental assessment of the property in accordance with the SPA, the results of which indicated that remediation was required. ATC seeks indemnification from defendants for the environmental remediation that is in the process of being completed.

The parties agreed that indemnification was to be their exclusive remedy under the SPA, except in the case of fraud, or as otherwise provided in the SPA or any of the Transaction Agreements.  (Def. Ex. 1; §9.4).  The indemnification procedure is set out in §9.3:

> 9.3   <u>Notice and Defense of Claims</u>
>
> (a) In the event that any of the parties shall incur or suffer any Losses in respect of which indemnification may be sought by such Party pursuant to the provision of this Section 9, the Party seeking to be indemnified hereunder (the "Indemnified Party") shall assert a claim for indemnification by written notice (a "Notice") to the Party from whom indemnification is sought (the "Indemnifying Party") stating the nature and basis of such claim.  In the case of Losses arising by reason of any third party claim, the Notice shall be given within thirty (30) days of the filing or other assertion of any such claim against the Indemnified Party, but the failure of the Indemnifying Party to give the Notice within such time period shall not relieve the Indemnifying Party of any liability that the Indemnified Party may have to the Indemnified Party unless the Indemnifying Party is actually prejudiced thereby.
>
> (b) The Indemnified Party shall provide to the Indemnifying Party on request all information and documentation reasonably necessary to support and verify any Losses which the Indemnified Party believes give rise to a claim for indemnification hereunder and shall give the Indemnifying Party reasonable access to all premises, books, records and personnel in the possession or under the control of the Indemnified Party which would have bearing on such a claim.

Pursuant to section 9.3, ATC sent the Angelles a notice of indemnification on August 14, 2007 alerting them that ATC planned to seek indemnification based upon the losses resulting from the defendants' multiple breaches of the SPA.  (Complt. ¶69; Def. Ex. 8).

Defendants' counsel responded with requests for further information under section 9.3(b)[3].  In response, ATC's counsel, by letter dated September 21, 2007, agreed to provide

---

[3] Defendants concede that certain exhibits that they attach to their motion were not incorporated by reference in the Complaint (Def. Brief at 6).  As such, ATC has made reference to a limited number of facts not specifically referenced in the Complaint solely to respond to factual issues raised by defendants.  Should the Court determine that it is appropriate to consider these

access to the premises, books and records of D&D and informed defendants' counsel that they disagreed that such access must occur before the "contemplated filing of suit by Argo Turboserve." (Def. Ex. 11). ATC filed its original complaint on September 27, 2007. Arrangements were then made for defendants and their counsel to inspect documents at D&D's Louisiana office on October 15, 2007. Defendants' characterization of what transpired next is hardly accurate.

Defendants and their counsel descended on D&D's premises on October 15, sought to interview witnesses, without the presence of ATC's counsel, and engaged in harassment and intimidation. (Cohen Dec. Ex. C). Thereafter, ATC produced more than 3,000 pages of documents requested by defendants based upon their inspection at D&D in Louisiana. Defendants also requested the opportunity to inspect documents at ATC's home office in New Jersey which resulted in the production of over 9,000 additional documents. These "inspections" and document productions were voluntarily provided by ATC before the commencement of formal discovery in this action. A significant amount of formal pre-trial discovery has also been conducted by defendants. ATC has responded to defendants' interrogatories, requests for admissions' two document requests and has provided more than 80,000 documents under the formal discovery procedures. Defendants have also deposed two executive officers of ATC thus far.

---

extraneous factual matters raised by defendants – which we respectfully submit is unnecessary in that the motion should be dismissed in its entirety – then ATC would ask that the Court permit ATC to supplement its response with affidavits, if necessary, and treat this as a motion pursuant to Fed.R.Civ.P.56. Fed.R.Civ.P.12(c).

Defendants' suggestion that ATC's notice of indemnification and subsequent filing of suit was "retaliatory" is completely misguided. <u>See</u> Def. Brief at pp 3-4.  First, ATC never received any demand for payment on the Note before this action was commenced.  Second, the suit that Dean Angelle filed in Louisiana state court against D&D on September 25, 2007, wherein he sought a declaration that his agreement not to compete with D&D was unenforceable was little more than a meaningless attempt to file first.  That action was dismissed upon application by D&D by the Louisiana state court by Order entered on March 20, 2008 (Complt. ¶ ¶ 62-65; Pl. Ex. C).

Despite ATC's best efforts to overcome the fraud and misrepresentations by defendants as catalogued in the Complaint, and the misguided stewardship of the company by Mr. Angelle before he resigned, D&D was compelled to liquidate its operations in November 2007.  In connection with that liquidation, D&D assigned certain claims to ATC for valuable consideration.  (Complt. ¶ 57).

