**Gregory W. O'Neill** (GO 1944)
**Elizabeth A. McCoy** (EM 8448)
Hill, Betts & Nash L.L.P.
One World Financial Center
200 Liberty Street, 26th Floor
New York, New York 10281
Tel.: (212) 839-7000
Fac.: (212) 466-0514

**Carl D. Rosenblum** (LA Bar No. 02083) (Admitted *Pro Hac Vice*)
**Eric Michael Liddick** (LA Bar No. 31237) (Admitted *Pro Hac Vice*)
Jones, Walker, Waechter, Poitevent,
  Carrère & Denègre, L.L.P.
201 St. Charles Avenue, 49th Floor
New Orleans, Louisiana 70170
Tel.: (504) 582-8000
Fac.: (504) 582-8011

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **ARGO TURBOSERVE CORPORATION,**<br><br>                          Plaintiff,<br><br>versus<br><br>**DEAN ANGELLE AND DENISE ANGELLE,**<br><br>                          Defendants. | **CASE NO. 07 CV 8410 (RMB) (GWG)**<br><br><br><br>**ECF** |

**DEFENDANTS' REPLY TO PLAINTIFF'S MEMORANDUM IN OPPOSITION TO**
**<u>DEFENDANTS' MOTIONS TO DISMISS</u>**

**Table of Contents**

Page

ARGUMENT ..........................................................................................................................1

I.   THIS PROCEEDING IS PREMATURE AND SHOULD BE DISMISSED OR, ALTERNATIVELY, STAYED..........................................................................................1

II.  ATC'S CLAIMS FOR RELIEF ARE DUPLICATIVE ........................................................3

     A.   ATC's claim for fraudulent inducement is not distinct from ATC's indemnification claim and should therefore be dismissed. ......................................3

     B.   ATC's other claims are not distinct from ATC's *exclusive and limited* claim for indemnification and should therefore be dismissed. ...............................4

     C.   At a minimum, ATC's breach of Employment Agreement and breach of fiduciary duty are duplicative and should be dismissed. .........................................6

III. ATC'S FRAUD CLAIM LACKS THE REQUISITE PARTICULARITY .......................6

IV.  ATC LACKS STANDING TO PURSUE LOSSES INCURRED UNDER THE LEASE..................................................................................................................................8

V.   D&D PIPE IS A NECESSARY AND INDISPENSABLE PARTY IN THIS MATTER..............................................................................................................................9

CONCLUSION.....................................................................................................................10

EXHIBITS

EXHIBIT 12:  ROSENBLUM E-MAIL STRING DATED OCTOBER 16, 2007
EXHIBIT 13:  ROSENBLUM LETTER DATED OCTOBER 24, 2007
EXHIBIT 14:  LOUISIANA SECRETARY OF STATE DETAILED RECORD FOR D&D PIPE & RENTALS, INC.

**Table of Authorities**

**Cases**

*Arnold Chevrolet LLC v. Tribune Co.*,
    No. 04-3097, 2007 WL 2743490 (E.D.N.Y. Sept. 17, 2007) ......................... 7, 8

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*,
    98 F.3d 13 (2d Cir. 1996)............................................................................... 3, 4

*Bullmore v. Banc of Am. Securities, LLC*,
    485 F.Supp.2d 464 (S.D.N.Y. 2007).................................................................. 6

*Carte Blanche (Singapore) Pte., Ltd. v. Diners Club Int'l, Inc.*,
    2 F.3d 24 (2d Cir. 1993).................................................................................... 8

*Holland v. Fahnestock & Co., Inc.*,
    210 F.R.D. 487 (S.D.N.Y. 2002) ..................................................................... 10

*IUE AFL-CIO Pension Fund v. Herrmann*,
    9 F.3d 1049 (2d Cir. 1994)................................................................................ 8

*Lavian v. Haghnazari*,
    884 F.Supp. 670 (E.D.N.Y. 1995) .................................................................... 6

*Luce v. Edelstein*,
    802 F.2d 49 (2d Cir. 1986)................................................................................ 6

*Lufti v. Dow Jones*,
    No. 95-8775, 1996 WL 343065 (S.D.N.Y. June 20, 1996) ............................. 10

*Mayo, Lynch & Assoc., Inc. v. Fine*,
    148 A.D.2d 425 (N.Y. App. Div. 1989) ............................................................ 6

