**Gregory W. O'Neill (GO 1944)**
**Elizabeth A. McCoy** (EM 8448)
Hill, Betts & Nash L.L.P.
One World Financial Center
200 Liberty Street, 26th Floor
New York, New York 10281
Tel.:  (212) 839-7000
Fac.:  (212) 466-0514

**Carl D. Rosenblum** (LA Bar No. 02083) (Admitted *Pro Hac Vice*)
**Eric Michael Liddick** (LA Bar No. 31237) (Admitted *Pro Hac Vice*)
Jones, Walker, Waechter, Poitevent,
   Carrère & Denègre, L.L.P.
201 St. Charles Avenue, 49th Floor
New Orleans, Louisiana 70170
Tel.:  (504) 582-8000
Fac.:  (504) 582-8011

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **ARGO TURBOSERVE CORPORATION,**<br><br>                              **Plaintiff,**<br><br>**versus**<br><br><br>**DEAN ANGELLE AND DENISE ANGELLE,**<br><br>                              **Defendants.** | **CASE NO. 07 CV 8410 (RMB) (GWG)**<br><br>**ECF**<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL DISCOVERY RESPONSES FROM PLAINTIFF** |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'**
**MOTION TO COMPEL DISCOVERY RESPONSES FROM PLAINTIFF**

{N1804341.4}

# Table of Contents

Page

BACKGROUND ..................................................................................................1

ARGUMENT ......................................................................................................2

I.   REQUEST FOR PRODUCTION NOS. 1 AND 30 ......................................2

*The Angelles' Request for Production No. 1* ...............................................3

*ATC's Response to Request for Production No. 1* .......................................3

Argument ................................................................................................3

*The Angelles' Request for Production No. 30* .............................................5

*ATC's Response to Request for Production No. 30* .....................................5

Argument ................................................................................................5

II.  REQUEST FOR PRODUCTION NOS. 10 THROUGH 15 ..........................9

*The Angelles' Request for Production No. 10* .............................................10

*ATC's Response to Request for Production No. 10* .....................................10

Argument ................................................................................................10

*The Angelles' Request for Production No. 11* .............................................12

*ATC's Response to Request for Production No. 11* .....................................12

Argument ................................................................................................12

*The Angelles' Request for Production No. 12* .............................................13

*ATC's Responses to Request for Production No. 12* ...................................13

Argument ................................................................................................13

*The Angelles' Request for Production No. 13* .............................................15

*ATC's Responses to Request for Production No. 13* ...................................16

Argument ................................................................................................16

*The Angelles' Request for Production No. 14* .............................................17

*ATC's Response to Request for Production No. 14* ............................................................17

    Argument ............................................................17

*The Angelles' Request for Production No. 15* ............................................................17

*ATC's Response to Request for Production No. 15* ............................................................17

    Argument ............................................................17

III.    REQUEST FOR PRODUCTION NO. 19 ............................................................18

*The Angelles Request for Production No. 19* ............................................................18

*ATC's Response to Request for Production No. 19* ............................................................18

    Argument ............................................................18

CONCLUSION............................................................18

EXHIBITS

    EXHIBIT 1:  PERTINENT PORTIONS OF THE DEPOSITION OF WALTER SIMSON ON FEBRUARY 14, 2008

    EXHIBIT 2:  POST-CLOSING LETTER DATED MARCH 8, 2006

    EXHIBIT 3:  PROMISSORY NOTE EXECUTED BY D&D PIPE AND RENTALS, INC. IN FAVOR OF JOHN CALICCHIO IN THE AMOUNT OF $1,500,000 DATED FEBRUARY 15, 2006

    EXHIBIT 4:  SIGNATURE PAGE OF SUBORDINATION AGREEMENT DATED MARCH, 2006 AND SIGNED BY JOHN CALICCHIO IN FAVOR OF WELLS FARGO BANK, NATIONAL ASSOCIATION

    EXHIBIT 5:  E-MAIL STRING FROM PAUL PERIALAS, FORMER CFO OF ARGO TURBOSERVE CORPORATION, TO PAMELA BIALKIN OF DELOITTE & TOUCHE, LLP DATED MAY 26, 2006

    EXHIBIT 6:  MEMORANDUM FROM CLYDE KEATON, CEO OF ARGO TURBOSERVE CORPORATION, TO THE MEMBERS OF THE BOARD DATED JULY 11, 2006