<u>**ARGUMENT**</u>

<u>**POINT I**</u>

**SECTION 9.3 OF THE STOCK PURCHASE AGREEMENT<br>IS NOT AN EXHAUSTION OF REMEDIES PROVISION AND ATC<br><u>DID NOT PREMATURELY FILE THIS ACTION</u>**

Defendants claim that ATC's suit is premature because section 9.3 of the SPA is an exhaustion of remedies provision that ATC did not follow.  This interpretation is contrary to its plain meaning and this Court should not rewrite the SPA to serve defendants.  In addition, section 9.3 does not apply at all to the claims for fraudulent inducement, breach of the Employment Agreement, breach of fiduciary duty, and declaratory judgment.

**A.     Section 9.3 is Clear, Unambiguous and Must be Enforced According to its Plain Meaning**

The indemnification provision in section 9.3 of the SPA is clear and unambiguous. Defendants attempt an interpretation which simply does not comport with the plain language of the text. <u>Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.</u>, 375 F.3d 168, 177 (2d Cir. 2004) (where the plain terms of a contract are "'complete, clear and unambiguous,' "the contract should be enforced in accordance with the plain meaning of its terms.").

While defendants characterize the clause as an "exhaustion of remedies provision", section 9.3 does not contain any language suggesting that the "reasonable access to all premises, books, records and personnel" is a prerequisite to filing suit. Had the parties intended such a meaning, the clause would have indicated that "access" was required before any subsequent measures could be taken. Indeed, the only reference in section 9.3 to a specific timing requirement is in the case of a *third party* claim, and in that instance, the SPA requires only that notice be given "within thirty (30) days of the filing or other assertion of any such claim." Because the parties included specific limits on the timing of notice under those circumstances, it stands to reason had they wished to do the same for disputes between themselves, the text would have so indicated.

Defendants also fail to address the fact that ATC's fraudulent inducement claim is expressly carved out of the indemnification provision by virtue of section 9.4 of the SPA. As such, ATC was under no obligation to send any notice to defendants regarding this claim.

ATC's claims for breach of the Employment Agreement and breach of fiduciary duty were taken by assignment from D&D. These claims are obviously not based in, or governed by, the indemnification provisions of section 9.3. The declaratory judgment claim also, by its very nature, is not one sounding in indemnification and, therefore, not governed by section 3. The

declaratory judgment claim is based upon a logical reading of the SPA, Note and Guaranty, and the express interrelationship between them.

Nevertheless, prior to filing its Complaint, ATC gave defendants and their counsel access to all of the documents of D&D at it's principal location in Lafayette, LA on October 15, 2007 and in ATC's home office in New Jersey on November 19, 2007.  Plaintiff produced approximately 12,000 documents in response to requests made by defendants under section 9.3 alone, and has since produced 80,000 more in formal discovery.  Were the Court to stay this action and allow for further inspection of documents under section 9.3, defendants could theoretically make requests in perpetuity, as the SPA places no time limits for fulfilling the requirements of that section.

    **B.**    **Whether ATC was Required to and in Fact Did Comply with Section 9.3 of the SPA would be a Question of Fact Requiring Trial**

While "issues of contract interpretation 'are generally matters of law and therefore [are] suitable for disposition on a motion to dismiss,'" defendants' argument that ATC did not adequately comply with that section is, at best, an issue of fact.  Williston v. Eggleston, 379 F. Supp.2d 561 (S.D.N.Y. 2005).

ATC completely disagrees with defendants' interpretation of section 9.3 as an "exhaustion of remedies" provision without time limits or specific procedures.  Even were the Court to accept defendants' argument and rewrite section 9.3, whether ATC has complied with that section would be, at most, an issue of fact to be resolved at trial.  See e.g. A.W. Fiur Co. Ltd. v. Ataka & Co., 71 A.D.2d 370, 375, 422 N.Y.S.2d 419, 423 (1st Dep't 1979) (holding that whether a party's actions constituted the breach of an agreement was an issue of fact for trial).

Defendants ask this Court to rewrite the SPA to better suit their defense of this action, and to hinder and delay the prosecution of this case.  Discovery has been ongoing since the entry

of the Case Management Plan on December 3, 2007 (Docket Entry No. 15) and is presently proceeding under the guidance of Magistrate Judge Gorenstein (Docket Entry No. 28). Nonetheless, defendants seek a stay of formal discovery to pursue informal discovery. Such a request is silly. Under defendants' view, they should be permitted to continue taking discovery while ATC cannot. Defendants would then, under their construct, inform ATC and the Court when they are ready, if ever, to discuss the possibility of settlement (because no time limits are contained in section 9.3 of the SPA).