*Mintz & Gold LLP v. Zimmerman*,
    848 N.Y.S.2d 814 (N.Y. Sup. Ct. 2007) ........................................................... 8

*Nat'l Council of Young Israel v. Wolf*,
    963 F.Supp. 276 (S.D.N.Y. 1997) .................................................................... 6

*Provident Tradesman Bank & Trust Co. v. Patterson*,
    390 U.S. 102 (1968)......................................................................................... 10

*Spira v. Nick*,
    876 F.Supp. 553(S.D.N.Y. 1995) ..................................................................... 7

**Rules**

Fed. R. Civ. P. 19(a)(1)(B)(ii) (2008)................................................................... 9

**Other Authorities**

BLACK'S LAW DICTIONARY 363 (6th ed. 1990) ................................................................................ 4

Defendants, Dean Angelle and Denise Angelle (collectively, "the Angelles") respectfully file this memorandum in reply to Argo Turboserve Corporation's ("ATC") Opposition.

## ARGUMENT

**I.    This Proceeding is Premature and Should Be Dismissed or, Alternatively, Stayed**

Though both parties assert that Section 9.3(b) of the Stock Purchase Agreement ("SPA") is clear and unambiguous, ATC's construction is unreasonable and leads to absurd consequences. Indeed, ATC fails address how Section 9.3(b) could be anything but an exhaustion of remedies provision. The provision provides, in part, that reasonable access to "*personnel*" "*shall*" be provided. (Rec. Doc. No. 31, Ex. 1, § 9.3(b) (emphasis added)). The meaning of the words "shall" and "personnel" could not be more plain, and signal the mandatory nature of Section 9.3(b)'s directives. Here, it is undisputed that ATC expressly denied the Angelles any access to "personnel." As such, this suit is premature.[1]

Reasonably implicit in Section 9.3(b)'s express requirement that ATC provide "all information reasonably necessary to support and verify any Losses" and "reasonable access to all premises, books, records and personnel" is the requirement that such information-giving and access occur *prior to filing suit*. Section 9.3(b) was clearly designed to afford the indemnifying party an opportunity to evaluate the evidence supporting any claim *pre*-litigation. ATC acknowledges that Section 9.3(b) is an informal procedure; however, if ATC can bring suit

---

[1] ATC attached as Exhibit C to its Opposition correspondence dated October 23, 2007. To assist the Court in placing the current controversy into the proper and complete context, the Angelles attach hereto as Exhibits "12" and "13," respectively, an E-mail string from Mr. Rosenblum to Mr. Cohen dated October 16, 2007, and a letter from Mr. Rosenblum to Mr. Cohen dated October 24, 2007. These exhibits confirm ATC's failure to comply with Section 9.3(b) as to access to "personnel."

before complying with this procedure, then Section 9.3(b) is displaced by formal discovery rules, thereby rendering Section 9.3(b) entirely *meaningless*. That cannot be correct.

The present situation, which results in the Angelles attempting to uncover the factual basis for ATC's allegations on parallel tracks – one informal and one formal – is exactly what the parties sought to avoid through the inclusion of Section 9.3(b). This is precisely why this formal proceeding is premature and should be dismissed. The Angelles are not seeking a "stay of discovery" as ATC suggests; instead, the Angelles seek dismissal *of the suit*, or, in the alternative, a stay of the *proceedings*. As Section 9.3(b) requires pre-litigation negotiation and opportunity for settlement *without contemporaneous waste of judicial resources*, dismissal of this suit would further the objective of efficient dispute resolution.[2] The Angelles respectfully request that the Court adopt the Angelles' reasonable interpretation consistent with contract construction principles and dismiss this suit as premature pursuant to Rule 12(b)(6). Any other result writes Section 9.3(b) out of the SPA.

Additionally, ATC's claims for fraudulent inducement, breach of the Employment Agreement, breach of fiduciary duty, and "Losses" incurred under the Lease Agreement ("Lease") clearly fall within the provisions of Article IX of the SPA, and especially Section 9.3. As these claims are nothing more than disguised indemnification claims, an issue discussed more fully *infra* at II, Section 9.3(b) remains a prerequisite to the filing of suit. And, despite raising these "new" indemnity claims in its Amended Complaint, ATC completely ignored the

---

[2] The Angelles continue to engage in active formal discovery at substantial expense in a desire to adhere to this Court's directive that formal discovery continue while the Court considers these Motions.