    EXHIBIT 7:  EQUITY APPRAISAL SERVICES INTANGIBLE VALUATION DISCUSSION

    EXHIBIT 8:  PERTINENT PORTIONS OF THE DEPOSITION OF WAYNE ACKERMAN ON FEBRUARY 15, 2008

    EXHIBIT 9:  E-MAIL FROM PAUL PERIALAS, FORMER CFO OF ARGO TURBOSERVE CORPORATION, TO JOSEPH MULLEN OF WELLS FARGO DATED AUGUST 17, 2006

    EXHIBIT 10: UNREDACTED PORTION OF INDEPENDENT AUDITOR'S REPORT

## Cases

*Hickman v. Taylor,*
    329 U.S. 495 (1947)..................................................................................................... 3

*In re Grand Jury Subpoena Dated October 22, 2001,*
    282 F.3d 156 (2d Cir. 2002)...................................................................................... 6

*In re Savitt/Adler Litig.,*
    176 F.R.D. 44 (N.D.N.Y. 1997)............................................................................. 6, 8

*NXIVM Corp. v. O'Hara,*
    241 F.R.D. 109 (N.D.N.Y. 2007) ...................................................................... 3, 4, 5, 6

*U.S. v. Nobles,*
    422 U.S. 225 (1975)........................................................................................... 3, 6, 7, 9

## Rules

FED. R. CIV. P. 26(b) (2008) ...........................................................................................2, 10

FED. R. CIV. P. 26(b)(3) (2008)......................................................................................3, 6, 7

FED. R. CIV. P. 37(a)(1) (2008) ..................................................................................... 2

Defendants, Dean Angelle and Denise Angelle (collectively, "the Angelles"), submit this Memorandum in support of their Motion to Compel Discovery Responses from plaintiff, Argo Turboserve Corporation ("ATC").

## BACKGROUND

In March 2006, after extensive negotiations and detailed due diligence, ATC purchased all of the stock of D&D Pipe and Rentals, Inc. ("D&D Pipe"), a Louisiana corporation devoted to the purchase, sale, refurbishment, and storage of pipe used by the oil industry. ATC agreed to pay the Angelles "Total Consideration" of approximately $8,500,000, which consisted of (1) a cash payment of $2,500,000, (2) a cash advance of $1,000,000, and (3) a promissory note in favor of the Angelles for the principal amount of $5,000,000, and payable in installments of $1,000,000 a year over five years. ATC partially financed this purchase through commercial sources, but also sought, and received, additional financing from John Calicchio, and his two children Lisa Calicchio and Steven Calicchio.

ATC, through its newly formed division, ATC Energy Services, which was under the leadership of Walter Simson, exercised complete control over D&D Pipe. D&D Pipe suffered significant financial problems that apparently caused it to cease operations in November 2007. ATC, in retaliation for the Angelles' demand and notice of default in payment of the first installment due under the $5,000,000 promissory note, filed suit against the Angelles in this Court on September 27, 2007. (*See* Rec. Doc. No. 1). Thereafter, on February 4, 2008, ATC filed its Amended Complaint. (*See* Rec. Doc. No. 27).

On February 27, 2008, the Angelles served upon ATC their Second Set of Requests for Production. ATC served its responses and objections thereto on March 31, 2008. Counsel for both parties conferred in a good faith effort to resolve their discovery disputes on March 11th, 17th, 18th, 19th, 21st, 25th, and again on April 3rd, 4th, and 22nd. Although counsel for both

parties ultimately reached agreement on certain matters, they were unable to resolve other matters informally.  The Angelles sought the Court's permission to file a Motion to Compel under Local Civil Rule 37.2 and Individual Practice Rule 2.A.  On April 15, 2008, the Court held a conference to address the Angelles' application for filing a motion to compel.  After hearing arguments, the Court granted the Angelles permission to file a formal Motion to Compel addressing Requests for Production Nos. 1, 10 through 15, 19, and 30.  The Angelles now timely file their Motion to Compel Discovery Responses on those requests.

**ARGUMENT**

Discovery under the Federal Rules of Civil Procedure is broad and a party may seek "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b) (2008).  Similarly, "relevancy" in the context of discovery is much broader than its trial counterpart:  information sought through discovery is relevant "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  *Id.*

Where a party fails to respond to a discovery request, the opposing party "may move for an order compelling disclosure or discovery."  FED. R. CIV. P. 37(a)(1) (2008).  Here, ATC refuses to produce documents responsive to certain document requests and/or asserts unfounded privileges.  Accordingly, pursuant to Rule 37 of the Federal Rules of Civil Procedure and Local Civil Rule 37.2, the Angelles now move for an order compelling ATC to produce documents responsive to Request for Production Nos. 1, 10 through 15, 19, and 30.