With the benefit of the results of both informal and formal discovery over the past 4 months, and with a Court-ordered mediation scheduled for May 5 (Docket Entry No. 36), the Court can reasonably conclude that defendants are in an informed position to respond to ATC's indemnification claim. For this Court to accept defendants' argument, it would first have to ignore the plain meaning of section 9.3 of the SPA, disregard the claims that are not indemnification based, and then await defendants' pronouncement as to when and if ATC's suit was ripe. Such an argument is not supported by the SPA, the law or common sense.

### POINT II

### ATC'S CLAIMS ARE NOT DUPLICATIVE OF ONE ANOTHER BECAUSE INDEPENDENT BASES EXIST FOR ITS FRAUD, CONTRACT AND OTHER CLAIMS PLED

Defendants argue that many of ATC's claims are duplicative of one another, based upon the faulty premise that ATC cannot plead separate fraud and contract claims and that there is no independent basis to assert the other claims. In this action, ATC has suffered both contract and special damages and is, therefore, free to pursue both claims (Compare, Complt. ¶¶ 67 and 68). In addition, the breach of employment agreement and breach of fiduciary duty claims were properly assigned to ATC.

**A.    ATC's Fraud in the Inducement Claim Is Distinct from its Indemnification Claim**

The defendants rely on <u>Textiles Network Ltd. v. DMC Enters., LLC</u>, No. 07-393, 2007 WL 2460767, *3 (S.D.N.Y. Aug. 31, 2007) for the proposition that in order to maintain simultaneous claims for fraud and breach of contract, the plaintiff must differentiate the claims "by (1) demonstrating a legal duty separate from the duty to perform under the contract, (2) demonstrating a fraudulent misrepresentation collateral or extraneous to the contract, <u>or</u> (3) seeking special damages caused by the misrepresentation and unrecoverable as contract damages." <u>Id</u>. (citing <u>Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc</u>., 98 F.3d 13, 20 (2d Cir.1996)). (emphasis added). Special damages have been described as those that, "arise in consequence of a breach and seek to compensate a plaintiff for losses other than the diminished value of the promised performance." <u>Dyncorp. v. GTE Corporation</u>, 215 F.Supp.2d 308, 326 (S.D.N.Y. 2002).

ATC was well aware of such requirements and pled special damages in ¶ 68 of its Complaint. ATC can simultaneously pursue both fraud and contract claims even though the defendants legal obligations to ATC arise exclusively out of the SPA because ATC has suffered special damages that would not otherwise be recoverable as contract damages. <u>Bridgestone/Firestone, Inc.</u>, 98 F.3d at 20.

**B.    ATC's Claims for Breach of Employment Agreement and Breach of Fiduciary Duty are Not Duplicative of its Indemnification Claim as Such Were Assigned to ATC by D&D**

When ATC liquidated the assets of D&D and wound up its affairs, it took an assignment of D&D's claims arising under the breach of the Employment Agreement. (Complt. ¶¶ 57, 91-95). It is the breach of that agreement for which ATC seeks damages. Damages arising from a breach of the Employment Agreement are not among those enumerated in the definition of

"Losses" in section 9.1. As such, those damages are separate and apart from those recoverable under the indemnification provisions.

ATC's indemnification claims arise out of both the misrepresentations of defendants contained in the SPA, and their post closing misconduct in violation of section 8.4 of the SPA. ATC can pursue claims for indemnification under section 8.4 and Article IX of the SPA, because Mr. Angelle's conduct subsequent to the Closing violated his agreement to, "not voluntarily undertake any course of action with materially interferes [with ATC's rights under the SPA]." (Complt. ¶ 10g).

Another distinction between these claims and the others asserted is the recovery available for each. Specifically, the Employment Agreement does not contain a restriction on damages for the breach thereof, whereas the indemnification claims may be limited under Article IX. Accordingly, ATC should not be precluded from pursuing both its indemnification claim, and its assigned breach of contract claim.

Finally, ATC's claim for losses sustained under the Lease is properly pled as an indemnification claim under the plain meaning of section 8.8 of the SPA. (Complt. ¶¶ 88-90). That ATC pled the Lease-based claim as a separate cause of action is irrelevant. Thus, defendants' argument that ATC lacks standing to pursue losses incurred under the Lease notwithstanding, which are addressed at Point IV, *infra*, there is no question that ATC is entitled to pursue an indemnification claim under the Lease.