{N1797136.6}                    2

established procedure of Section 9.3 of the SPA. For this additional reason, this suit is obviously premature.

## II. ATC's Claims for Relief Are Duplicative

### A. ATC's claim for fraudulent inducement is not distinct from ATC's indemnification claim and should therefore be dismissed.

ATC does not even attempt to argue that its fraudulent inducement claim is extraneous or collateral to the SPA. *See Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996). Indeed, ATC explicitly admits that this claim arises solely from alleged misrepresentations *made in the SPA*. Instead, ATC turns to the mistaken argument that it is seeking "special damages," and references paragraph 68 of its Amended Complaint as support. However, paragraph 68 discusses damages sought through *indemnification*, not those for any allegedly *fraudulent* conduct. (*See* Rec. Doc. No. 27, ¶ 66).

ATC recognizes that *Bridgestone/Firestone, Inc.* is the controlling test: in order to maintain simultaneous claims for fraud in the inducement and breach of contract (here, indemnification claims), ATC must differentiate the claims by "seeking special damages caused by the misrepresentation *and unrecoverable as contract damages*." *Bridgestone/Firestone, Inc.*, 98 F.3d at 20 (emphasis added). Even if ATC's alleged damages in paragraph 68 are properly labeled "special damages," ATC does *not* seek any damages distinct from its fraudulent inducement claim.[3] This is because the SPA explicitly permits *recovery*, albeit a limited one, of ATC's claimed damages. (*See* Rec. Doc. No. 31, Ex. "1", §§ 9.1(a), 9.4). Thus, the "special damages," as claimed by ATC, are *not* "unrecoverable as contract damages" under the SPA, and,

---

[3] Notably, although ATC's fraud-based claims and damages are set forth in its "Second Claim for Relief (Fraudulent Inducement)," when ATC attempts to categorize such damages as "special damages," it moves to its "First Claim for Relief (Indemnification)."

therefore, ATC fails to satisfy *Bridgestone/Firestone, Inc.*  Instead, ATC's effort to plead both indemnification and fraudulent inducement here is a veiled attempt to avoid the damage limitations established by Section 9.1 of the SPA.  Failing the *Bridgestone/Firestone, Inc.* test, ATC's claim for fraudulent inducement is not distinct and should be dismissed under Rule 12(b)(6).

> **B.** **ATC's other claims are not distinct from ATC's *exclusive and limited* claim for indemnification and should therefore be dismissed.**

Indemnification represents the *exclusive* mode of relief for ATC's contract-based claims here. (*See id.* at § 9.4).  Either ATC has contract-based claims, which are limited to "Losses" as defined in the SPA and subject to the parties' indemnity obligation, or ATC has fraud-based claims that are not so limited.  Since ATC acknowledges that its breach of Employment Agreement, breach of fiduciary duty and breach of the Lease claims are all *contract*-based claims, those claims are limited by the SPA, and are covered by ATC's duplicative indemnity claim.

The term "Agreement" in the SPA includes "the schedules and exhibits hereto, and the Transaction Agreements."  (*Id.* at § 10.1).  "Transaction Agreements" include the SPA, the Promissory Note, the Guaranty, and the Lease.  (*See id.*).  Additionally, Section 9.1(a)(ii), a provision expressly cited by ATC in its Amended Complaint, includes breaches of *covenants* made in the "Agreement."  A "covenant" is "[a]n agreement, convention, or promise of two or more parties . . . by which either of the parties pledges himself to the other that something is either done, or shall be done, or shall not be done."  BLACK'S LAW DICTIONARY 363 (6th ed. 1990).  Given the incorporation of the "Transaction Agreements" into the broader "Agreement," and the inclusion of breaches of "covenants" under the *exclusive* indemnification remedy encompassed by Section 9.1(a), ATC's remaining claims are duplicative and must be dismissed.

Any alleged breaches of the "assigned" Employment Agreement[4] are concomitantly breaches of "covenants."  Moreover, ATC asserts that Dean Angelle's alleged breach of the Employment Agreement is also a breach of Section 8.4 of the SPA – a *covenant* to refrain from materially interfering with ATC's rights under the SPA.  Clearly, then, Section 9.1(a) embodies these alleged violations.