## I.    Request for Production Nos. 1 and 30

ATC's responses to Request for Production Nos. 1 and 30 of the Angelles' Second Set of Requests for Production contain an invalid assertion of a privilege.  The Angelles' argument appears immediately after the request and response thereto.

*The Angelles' Request for Production No. 1*:

Produce all written communications and documents provided to private investigators or other individuals regarding the subject matter of this litigation by any of the following:

    a. Donald Felix;
    b. Russell Vera;
    c. Hillcorp;
    d. Any truck driver doing business with D&D Pipe and Rentals, Inc. or transporting materials to and/or from D&D Pipe and Rentals, Inc.;
    e. Tim McBride;
    f. Wilson Roy;
    g. Joe Wiley;
    h. John Calicchio;
    i. Steven Calicchio;
    j. Lisa Calicchio;
    k. Deloitte & Touche, LLP;
    l. Wells Fargo Bank; and/or
    m. Argo International.

*ATC's Response to Request for Production No. 1:*

ATC objects to this Request on the grounds of the Privilege Objection.

<u>Argument:</u>  ATC's privilege objection is based solely upon the work product doctrine. Its objection, however, is unfounded.  The work product doctrine is a qualified privilege extended to documents "prepared by an attorney 'acting for his client in anticipation of litigation.'"  *U.S. v. Nobles*, 422 U.S. 225, 237-38 (1975) (quoting *Hickman v. Taylor*, 329 U.S. 495, 508 (1947)).  Rule 26(b)(3) codifies *Hickman* and extends that rule to encapsulate "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).  FED. R. CIV. P. 26(b)(3) (2008).  However, this doctrine "does not extend to every document generated by the attorney; it does not shield from disclosure everything a lawyer does."  *NXIVM Corp. v. O'Hara*, 241 F.R.D. 109, 127 (N.D.N.Y. 2007). ATC's assertion of the work product doctrine here is overbroad.

The attorney-client privilege is a separate and distinct privilege that applies only to communications

> (1) where legal advice of any kind is sought, (2) from a professional legal advisor in his or her capacity as such, (3) the communication relates to that purpose, (4) made in confidence, (5) by the client, and (6) are at his or her insistence permanently protected, (7) from disclosure by the client or the legal advisor, (8) except if the protection is waived.

*Id.* at 125 (citations omitted). Similar to the work product doctrine, "[t]he attorney-client privilege is not given broad, unfettered latitude to every communication with a lawyer, but is to be narrowly construed." *Id.* at 125-26.

As an initial matter, the Angelles acknowledge that under certain circumstances work product created by an investigator retained by an adversary *may* fall within the work product privilege of counsel. Those circumstances do *not* exist here. In this request, the Angelles do *not* seek production of documents created *by* an investigator retained by ATC. Instead, Request for Production No. 1 seeks production of documents *given to* an investigator *by other individuals*. The work product doctrine cannot be stretched to apply to documents generated by such third-parties. For example, if Russell Vera, a third-party not employed by either ATC or D&D Pipe, gave ATC's investigator any documents, said documents should be produced. Such documents, if they exist at all, were neither created by counsel for ATC nor by ATC's counsel's investigator.

Additionally, ATC cannot assert the work product privilege for documents supplied *to* the investigator *or to other individuals* by former or current D&D Pipe and/or ATC employees. Again, by way of example, a document provided by Donald Felix, a former D&D Pipe employee, *to* an investigator hired by ATC does not represent or contain the work product of the investigator or ATC's counsel. Such documents are simply beyond any reasonable construction of the work product doctrine.

This document request also uses the language "other individuals," which removes the responsive documents, if any exist, from the protection afforded by the work product doctrine. For example, ATC cannot possibly argue that pipe inspection reports presented by Donald Felix, a former D&D Pipe employee, to Wayne Ackerman, ATC's Chief Financial Officer, properly constitute work product. Such an argument would allow the exception to swallow the rule.

Importantly, it is ATC, and not the Angelles, who bears the burden of proving each element of the claimed privilege. *Id.* at 125. Respectfully, ATC is unable to satisfy its burden of showing that these documents fall within either privilege. Therefore, the Angelles respectfully request that the Court issue an order compelling ATC to produce documents responsive to Request for Production No. 1, and to file an appropriate privilege log listing allegedly privileged documents so that the Angelles may adequately assess the applicability of the alleged privilege.

*The Angelles' Request for Production No. 30:*

Produce all written communications and documents to and/or from Kroll Investigations [sic] and/or any other private investigators hired to investigate Dean Angelle and/or Denise Angelle in 2006 and 2007, including, but not limited to, any reports issued as a result of said investigation(s).