## C.    ATC's Breach of Fiduciary Duty and Breach of Employment Agreement Claims Are Not Duplicative

While defendants correctly point out that ATC's breach of Employment Agreement and breach of fiduciary duty claims arise out of the same conduct, they ignore well settled case law in New York that conduct constituting breach of contract "may also constitute the breach of a duty

arising out of the relationship created by the contract but independent of the contract itself."
Mandelblatt v. Devon Stores, Inc., 132 A.D.2d 162, 167-68, 521 N.Y.S.2d 672, 676 (1st Dep't
1987). The New York Court of Appeals described several factors courts should examine to
determine whether contract and tort claims arising out of the same agreement can be maintained
simultaneously. Sommer v. Federal Signal Corp., 79 N.Y.2d 540, 551, 583 N.Y.S.2d 957, 961
(1992) (stating "A legal duty may be imposed by law as an incident to the parties' relationship").
"[W]here plaintiff is essentially seeking enforcement of the bargain, the action should proceed
under a contract theory." Id. at 552, 962. Here, ATC is not seeking simply to enforce the benefit
of the Employment Agreement. As discussed below, the damages available to ATC for Mr.
Angelle's breach of the fiduciary exceed those available under the Employment Agreement.

Paragraph 34 of the Complaint sets forth five separate breaches of the Employment
Agreement. (Complt. ¶ 34). Paragraph 38 of the Complaint alleges that Mr. Angelle formed a
company to compete with D&D and misappropriated proprietary information and business
opportunities belonging to D&D. While there is no doubt that such allegations constitute a
breach of the Employment Agreement, and specifically the covenant not to compete contained
therein, the allegations also constitute a breach of the fiduciary duty owed by an employee to an
employer. "[An employee] is prohibited from acting in any manner inconsistent with his agency
or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance
of his duties." Lamdin v. Broadway Surface Advert. Corp., 272 N.Y. 133, 138 (1936). The duty
of loyalty exists independent of an employment agreement or covenant not to compete. Mayo,
Lynch & Assoc., Inc. v. Fine, 148 A.D.2d 425, 426, 538 N.Y.S.2d 579, 580 (2d Dep't 1989).

Further, the damages available for breach of the Employment Agreement and the breach
of Mr. Angelle's fiduciary duty are different. Specifically, under the Employment Agreement,

ATC may recover D&D's lost profits resulting from Mr. Angelle's multiple breaches of the Employment Agreement.  Gomez v. Bicknell, 302 A.D.2d 107, 113-114, 756 N.Y.S.2d 209, 215-16 (2d Dep't 2002).  In contrast, under its fiduciary duty claim, ATC is entitled to recover from Mr. Angelle any profits he earned as a result of the breach of his fiduciary duty to D&D – specifically, the duty not to compete or misappropriate D&D's business.  Id.  Thus, as the claims for breach of the Employment Agreement and breach of fiduciary duty are founded on separate duties – one imposed by contract, the other imposed by law – and because the damages available under each cause of action are different, ATC is well within its rights to assert and recover under both causes of action.

### POINT III

### PLAINTIFF HAS PLED FRAUD WITH SUFFICIENT PARTICULARITY TO SATISFY FED. R. CIV. P. 9(b)

ATC's allegations of fraud in the inducement are well pled, and set forth the elements with sufficient particularity to satisfy the requirements of Fed. R. Civ. P. 9(b).  The Complaint sets forth at least twelve specific misrepresentations made by the Angelles in connection with the SPA, only six of which were based "on information and belief."  Moreover, the six allegations made "on information and belief" concern forgery, bribery, theft, and other matters about which only the defendants have actual direct knowledge, and of which ATC can, at this time, only infer from other evidence it is in the process of marshalling.  The Angelle's *ad hominem* attack on ATC's Complaint as "Kafkaesque in nature," demonstrates a complete misunderstanding of Rule 9(b).  What is "Kafkaesque" is defendants' argument that, because their fraud was concealed with the practiced skill of a professional grifter, ATC's failure to uncover all of its nuances immunizes defendants from suit.

**A.**     **The Misrepresentations Made by the Defendants Are Set Forth In Great Detail**

Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b).  "To meet the requirements of Rule 9(b), a complaint must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" In re Refco, Inc. Sec. Litig., 503 F. Supp. 2d 611, 630 (S.D.N.Y. 2007) (citing and quoting Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993).  To recover on a theory of fraudulent inducement under New York law, the plaintiff must prove: (1) misrepresentation of a material fact; (2) falsity of the representation; (3) scienter; (4) reasonable reliance; and (5) damages. Creative Waste Management, Inc. v. Capitol Envtl. Servs., Inc., 429 F. Supp.2d 582, 607 (S.D.N.Y. 2006) (citing May Dep't Stores Co. v. Int'l Leasing Corp., Inc., 1 F.3d 138, 141 (2d Cir. 1993).  While a plaintiff seeking redress for fraud must plead the "factual basis giving rise to a 'strong inference' of fraudulent intent . . . allegations may be based on information and belief when facts are peculiarly within the opposing party's knowledge." Wexner v. First Manhattan Co., 902 F.2d 169, 172 (2d Cir. 1990).