Similarly, ATC alleges that Dean Angelle's breach of fiduciary duty resulted "*from the Employment Agreement* and his promise to be the executive for the Business." (Rec. Doc. No. 27, ¶ 97 (emphasis added)).  Since ATC's Amended Complaint focuses on a contractually formed fiduciary duty, any alleged breach thereof is also a breach of a "covenant."  Therefore, this claim, too, falls within the exclusive and limited indemnification remedy of the SPA.

Finally, ATC seeks to obtain, pursuant to Section 8.8 *of the SPA*, any "Losses" incurred under the Lease.  Section 8.8 clearly states: "If the Sellers fail to satisfy their *obligations* under this Section 8.8, Sellers [the Angelles] shall, *in accordance with Article IX herein, indemnify*" ATC. (Rec. Doc. No. 31, Ex. "1", § 8.8 (emphasis added)).  ATC's claim for "Losses" incurred under the Lease, like its other claims, fall squarely within the indemnification provisions of the SPA.  ATC's position that these claims are distinct and separate is, respectfully, erroneous.

---

[4] Curiously, ATC's Original Complaint (filed on September 27, 2007) and its Opposition to the Angelles' initial Motions to Dismiss the same (filed on December 22, 2007) made *no* reference to any "assignment" of claims under the Employment Agreement.  At that time, ATC represented in pleadings filed under Federal Rule of Civil Procedure 11 that "ATC makes no claim for damages, nor any other relief based upon any breach of the employment agreement" (Rec. Doc. No. 20, p. 20); yet, ATC now states that it received an earlier "assignment" of such claims.  On its face and under these circumstances, the "assignment" appears to be nothing more than a "sham."

{N1797136.6}                                              5

      **C.      At a minimum, ATC's breach of Employment Agreement and breach of fiduciary duty are duplicative and should be dismissed.**

Like many of ATC's claims, its "assigned" claim for breach of the Employment Agreement and breach of fiduciary duty are predicated upon the same conduct, a fact that ATC, itself, admits. (*See* Rec. Doc. No. 40, p. 12). Moreover, ATC's reliance on *Mayo, Lynch & Assoc., Inc. v. Fine* is equally misplaced. Unlike ATC's claims here, *Mayo* involved claims for breach of fiduciary duty and *tortious interference*. *Mayo, Lynch & Assoc., Inc. v. Fine*, 148 A.D.2d 425, 426 (N.Y. App. Div. 1989). Instead, "[u]nder New York law, claims of . . . breach of fiduciary duty that merely duplicate contract claims must be dismissed." *Bullmore v. Banc of Am. Securities, LLC*, 485 F.Supp.2d 464, 469 (S.D.N.Y. 2007). Despite ATC's assertions to the contrary, Article IX of the SPA restricts damages for any breach of the Employment Agreement, as the Employment Agreement is part of the "Agreement" and includes "covenants." Both allegations embrace supposed "Losses" limited by Sections 9.1(a) and 9.4 of the SPA. Since ATC acknowledges that these claims are not separate and distinct, ATC's claim for breach of fiduciary duty, at the very least, should be dismissed.

**III.    ATC's Fraud Claim Lacks the Requisite Particularity**

"Particularity," as required by Rule 9(b) of the Federal Rules of Civil Procedure, requires that the plaintiff specify the "time, place, speaker, and . . . content of the alleged misrepresentations." *Lavian v. Haghnazari*, 884 F.Supp. 670, 675 (E.D.N.Y. 1995) (quoting *Luce v. Edelstein*, 802 F.2d 49, 52 (2d Cir. 1986)). Although a plaintiff may base these allegations on information and belief when "the facts are peculiarly within the knowledge of the defendants," a plaintiff must still "allege facts demonstrating the *basis* for the information and belief." *Nat'l Council of Young Israel v. Wolf*, 963 F.Supp. 276, 281 (S.D.N.Y. 1997) (quoting

*Spira v. Nick*, 876 F.Supp. 553, 557 (S.D.N.Y. 1995) (emphasis added)).  Here, ATC's Amended Complaint fails this test and should be dismissed.