*ATC's Response to Request for Production No. 30:*

ATC objects to this Request on the grounds of the Privilege Objection. ATC further objects because the Request calls for the production of documents prepared in anticipation of litigation that are not discoverable pursuant to Federal Rule 26(b)(3) and (4).

<u>Argument</u>: ATC's privilege objection is unfounded. This request does not seek attorney notes and communications, as the Angelles recognize that those documents are privileged. Instead, the Angelles seek production of investigators' notes, reports, and any document(s)

utilized or relied upon by an investigator in 2006 or 2007. The facts set forth in these documents are not shielded by the attorney-client privilege or work product doctrine.

The work product doctrine "exists to protect attorneys' mental impressions, opinions, and/or legal theories concerning litigation." *Id.* at 126. This doctrine "shelters the mental processes of the attorney" or his representatives. *Nobles*, 422 U.S. at 238. *See also* FED. R. CIV. P. 26(b)(3). "*[I]n most instances*, the work product doctrine does not extend to *facts*. Generally, *non-privileged facts should be freely discoverable*." *NXIVM Corp.*, 241 F.R.D. at 127 (emphasis added). Admittedly, under certain circumstances, the work product doctrine may encompass facts gleaned through investigation. *See In re Grand Jury Subpoena Dated October 22, 2001*, 282 F.3d 156, 161 (2d Cir. 2002). Nevertheless, the Federal Rules clearly distinguish "non-opinion" work product, such as facts recounted by a witness to an investigator, from "opinion" work product, such as the attorney's theories as to how those same facts support liability. *See id.* *See also In re Savitt/Adler Litig.*, 176 F.R.D. 44, 48 (N.D.N.Y. 1997). Thus, when a court determines that the particular facts are governed by the work product doctrine, Federal Rule of Civil Procedure 26(b)(3) permits disclosure of those "non-opinion" facts "to an adversary if the adversary can demonstrate 'substantial need of the material' and 'undue hardship to obtain the substantial equivalent of the materials by other means.'" *In re Savitt/Adler Litig.*, 176 F.R.D. at 48 (quoting FED. R. CIV. P. 26(b)(3)). Whereas "opinion" work product is given "substantial protection," "non-opinion" work product is afforded only "limited protection." *Id.* at 46.

The Angelles, through this request, seek discovery of "non-opinion" memorialized facts. If one of ATC's counsel's investigators, for example, spoke with Melissa Patin, a former employee of D&D Pipe, who related to the investigator facts surrounding a particular incident involving the Angelles, and the investigator made notes of those facts, memorialized the facts in

a report, and submitted that report to ATC's counsel, that report, or, at the very least, the statement of facts as related by the interviewee and contained therein, should be subject to discovery. "The need to develop all relevant facts in the adversary system is both fundamental and comprehensive." *Nobles*, 422 U.S. at 230-31. Indeed, "[t]he very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence." *Id.* at 231.

Even if ATC could satisfy its burden of persuading the Court that statements of particular facts made to investigators fall within the work product doctrine, which the Angelles deny, the Court should compel production here as the Angelles cannot "acquire the document or its substantial equivalent by other means." FED. R. CIV. P. 26(b)(3). For example, through the deposition testimony of Walter Simson, an ATC executive, the Angelles learned that Kroll Investigators was hired in late 2006 – while the Angelles were employees at D&D Pipe and before any hint of litigation arose – to investigate the Angelles' activities. A copy of pertinent portions of Walter Simson's deposition transcript is attached hereto as Exhibit "1". (*See* Ex. "1" at 343:19-344:14). Kroll Investigators' report apparently "described the comings and goings of Dean and Denise out of their home, to or from the office and thereabouts, in addition to which it described some background on companies that had been formed by Dean or Denise during that time, during the '06 time frame." (*Id.* at 346:2-10). Incredibly, Kroll Investigators even sifted through the Angelles' garbage. (*Id.* at 347:20-348:11). Obviously, the Angelles cannot recreate from memory their activities during the undisclosed timeframe nor could they obtain the non-opinion facts of their alleged wrongdoings during this period of investigation in any way other than by obtaining a copy of this report. Moreover, the Angelles have a substantial need for this information in that it may (or may not) provide corroboration and or evidence supporting (or

refuting) ATC's allegations herein.  The Angelles should be given an opportunity to determine the factual bases for ATC's allegations and formulate defenses in response.  Without this report, the Angelles are handicapped in preparing their defense.  The work product doctrine should not hide these facts, particularly if ATC intends to use the same at trial.