As each of defendants' alleged misrepresentations were made either in Article II of the SPA itself, or the attachments thereto, ATC has identified those misrepresentations with specificity, identified the speaker, and stated where and when such statements were made (i.e. in the SPA at Closing).  (Complt. ¶¶ 73-74).  Further, the Complaint explains why the statements were fraudulent in great detail in paragraphs sixteen through thirty-one of the Complaint. (Complt. ¶¶ 16-31).  Of the sixteen paragraphs that describe the basis for ATC's allegations that the defendants' representations were false, six of the allegations were made upon information

and belief. Defendants, bizarrely, argue that because six allegations were made upon information and belief, this Court should dismiss ATC's entire fraudulent inducement claim.

The defendants do not even mention that paragraphs 16, 18, 22, 23, 26, and 30 of the Complaint set forth six specific representations made in connection with the SPA and set forth an explanation as to why such representations were fraudulent. See In re Refco, 503 F. Supp. 2d at 630 (describing the elements that must be pled to satisfy Rule 9(b), and citing Mills, 12 F.3d at 1175). Defendants apparently take issue with paragraphs 17, 20, 24, 25, 28, and 29 of the Complaint wherein the ATC specifically identified six additional representations, and described, upon information and belief, why it believes those misrepresentations were false. ATC need only prove a single material misrepresentation upon which it justifiably relied and which induced it to enter into the SPA in order to prevail on its fraudulent inducement claim. Thus, even were the court to find that the allegations made upon information and belief are insufficiently particular under Rule 9(b), dismissal of the fraudulent inducement claim is not warranted. ATC can prevail on such a claim based solely on a single allegation not made upon information and belief. See Global View Ltd. Venture Capital v. Great Central Basin Exploration L.L.C., 288 F. Supp.2d 473, 478 (S.D.N.Y. 2003) (dismissing only those fraud claims that the court found were not pled with sufficient particularly and granting leave to replead).

However, even the allegations made upon information and belief are sufficient to satisfy Rule 9(b). While a plaintiff seeking redress for fraud must plead the "factual basis giving rise to a 'strong inference' of fraudulent intent . . . allegations may be based on information and belief when facts are peculiarly within the opposing party's knowledge." Wexner, 902 F.2d at 172. Defendants place great importance on the rule that where facts are peculiarly within the opposing party's knowledge, "the complaint must allege facts demonstrating the basis for the information

and belief." <u>Nat'l Council of Young Israel v. Wolf</u>, 963 F. Supp. 276, 281 (S.D.N.Y. 1997).  In

short, the defendants argue, incorrectly, that ATC must do more than describe the claim in detail,

but must also provide detailed evidence of defendants' fraudulent scheme.

**B.    ATC's Fraud Claim Is More Than Sufficient to Afford Defendants Notice of the Basis of ATC's Claim**

"Rule 9 must be construed in conjunction with [Fed. R. Civ. P. 8] . . . and a complainant

is not required to plead evidence."  <u>Schlick v. Penn-Dixie Cement Corp.</u>, 507 F.2d 374, 379 <u>cert.</u>

<u>denied</u> 421 U.S. 976 (1975), <u>overruled on other grounds</u>.  Rule 8 states, in relevant part, "a

pleading that states a claim for relief must contain: . . . a short and plain statement of the claim

showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8.  Importantly, the allegations

made upon information and belief relate solely to information peculiarly within the knowledge of

defendants, as described more fully below.  Further, each of the allegations made upon

information and belief relate solely to the inaccuracy of the representations contained in the SPA,

and each allegation clearly sets forth the reason for ATC's belief that the representations were

false.  Defendants suggest that ATC is obligated to identify, in its initial pleading, details

"regarding specific D&D Pipe customers and other specifics as to alleged bribes, for example,

are required."  (Def. Brief. p. 18).  However, not only is such information peculiarly within

defendants own knowledge, such information constitutes the evidence that defendants'

representations were false, which ATC is not required to provide in its pleading.  <u>Schlick</u>, 507

F.2d at 379 (stating a complainant is not required to plead evidence).

Had the Complaint set forth defendants' alleged misrepresentations and a conclusory

statement that, on information and belief, such representations were untrue, the Complaint would

not have satisfied Rule 9(b).  But ATC does provide detailed allegations, some on information

and belief, and others on actual knowledge, concerning the falsity of defendants' representations.

At this early stage of the litigation, ATC is not obligated to lay bare every piece of evidence that supports its claims, yet that is what the defendants suggest this Court force ATC to do.