ATC cannot rely upon "information and belief" to obtain a reprieve from Rule 9(b)'s heightened standard.  For example, when and where did Dean Angelle alter documents misrepresenting the quality of pipe sold? (Amended Complaint, ¶ 25).  When, where, and to whom did the Angelles misrepresent the quality of pipe to customers? (Amended Complaint, ¶ 25).  What is the "correct" quality?  When and where did the Angelles bribe customers? (Amended Complaint, ¶ 28).  What was the bribe?  To whom?  For what?  None of the requirements for "particularity" are met by the Amended Complaint or by reference to the SPA.

Nor are any of these details "peculiarly within the knowledge" of the Angelles as the alleged fraud arises out of the misrepresentations "made to" ATC itself.  *See Arnold Chevrolet LLC v. Tribune Co.*, No. 04-3097, 2007 WL 2743490, *4 (E.D.N.Y. Sept. 17, 2007).  The Angelles expressly deny any wrongdoing and are equally unaware of the alleged "bribes," "forged" inspection reports, and "disguised" sales that form a significant basis of ATC's Amended Complaint.  Indeed, ATC acknowledges that each of these alleged improprieties must independently satisfy the heightened standard of Rule 9(b) to avoid being dismissed.[5]  They do not.

ATC admits that the heightened pleading standard for fraud allegations serves several purposes, including fair notice to defendants of a claim and the factual basis thereof. (Rec. Doc.

---

[5] While ten of ATC's allegations of misrepresentation are not based upon "information and belief," these allegations fall within ATC's *indemnification* claim.  Therefore, ATC's assertion that these allegations support its fraudulent inducement claim highlights the fact that these two claims are *not* distinct.

No. 40 at p. 19). Without ATC's answers to the foregoing, the Angelles have not received the "fair notice" contemplated by Rule 9(b). Formal discovery is not a substitute for the requirements of Rule 9(b). *See Arnold Chevrolet LLC*, 2007 WL 2743490 at *5. The Angelles owned D&D Pipe for over 15 years during which they conducted thousands of transactions. Vague allegations that the Angelles engaged in acts at some unspecified point during ownership does not afford fair notice. ATC should not be allowed to impugn the Angelles' "reputation and goodwill from improvident charges of wrongdoing" without setting forth "particulars." *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1057 (2d Cir. 1994).[6] As ATC has shown no "strong inference" of wrongful conduct with "particularity," these claims should be dismissed.

## IV. ATC Lacks Standing to Pursue Losses Incurred Under the Lease

The issue of liability for remediation costs, amongst other disputes, is currently the subject of litigation between Angelle Properties, LLC and D&D Pipe in Louisiana state court (the "Louisiana action"). And, despite ATC's protestations to the contrary, D&D Pipe and ATC remain "legally distinct entities." *Carte Blanche (Singapore) Pte., Ltd. v. Diners Club Int'l, Inc.*, 2 F.3d 24, 26 (2d Cir. 1993). It is D&D Pipe, and *not* ATC, that has allegedly suffered or will allegedly suffer any loss or cost of remediation. It is D&D Pipe, and *not* ATC, that will be directly liable to Angelle Properties, LLC for the costs of remediation and other Lease breaches. ATC simply has no right to seek redress of any wrong allegedly borne by D&D Pipe under the Lease. This claim must be dismissed.

---

[6] The Angelles recognize that allegations in pleadings in and of themselves do not create a cause of action for defamation. *See, e.g.*, *Mintz & Gold LLP v. Zimmerman*, 848 N.Y.S.2d 814, 819 (N.Y. Sup. Ct. 2007). This is why such serious and stigmatizing fraud allegations require more under Rule 9(b).

**V.     D&D Pipe is a Necessary and Indispensable Party in This Matter**

ATC represents that it and D&D Pipe are one and the same because D&D Pipe "no longer exists" and "is out of business." Legally and factually, nothing could be further from the truth. ATC and D&D Pipe are distinct legal entities. Despite the auction of its assets in November 2007, D&D Pipe has not dissolved. A copy of the Louisiana Secretary of State's Detailed Record is attached hereto as Exhibit "14". D&D Pipe continues to be in "good standing" and has even filed an annual report *post*-auction. (*See* Ex. "14"). Moreover, $400,000 in proceeds from the auction of D&D Pipe's assets is being held in escrow and is at issue in the Louisiana action. D&D Pipe has also hired environmental consultants in Louisiana to remediate the property, has hired counsel, has recently provided deposition testimony, and has even sought to pay rent to Angelle Properties, LLC as recently as December 31, 2007. If D&D Pipe and ATC were legally and factually the same, then D&D Pipe is behaving inconsistent with this position. Thus, to suggest that ATC's interests are "identical" with those of D&D Pipe is pure fiction. ATC simply has no right to bring any of D&D Pipe's Lease-based claims here.