The Kroll Investigators' report is the only known report; however, the Angelles know that other investigators met with third-parties on different occasions seeking to obtain support for ATC's allegations.  These reports and/or notes may provide non-opinion facts, whether correct or incorrect, upon which ATC may rely at trial.  Significantly, some of these facts may pertain to alleged "bribes," which ATC has previously represented are not reflected in the form of any documentary evidence in its possession, custody, or control.  Where serious allegations of fraud are levied, as they are here, a defendant should be given an opportunity to uncover what fraudulent conduct the plaintiff alleges to have occurred.  "Defendants here must determine the bases for the principal factual allegations in the complaint[] in order to prepare appropriate motions *and defenses*."  *In re Savitt/Adler Litig.*, 176 F.R.D. at 48 (emphasis added).  The facts as recounted by third-parties to ATC's investigators are critical in formulating defenses against the serious allegations set forth herein by ATC.  Even if ATC satisfies its burden of proving each element of the privilege, the Angelles have satisfied the requirements of Federal Rule of Civil Procedure 26(b)(3).

Additionally, ATC cannot show that the attorney-client privilege applies to documents sought by the Angelles through this request.  The Angelles do not seek production of communications between ATC's counsel and any investigator.[1]  Instead, the Angelles request

---

[1]  However, the Angelles would fully expect that ATC would list responsive, but privileged, documents on an appropriate privilege log.  To date, no documents are listed on

that ATC produce all responsive documents and communications provided to or by any investigator to or from any non-party. The Angelles also seek the investigators' written reports and other responsive documents, which contain a nearly contemporaneous memorialization of the non-opinion facts supplied by potential witnesses to the present action.

Therefore, the Angelles respectfully request that the Court issue an order compelling ATC to produce all documents responsive to these two requests. Assuming *arguendo*, however, that the Court determines that these requests seek documents protected by the attorney-client privilege or work product doctrine, the Angelles respectfully submit that the Court should, at the very least, compel ATC to produce the responsive documents with the privileged statements, including mental impressions, opinions, and/or legal theories, redacted. The non-opinion facts should be disclosed. Finally, at a minimum, the Angelles respectfully request that the Court examine the documents *in camera* so that it may properly excise all privileged matter. *See Nobles*, 422 U.S. at 229.

## II.      Request for Production Nos. 10 through 15

ATC failed to respond to Request for Production Nos. 10 through 15 of the Angelles' Second Set of Requests for Production and instead asserted an invalid objection. The Angelles' argument appears immediately after the request and response thereto. ATC's relevancy objections are improper.[2]

---

ATC's various privilege logs. Once done, the Angelles expressly reserve their right to challenge such designation.

   [2] As the Court is well aware, the analysis of "relevancy" for purposes of discovery is entirely distinct from whether the documents may or may not be admissible at trial.

*The Angelles' Request for Production No. 10:*

Produce all personal financial statements for the years 2005 through 2007 for John Calicchio.

*ATC's Response to Request for Production No. 10:*

ATC objects to this Request on the grounds of the Relevance and Overbreadth Objections. ATC further objects because the Request calls for the production of private financial information that has no bearing on the claims and defenses at issue here.

<u>Argument</u>: ATC has failed to provide a valid objection. Discovery under the Federal Rules of Civil Procedure is permitted regarding "any nonprivileged matter that is relevant to any party's *claim or defense*." FED. R. CIV. P. 26(b) (emphasis added). "Relevant" information, as noted *supra*, includes anything "reasonably calculated to lead to the discovery of admissible evidence." *Id.* John Calicchio's personal financial statements, while private, have a direct bearing on the Angelles' defenses to ATC's claims and are "reasonably calculated to lead to the discovery of admissible evidence." *Id.*

While ATC alleges that the Angelles caused the failure of D&D Pipe, the Angelles believe that D&D Pipe's apparent ruin occurred as a result of severe undercapitalization, and the imposition of an overwhelming amount of debt and operating expenses on D&D Pipe post-acquisition. Discovery of the personal financial statements of John Calicchio will provide evidence of the shift from the originally anticipated financing of the purchase of D&D Pipe through third-party commercial sources (the initial plan) and the ultimate reality that ATC chose to instead rely upon John Calicchio and his two children to finance a portion of the purchase (the actual plan).