For example, ATC alleges in paragraph 17 of the Complaint that defendants did not disclose transactions that were outside the ordinary course of D&D's business (i.e. that defendants misrepresented D&D's ordinary business practices). The basis for that allegation is ATC's belief that inspection reports were forged. ATC's pleading need not set forth every item of evidence that supports its belief that reports were forged. See Schlick, 507 F.2d at 379. Moreover, defendants have far more information in their possession concerning the accuracy of this allegation than does ATC. Simply, if defendants forged inspection reports, then they know far better than ATC which reports were forged and do not need ATC to provide them with such information in its pleading.

Similarly, paragraph 20 of the Complaint contains the allegations that defendants misrepresented the value of D&D's inventory because Mr. Angelle, according to ATC's information and belief, altered markings on pipe to misrepresent the quality of the pipe. Again, ATC's pleading need not identify each piece of evidence upon which its belief is based. Details concerning which pipes were improperly marked lie peculiarly with defendants' knowledge. The same is true of the allegations contained in paragraphs 24, 25, and 28 of the Complaint. Each such paragraph includes allegations that specifically tie into defendants' misrepresentations. Given the level of detail set forth in these allegations, defendants cannot reasonably contend they do not have sufficient detail to understand what ATC intends to prove.

Finally, ATC alleges in paragraph 29 of the Complaint that Dean Angelle did not disclose the true nature of his relationship with Russell Vera and related entities in violation of section 2.23 and the Disclosure Schedule of the SPA. Defendants well know that Mr. Vera and the

entities identified in paragraph 29 are directly related to "Cypress Tree Energy Company" identified in paragraph 30, and that the violative conduct (i.e., Mr. Angelle's unavailability) referenced in paragraph 30 pertains to paragraph 29. Each of the aforementioned allegations details the misrepresentations or omission, by whom each was made, and why each was misleading.

Importantly, it was the Angelles' failure to disclose activities outside of the ordinary course of business that constituted fraud against ATC, not the individual allegations of forgery, theft, etc. Were information about the Angelles' fraud readily obtainable, ATC would not have purchased D&D to begin with. There is no doubt that there is sufficient information in the Complaint "to give defendants notice of the transactions intended to be proven and the elements of the claims," which is the purpose of the particularity requirements of Rule 9(b) when read in conjunction with Fed. R. Civ. P. 8.

> The specificity required by Rule 9(b) is distinct from Rule 8(a)'s liberal "plain statement" rule. This distinction serves several purposes: (1) to afford defendant fair notice of the plaintiff's claim and the factual ground upon which it is based; (2) [to] safeguard[] defendant's reputation and goodwill from improvident charges of wrongdoing; and (3) to inhibit the institution of strike suits. Nevertheless, Rule 9(b) must be read together with rule [8(a)'s requirement that pleadings set forth "a short and plain statement of the claim"].

IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1057 (2d Cir. 1993) cert. denied, 513 U.S. 822 (1994) (citations and quotation marks omitted)(emphasis added). There is no question that Mr. Angelle knows the truth concerning ATC's allegations, knows what pipe was mislabeled, which inspection reports were forged, etc. Defendants are thus fully capable of understanding ATC's allegations and responding to its Complaint as they have far more information concerning their alleged fraud than does ATC. Defendants essentially ask this Court

to reward them for cleverly concealing evidence of their fraud to such an extent that it would be almost impossible for ATC to detail, in its Complaint, all of the facts that relate to such fraud[4].

## POINT IV

### AS A PARTY TO THE SPA, ATC HAS STANDING TO SEEK INDEMNIFICATION FOR ENVIRONMENTAL REMEDIATION DEFENDANTS EXPRESSLY AGREED TO UNDERTAKE

When the defendants and ATC closed under the SPA in March 2006, defendants caused their company, Angelle Properties, L.L.C.'s to simultaneously close with D&D on the Lease, which was attached as an exhibit to the SPA. Section 6 of the SPA sets forth ATC's conditions for purchase and one such condition was that defendants close on the Lease. (Complt. ¶10 (d); Pl. Ex. 1, § 6.11; Def. Ex. 2).

The defendants further agreed that in the event that environmental remediation was recommended based upon a Phase II environmental assessment of the property then, they, as individuals, would conduct and pay for any of the costs associated with that remediation.

---

[4] As discovery proceeds, ATC expects to acquire additional information concerning defendants' misconduct that was not available at the time it filed its Complaint. Indeed, just yesterday Magistrate Judge Gorenstein directed defendants to provide additional discovery based upon ATC's motion to compel. Although ATC is mindful of the Courts' disinclination to permit repeated amendments to complaints, we respectfully request that should this Court entertain granting defendants' motion to dismiss for failure to plead with sufficient particularity, that leave to replead be granted. See Devaney v. A.P. Chester, 813 F.2d 566, 569 (2d Cir. 1987) (noting that the degree of particularity required in a fraud claim relates to the status of discovery), accord Primavera Familienstiftung v. Askin, 173 F.R.D. 115, 128 (S.D.N.Y. 1997).