Nevertheless, even if the Court accepts ATC's contention that it adequately represents D&D Pipe, which the Angelles dispute, D&D Pipe is still a necessary party. As noted in the Angelles' Memorandum in Support, D&D Pipe is "necessary" because disposition in its absence will, at the very least, "leave any existing party [namely the Angelles] subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." FED. R. CIV. P. 19(a)(1)(B)(ii) (2008). Since the Louisiana action encompasses a claim for remediation under the Lease, among others, disposition here could, as a practical matter, expose the Angelles to lease obligations inconsistent with whatever lease obligations Angelle Properties, LLC may have in the Louisiana action.

Moreover, ATC erroneously asserts that *res judicata* would protect the Angelles from inconsistent obligations. A suit is barred by *res judicata* when it involves the same parties *and the same claims*. *See Lufti v. Dow Jones*, No. 95-8775, 1996 WL 343065, *2-3 (S.D.N.Y. June 20, 1996). The Louisiana action involves separate and distinct claims involving different parties from those asserted here. Additionally, ATC seeks rescission of the SPA, an agreement to which D&D Pipe is a signatory party. *See Holland v. Fahnestock & Co., Inc.*, 210 F.R.D. 487, 502 (S.D.N.Y. 2002) ("[C]ases involving requests . . . to set aside a contract have been held to require the presence of all parties to the contract."). D&D Pipe is clearly a "necessary party" here.

D&D Pipe is also "indispensable." The Angelles do not, as ATC would have it, attempt to avoid the parties' agreement on a proper forum. Indeed, the Angelles explicitly noted, and ATC acknowledges, that an adequate alternative forum exists under the SPA: New York state courts. With respect to the Lease, an alternative forum exists in Louisiana, where the Louisiana action is ongoing. Similarly, the Angelles' interest in avoiding "multiple litigation, or inconsistent relief, or sole responsibility for liability" that they potentially share weighs in favor of dismissal absent joinder of D&D Pipe. *See id.* at 494 (citing *Provident Tradesman Bank & Trust Co. v. Patterson*, 390 U.S. 102, 118 (1968)). Respectfully, ATC has not shown how "equity and good conscience" would permit a necessary party – D&D Pipe here – to watch from the sidelines. This action should be dismissed under Rule 12(b)(7).

## CONCLUSION

For the reasons more fully set out above and in the earlier Memorandum in Support of Defendants' Motions to Dismiss and Alternatively for Stay, Dean Angelle and Denise Angelle respectfully request that the Court grant their Motions to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(b)(7), or alternatively stay this proceeding.

        Respectfully Submitted,

        GREGORY W. O'NEILL (GO 1944)
        ELIZABETH A. MCCOY (EM 8448)
        Hill, Betts & Nash, L.L.P.
        One World Financial Center
        200 Liberty Street, 26th Floor
        New York, New York 10281
        Telephone:  (212) 839-7000
        Facsimile:  (212) 466-0514

        AND

        */s/ Eric Michael Liddick*
        CARL D. ROSENBLUM (LA Bar No. 02083)
          (Admitted *Pro Hac Vice*)
        ERIC MICHAEL LIDDICK (LA Bar No. 31237)
          (Admitted *Pro Hac Vice*)
        Jones, Walker, Waechter, Poitevent,
          Carrère & Denègre, L.L.P.
        201 St. Charles Avenue, 49th Floor
        New Orleans, Louisiana 70170
        Telephone:  (504) 582-8000
        Facsimile:  (504) 582-8011
        **Attorneys for Dean Angelle and Denise Angelle, Defendants**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been forwarded this day to counsel of record for Argo Turboserve Corporation, ☒ by CM/ECF, ☒ by e-mail, ☐ by telefax, ☐ by hand, and/or ☒ by United States mail.

New Orleans, Louisiana, this 11th day of April, 2008.

        */s/ Eric Michael Liddick*
        **ERIC MICHAEL LIDDICK**