Documents produced during the course of discovery in this matter so far clearly reveal John Calicchio's involvement in financing the purchase of the stock of D&D Pipe. Certain

documents reveal that ATC was to deliver to Wells Fargo "a fully executed copy of the promissory note executed by D&D in favor of John Calicchio." A copy of this document is attached hereto as Exhibit "2". (*See* Ex. "2" at Schedule A, No. 7). In addition, ATC has produced a copy of a promissory note executed by D&D Pipe in favor of John Calicchio for the amount of $1,500,000 and a subordination agreement executed by John Calicchio regarding the same. A copy of the promissory note and signature page of the subordination agreement are attached hereto as Exhibits "3" and "4", respectively. (*See* Exs. "3","4"). Moreover, even ATC's own accounting firm, Deloitte & Touche, LLP, was unclear about how John Calicchio's involvement in the Stock Purchase transpired. A copy of an e-mail between Paul Perialas and Pamela Bialkin of Deloitte & Touche, LLP is attached hereto as Exhibit "5". (*See* Ex. "5"). Yet, these documents do not paint a complete picture of the obligations of D&D Pipe to John Calicchio, who acted as part financier for the purchase of D&D Pipe.

ATC initially represented to the Angelles that the purchase of D&D Pipe would be financed through commercial sources, such as Wells Fargo, which would have preserved sufficient room on the Wells Fargo line of credit for sufficient capital to support ATC's represented expansion of the business while still covering the resulting increase in operating expenses. The expansion of the business of D&D Pipe into the sales of new pipe was a significant goal of the Angelles in selling their business and their concurrent decision to stay on as employees of the company. It was this expansion that provided any potential for the Angelles to earn a certain amount of the profits of D&D Pipe. However, through its own mismanagement, ATC was unable to acquire the amount necessary to purchase D&D Pipe solely through commercial outlets, and thereafter turned to John Calicchio and the ATC shareholders for additional capital. As a result of the shift in plans for financing, D&D Pipe was forced to burden

itself with additional debt.    This additional debt burdened the company by increasing exponentially the operating expenses and decreasing cash flow while concomitantly creating a lack of capital, which ATC represented would exist to bolster D&D Pipe's continued and expanded success.    John Calicchio's 2005 financials could reasonably supply evidence of this altered intention by illustrating that he initially had no expectation of providing $1,500,000 in capital for the purchase of D&D Pipe.    His 2006 financials, on the other hand, might reasonably illustrate a changed expectation, namely that he would now need to supply a portion of the money necessary to purchase D&D Pipe.    The same applies to his 2007 financials.    This change in financing was not revealed to the Angelles, and the connection between John Calicchio and ATC's purchase of the stock of D&D Pipe established thus far in discovery clearly establishes relevancy under the liberal rules of discovery.    Accordingly, the Angelles submit that this request seeks properly discoverable information and respectfully request that the Court issue an order compelling ATC to produce the requested documents.

*The Angelles' Request for Production No. 11:*

Produce John Calicchio's personal federal and state tax returns for the years 2005 through 2007.

*ATC's Response to Request for Production No. 11:*

ATC objects to this Request on the grounds of the Relevance and Overbreadth Objections.    ATC further objects because the Request calls for the production of private financial information that has no bearing on the claims and defenses at issue here.

Argument:    Again, ATC fails to provide a valid objection.    John Calicchio's personal federal and state tax returns are relevant to the defenses and/or claims herein, and cannot be obtained from any other source.    In 2006, if not currently, John Calicchio was on the Board of

Directors of ATC.[3]    As a Director, John Calicchio may have stood to receive benefits or incentives tied directly to the success of ATC and its related subsidiaries.  If ATC suffered losses as a result of the failure of one of its wholly-owned subsidiaries, D&D Pipe, then those losses might have resulted in diminished gains to the directors of ATC.  Any losses suffered by John Calicchio, as a result of the failures of D&D Pipe as a business, should be reflected on his personal tax returns, especially if, for example, he took value on the tax returns of those losses to offset gains.  This information is relevant to, at the very least, damage issues in this matter, and clearly falls within the liberal discovery rules.  As a result, the Angelles respectfully submit that the Court compel ATC to produce the tax returns responsive to this request.

*The Angelles' Request for Production No. 12:*

Produce all personal financial statements for the years 2005 through 2007 for Steven Calicchio.

*ATC's Responses to Request for Production No. 12:*

ATC objects to this Request on the grounds of the Relevance and Overbreadth Objections.  ATC further objects because the Request calls for the production of private financial information that has no bearing on the claims and defenses at issue here.