Consistent with its obligations under section 8.8, ATC caused the Phase II Environmental Report assessment of the property. (Complt. ¶¶ 10(h), 61). The results indicated that remediation was required, the cost of which the Angelles expressly agreed to undertake in section 8.8.

Contrary to defendants' suggestions, ATC is not attempting a strained view of standing nor does it endeavor to create standing where none exits. ATC seeks indemnification for losses incurred under the Lease pursuant to section 8.8 of the SPA. Should defendants fail to comply with section 8.8 of the SPA; any costs associated with remediation will be borne by ATC, as D&D – after forced liquidation – no longer has any assets. Such a result would allow the Angelles to forgo their obligations under the SPA and award them a windfall of ill gotten gains.

## POINT V

### AS THE WHOLLY OWNED SUBSIDIARY OF ATC, D&D IS NEITHER A NECESSARY NOR INDISPENSIBLE PARTY UNDER RULE 19

Defendants' argument that D&D is a necessary party is completely disingenuous considering the parties' prior agreement to litigate disputes in this forum, and the fact that, for all intents and purposes, D&D no longer exists.

### A.    D&D Is Not a Necessary Party under Rule 19(a)

As the SPA made clear in the third recital clause on page one, ATC operated D&D as its wholly-owned subsidiary. Due to the multiple misrepresentations and fraud perpetrated by defendants, ATC was forced to liquidate D&D's assets in November, 2007. (Complt. ¶ 56). Subsequent to the liquidation, D&D assigned all of its claims under the Employment Agreement to ATC for good and valuable consideration (Complt.¶ 57). As such, ATC is the real party in interest. Because of the relationship between D&D and ATC, D&D's interests are adequately represented by ATC making its joinder unnecessary and an exercise in semantics only.

Courts have devised a two part test for determining whether a claim must be dismissed for failure to join an indispensable party. The first step requires a determination as to whether that party is "necessary" under Rule 19(a). Holland v. Fahnestock & Co., Inc., 210 F.R.D. 487, 493 (S.D.N.Y. 2002). Rule 19(a) "examines whether, in a party's absence, complete relief can be accorded among those already parties to the suit." Rose v. Simms, No. 95-1466, 1995 WL 702307 * 3 (S.D.N.Y. November 29, 1995). Rule 19(a)(i) considers whether the absent party has some interest that needs to be protected, while Rule 19(a)(ii) considers the likelihood that an "existing party [would be] subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." FED. R. CIV. P. 19(a).

The second step under Rule 19(b), required only when the party is deemed necessary, asks the court to determine whether in "equity and good conscience" the action should proceed without that party. Defendant has failed to show that D&D is necessary, dispensing the need for an analysis under Rule 19(b).

Defendants' argument that D&D is a necessary party is little more than a fantasy designed to avoid the parties' prior agreement on the forum for resolution of their disputes. In making this argument defendants ignore the facts that: (1) D&D is a wholly owned subsidiary of ATC; (2) D&D was forced out of business by defendants' fraud; (3) D&D assigned certain claims to ATC; and (4) D&D has no interests separate and apart from ATC's interests. (Complt. ¶¶ 9, 56, 57).

Because the interests of D&D and ATC are one in the same, ATC as parent may represent the interests of its subsidiary without joining it as a party to the action. Bank of Am. Corp. v. Lemgruber, 385 F.Supp.2d 200, 232-33 (S.D.N.Y. 2005). While defendants cite Lemgruber in support of their argument that D&D is a necessary party, the court in Lemgruber

held that to the extent that a non-joined subsidiary had an interest in a breach of contract claim, "the interest was adequately protected by []… [its] corporate parents, who invoked [the] same … rights in bringing *their* breach of contract claim." Id. at 232. (emphasis added). In Bayer Corp. v. Smithkline Beecham PLC, No. 95-5582, 1996 WL 34164 * 4-7 (S.D.N.Y. January 29, 1996), the court held that where two non-joined subsidiaries were "fully owned by, and their interests identical to, their respective [defendant] parents"[]"the absence of [those] subsidiaries [would] neither affect [the] litigation nor harm the interests of nonparties. See also Wilshire Ltd. v. Rajaei, No. 06-5613, 2007 WL 2457410 * 4-5 (S.D.N.Y. August 22, 2007) (holding that a non-party was not necessary because its 100% owner, as a party, adequately represented its interests).