Argument:  See the Angelles' Argument regarding Request for Production No. 10 *supra*. Additionally, documents produced by ATC in the instant litigation reveal that Steven and Lisa Calicchio, who were both sole shareholders and employees of ATC drawing a salary of $360,000

---

[3] A Memorandum from Clyde Keaton, CEO of ATC, to the Members of the Board identifying John Calicchio as a Member is attached hereto as Exhibit "6".  (*See* Ex. "6").  At Plaintiff's counsel's request, this Memorandum has not been attached to the electronically-filed version of this Motion, but, with Plaintiff's counsel's permission, has been attached to the courtesy copy of this Motion sent to the Court contemporaneously with filing.

each in 2006,[4] participated in financing the purchase of D&D Pipe and also supplied additional

capital to D&D Pipe in late 2006 when the company seemingly began to falter.  Steven and Lisa

Calicchio "contributed $1,000,000 of equity" to the purchase of the capital stock in D&D Pipe.

A copy of this document is attached hereto as Exhibit "7".  In addition, during his deposition

testimony, Wayne Ackerman, ATC's Chief Financial Officer, testified as follows:

> Q. Let's go to the second item in the order that you gave me.  You said there was $2.2 million borrowed from owners to purchase D&D Pipe and finance losses.  I got that right?
>
> A. Correct.
>
> Q. Who were the owners?
>
> A. Steven and Lisa Calicchio.

A copy of the relevant portions of Wayne Ackermans' deposition transcript is attached hereto as

Exhibit "8".  (*See* Ex. "8" at 271:22-272:5).  Ackerman also noted that it was D&D Pipe who

bore the burden of satisfying these debts to the Calicchios:

> Q.  So a loan that ATC took to buy D&D Pipe, D&D Pipe is servicing the interest payment debt?
>
> A.  Correct.
>
> . . .
>
> Q.  I think that you agree with me that if it's ten percent and it's a million and a half or it it's ten percent and it's 2.2 million, somewhere between $150,000 and $220,000 a year is what it took to service that debt with interest payments, right?
>
> A.  Correct.
>
> Q.  And if D&D Pipe was not paying that, that would have left that amount of money for D&D Pipe to use for other purposes, correct?
>
> A.  Correct.

---

[4] In an effort to avoid attaching confidential documents, ATC has stipulated to the accuracy of these facts.

. . .

> Q.  D&D Pipe paid the interest on the initial 1.5 million and it went up to 2.2 million borrowed from Mr. Calicchio's kids who were shareholders in ATC, right?
>
> A.  Correct.

(*See id.* at 276:5-8; 279:19-280:6; 294:11-15).  Ackerman's predecessor at ATC, Paul Perialas, also wrote to Joseph Mullen of Wells Fargo in late 2006 to renegotiate the interest rate charged to D&D Pipe on advances on its line of credit.  A copy of this e-mail is attached hereto as Exhibit "9".  In this e-mail, Perialas writes:  "You will be getting a call from Joe Fanucci who will discuss the $347,200 from the Calicchio's [sic].  He has a few different ideas to discuss in order to get the Calicchio's [sic] the best returns possible."  (Ex. "9").

The documents produced thus far highlight the importance of the Calicchios in not only financing the purchase transaction, but also their assistance in covering D&D Pipe losses, all of which further contributed to the downfall of D&D Pipe.  Thus, relevancy under the liberal scope of discovery clearly exists here.  The personal financial statements of Steven and Lisa Calicchio, like those of John Calicchio, may evidence the change from the initial anticipation of financing solely through commercial sources to a purchase supported by financing from individuals holding significant positions with ATC.  Steven and Lisa Calicchio went further than merely financing a portion of the purchase, though, as they supplied additional capital to D&D Pipe after it steadily began to decline in late 2006.  Therefore, the Angelles respectfully request that the Court compel ATC to produce these documents.  ATC's relevancy objection is improper.

*The Angelles' Request for Production No. 13:*

Produce Steven Calicchio's personal federal and state tax returns for the years 2005 through 2007.

*ATC's Responses to Request for Production No. 13:*

ATC objects to this Request on the grounds of the Relevance and Overbreadth Objections. ATC further objects because the Request calls for the production of private financial information that has no bearing on the claims and defenses at issue here.

Argument: See the Angelles' Argument in response to Request for Production No. 11 *supra*. Additionally, the Angelles note that ATC is a subchapter "S" corporation. A copy of the unredacted portion of an Independent Auditor's Report is attached hereto as Exhibit "10". (*See* Ex. "11" at p. 6). Since the income and losses of a subchapter "S" corporation are provided directly to or assessed directly against the shareholders of the corporation, that income and, more importantly, any losses, would be reflected on the shareholders' personal tax returns. For example, Clyde Keaton, on July 11, 2006, drafted a memorandum to the members of the board, which included John Calicchio, Steven Calicchio, and Lisa Jackson (Calicchio). (*See* Ex. "6"). This memorandum addressed the tax implications of the acquisition of D&D Pipe and the decision to pursue a qualified subchapter S subsidiary election so as to provide "ATC and its shareholders with the best benefit by allowing consolidated financial and tax reporting, minimiz[ing] tax exposure, and provid[ing] ATC with the ability to manage the risk associated with conducting business in the oilfield." (*See id.*).