Moreover, D&D is not a necessary party because defendants bear no risk associated with inconsistent obligations. For the purposes of res judicata, "a valid judgment on the merits is a bar to a subsequent action between the same parties, or those in privity with them." N.L.R.B. v. United Technologies Corp., 706 F.2d 1254, 1259 (2d Cir. 1983). (emphasis added). "A corporate parent is deemed to be in 'privity' with its subsidiary when it sufficiently represents that subsidiary's interests." Lufti v. Dow Jones, No 95 Civ. 8775, 1996 WL 343065 * 2 (S.D.N.Y. June 20, 1996). In Lufti, the court dismissed an action commenced against a corporate parent where an action seeking the same relief against its wholly owned subsidiary was dismissed one year prior. Because of the privity between ATC and D&D, the Angelles are insulated from inconsistent or multiple obligations, as any subsequent action seeking the same relief brought in the name of D&D would be barred by res judicata.

## B.    Even Were D&D a Necessary Party, It Is Not an Indispensible Party

Even were this Court to find that D&D is a necessary party, D&D is not an indispensible party. Because there is no diversity between D&D and defendants, were it found to be a necessary party, this Court must next consider whether, "in equity and good conscience, the

action should proceed among the existing parties or should be dismissed." FED. R. CIV. P. 19(b). "[V]ery few cases should be terminated due to the absence of non-diverse parties unless there has been a reasoned determination that their nonjoinder makes just resolution of the action impossible." Jaser v. New York Property Ins. Underwriting Ass'n, 815 F.2d 240, 242 (2d Cir. 1987).

The Supreme Court has recited four factors for determining the necessity of a party.

> (1) the plaintiff's interest in having a federal forum; (2) the defendant's interest in avoiding multiple litigation, inconsistent relief, and sole responsibility for liability jointly shared, if codefendant is dismissed from the suit; (3) the absent codefendant's inability to protect its interests in any judgment rendered; and (4) the public interest in complete, consistent and efficient settlement of controversies.

Envirotech Corp. v. Bethlehem Steel Corp., 729 F.2d 70 (2d Cir. 1984) (citing Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 109-11 (1968)). With respect to the application of these factors, the Second Circuit has held that:

> The language of Rule 19(b) leaves the district court with 'substantial discretion in considering which factors to weigh and how heavily emphasize certain considerations in deciding whether the action should go forward in the absence of someone needed for a complete adjudication of the dispute.

Envirotech Corp., 729 F.2d at 75.

Although an alternative forum exists, defendants have failed to demonstrate why plaintiff's contractual choice of forum and law should not be honored. See Holland, 210 F.R.D. at 496 (considering the plaintiff's choice of forum and law in determining that a party was not indispensable under Rule 19(b)). As discussed *supra*, ATC may sufficiently protect the interests of D&D as its 100% owner, thus making an alternative forum unnecessary. See Byer Corp. *supra* at * 6 (holding that "[a]lthough an adequate alternative forum exists in New York state courts, [defendant] has failed to show that [the subsidiaries] will suffer a substantial risk of

prejudice if this case proceeds in their absence…. [as defendant] will be sufficiently able to protect the interests of [ the subsidiaries]" ).

While defendants argue that D&D, as an obligor under the Note, is indispensible, they ignore the fact that D&D is out of business and that ATC (if the Court were to ultimately determine that any payment were still due to defendants) executed the Guaranty.  It is well settled that co-obligors are not indispensable parties under Rule 19(b).  Greenleaf v. Safeway Trails, Inc., 140 F.2d 889, 890-91 (2d Cir. 1944) ("one of several joint obligors is not an indispensable party to an action against the others"); see also Universal Reins. Co. v. St. Paul Fire & Marine Ins. Co., No. 95-8436, 2001 WL 585638 at *4 (S.D.N.Y. May 30, 2001)  ("Well established precedent holds that 'one of several joint obligors is not an indispensable party to an action against the others.' ").

Equity and good conscience do not militate in favor of dismissing the action for failure to join a non-necessary entity that is wholly owned by plaintiff and maintains no interests separate and apart from those of its parent, ATC.

## CONCLUSION

Based upon the foregoing reasons, the Court should deny defendants' motion to dismiss, or, alternatively, for a stay in its entirety with prejudice and award such other and further relief as may be just and proper.

Dated: New York, New York
     April 2, 2008

                                            WACHTEL & MASYR, LLP
                                            By: /s/_____
                                            Steven J. Cohen (SC 1289)
                                            110 East 59th Street
                                            New York, New York 10022
                                            (212) 909-9500
                                            Attorneys for Plaintiff
                                            Argo Turboserve Corporation