Steven and Lisa Calicchio's personal tax returns, then, are relevant for several reasons. As with John Calicchio, any losses suffered by Steven and Lisa Calicchio should be reflected on their personal tax returns if, for example, they took value on the tax returns of those losses to offset gains. These issues are directly relevant to any issue of damages in this matter. In addition, as Steven and Lisa Calicchio are the sole shareholders of ATC (*see* Ex. "9" at 271:22-272:5), and as income gained or losses suffered are assessed to the shareholders of a subchapter "S" corporation, like ATC here, said losses or income gains will be reflected on their personal

tax returns.  This information also relates to the issue of damages.  Therefore, as these documents are relevant to claims and defenses here, the Angelles' respectfully request that the Court issue an order compelling ATC to produce the responsive documents.  The liberal rules of discovery require no less.

*The Angelles' Request for Production No. 14:*

Produce all personal financial statements for the years 2005 through 2007 for Lisa Calicchio.

*ATC's Response to Request for Production No. 14:*

ATC objects to this Request on the grounds of the Relevance and Overbreadth Objections.  ATC further objects because the Request calls for the production of private financial information that has no bearing on the claims and defenses at issue here.

Argument:  See the Angelles' Argument in response to Request for Production Nos. 10 and 12 *supra.*

*The Angelles' Request for Production No. 15:*

Produce Lisa Calicchio's personal federal and state tax returns for the years 2005 through 2007.

*ATC's Response to Request for Production No. 15:*

ATC objects to this Request on the grounds of the Relevance and Overbreadth Objections.  ATC further objects because the Request calls for the production of private financial information that has no bearing on the claims and defenses at issue here.

Argument:  See the Angelles' Argument in response to Request for Production Nos. 11 and 13 *supra.*

### III.    Request for Production No. 19

*The Angelles Request for Production No. 19:*

Produce ATC's federal and state tax returns for the years 2005 through 2007.

*ATC's Response to Request for Production No. 19:*

ATC objects to this Request on the grounds of the Relevance Objection.

Argument:  ATC's federal and state tax returns are relevant in this matter.[5]  Similar to the Calicchios' federal and state tax returns, ATC's federal and state tax returns will reveal whether ATC took value on its tax returns for the losses created by the financial position of D&D Pipe to offset any gains.  This information is important to any issue of damage in the present matter. Therefore, the Angelles respectfully submit that the Court should compel ATC to produce these documents as they are relevant to the claims and defenses in the instant litigation.

## CONCLUSION

For the foregoing reasons, the Angelles' Motion to Compel should be granted, and ATC should be compelled to fully respond to Request for Productions Nos. 1, 10 through 15, 19, and 30.

Respectfully Submitted,

GREGORY W. O'NEILL (GO 1944)
ELIZABETH A. MCCOY (EM 8448)
Hill, Betts & Nash, L.L.P.
One World Financial Center
200 Liberty Street, 26th Floor
New York, New York 10281
Telephone:  (212) 839-7000
Facsimile:  (212) 466-0514

---

[5] While the Angelles hope that the parties can resolve this issue once ATC produces all of its financials, the Angelles include this argument herein out of an abundance of caution and because of various timing issues.  Should the Angelles have no need for the tax documents after review of ATC's financial statements, the Angelles will accordingly remove this argument from their Motion.

AND

_/s/ Eric Michael Liddick_
CARL D. ROSENBLUM (LA Bar No. 02083)
(Admitted *Pro Hac Vice*)
ERIC MICHAEL LIDDICK (LA Bar No. 31237)
(Admitted *Pro Hac Vice*)
Jones, Walker, Waechter, Poitevent,
  Carrère & Denègre, L.L.P.
201 St. Charles Avenue, 49th Floor
New Orleans, Louisiana 70170
Telephone:  (504) 582-8000
Facsimile:  (504) 582-8011
**Attorneys for Dean Angelle and Denise Angelle,**
**Defendants**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been forwarded this

day to counsel of record for Argo Turboserve Corporation, ☒ by CM/ECF, ☒ by e-mail, ☐ by

telefax, ☐ by hand, and/or ☒ by United States mail.

New Orleans, Louisiana, this 22nd day of April, 2008.

_/s/ Eric Michael Liddick_
ERIC MICHAEL LIDDICK