Steven J. Cohen (SC-1289)
WACHTEL & MASYR, LLP
Attorneys for Plaintiff
110 East 59th Street
New York, NY 10022
(212) 909-9500

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
ARGO TURBOSERVE CORPORATION,              :     07 CV 8410 (RMB) (GWG)

                    Plaintiff,              :

             **- against -**              :

DEAN ANGELLE AND DENISE ANGELLE,  :

               Defendants              :
----------------------------------------------------------x


**PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

PRELIMINARY STATEMENT ............................................................................1

STATEMENT OF FACTS ....................................................................................1

ARGUMENT .........................................................................................................2

    **I.**    **The Only Record Responsive to Request For Production 1 Is Privileged** ....... 2

    **II.**    **Records Responsive to Request For Production 30 Are Privileged** ..................6

        A.  The Kroll Report is Protected Work-Product ....................................................7

          1.  The Report is Protected from Disclosure under Fed.R.Civ.Pro. 26............. 7

          2.  Defendants Have Not Shown Substantial Need ...........................................9

B.  The Responsive E-Mails Are Privileged ...........................................................11

    **III.**    **Personal Tax Returns Should Not Be Disclosed** .................................................12

        A.  Defendants Have Not Established Relevance..................................................14

        B.  Defendants Have No Compelling Need for the Calicchios' Tax Returns........ 17

    **IV.**    **ATC's Tax Returns Should Not Be Disclosed** ...................................................18

**CONCLUSION** .......................................................................................................19

# TABLE OF AUTHORITIES

## <u>Federal Cases</u>

*Admiral Insurance Co. v. U.S. District Court*,
  881 F.2d 1486  (9th Cir. 1989) ................................................................................. 5, 6

*Allied Irish Banks v. Bank of America*,
  240 F.R.D. 96 (S.D.N.Y. 2007) ................................................................................. 7, 8

*Daniels v. Nat. RR Passenger Corp.*,
  110 F.R.D. 160 (S.D.N.Y. 1986) ................................................................................. 11

*Ellis v. City of New York*,
  243 F.R.D. 109 (S.D.N.Y. 2007) ................................................................................. 13

*Giannullo v. City of New York*,
  322 F.3d 139 (2d Cir. 2003) ................................................................................. 14

*Harry Winston, Inc. v. Waldfogel*,
  292 F. Supp. 473  (S.D.N.Y 1968) ................................................................................. 14

*Hildebrand v. Wal-Mart Stores*,
  435 (D.Conn. 2000)…………………………………………………………………...11

*Infosystems v. Ceridian Corp.*,
  197 F.R.D. 303  (E.D. Mich. 2000) ................................................................................. 6

*In re Savitt/Adler Litigation*,
  176 F.R.D. 44 (N.D.N.Y. 1997) ................................................................................. 9

*Lemanik, S.A. v. McKinley Allsop, Inc.*,
  125 F.R.D. 602 (S.D.N.Y. 1989) ................................................................................. 18

*NXIVM Corp. v. O'Hara*,
  241 F.R.D. 109  (N.D.N.Y. 2007) ................................................................................. 7, 10

*Rahman v. Smith & Wollensky Rest.*,
  No. 06-6198, 2007 WL 1521117 (S.D.N.Y. 2007) ................................................................................. 13

*Smith v. Bader*,
  83 F.R.D. 437 (S.D.N.Y. 1979) ................................................................................. 13, 14

*United States v. Adlman*,
  134 F.3d 1194 (2d Cir. 1998) ................................................................................. 8, 9

*United States v. Bonanno Organized Crime Family of La Cosa Nostra*,
   119 F.R.D. 625 (S.D.N.Y. 1988) ................................................................ 14

*United States v. Nobles*,
   422 U.S. 225 (1947) ................................................................................. 12

*Upjohn Company v. United States*,
   449 U.S. 383 (1981) ............................................................................... 4, 5

*Weinhold v. Witte Heavy Lift. Inc.*,
   1994 WL 132392  (S.D.N.Y. 1994) ..................................................... 10, 11

## State Cases

*Briand Parenteau, Inc. v. Dean Witter Reynolds, Inc.*,
   267 A.D.2d 576, 699 N.Y.S.2d 230 (3d Dep't. 1999)................................. 17

*New York Times Co. v. Lehrer McGovern Bovis, Inc.*,
   300 A.D.2d 169, 752 N.Y.S.2d 642 (1st Dep't. 2002) ................................. 6

*Niesig v. Team I*,
   149 A.D.2d 94, 45 N.Y.S.2d 153 (1989) ...................................................... 5

## Federal Rule

Fed.R.Civ.Pro. 26 ...................................................................... 7, 9, 12

## PRELIMINARY STATEMENT

Plaintiff Argo Turboserve Corporation ("ATC") respectfully submits this memorandum of law in opposition to the motion of defendants Dean Angelle and Denise Angelle to compel ATC to produce certain documents requested in defendants' second set of Requests for Production of Documents, dated March 27, 2008.

## STATEMENT OF FACTS

This action arises out of a stock purchase agreement pursuant to which ATC purchased all of the stock of D&D Pipe & Rentals Inc. ("D&D Pipe") from the defendants for a purchase price of more than $7 million, subject to adjustment (the "SPA"). Defendants made numerous representations in the SPA concerning the financial health and business activities of D&D Pipe. (Complt. ¶ 14).[1] The transaction closed on March 3, 2006. Subsequent to closing, ATC learned that the defendants had repeatedly breached their representations and warranties, as set forth in the SPA. (*See* Complt. ¶¶ 15-55). Due to defendants' misconduct, ATC was no longer able to continue the operations of D&D Pipe. (Complt. ¶ 56). ATC filed suit on September 27, 2007, and filed its Amended Complaint on February 4, 2008. Defendants have not answered the complaint.[2]

---

[1] All references to the "Complt. ¶___", refer to Plaintiff's Amended Complaint dated February 4, 2008 (Docket Entry No. 27).

[2] Defendants' Memorandum in Support of Defendants' Motion to Compel Discovery Responses from Plaintiff (hereinafter, "Def. Brief", or "Brief") contains, under pretext of providing background, extensive factual allegations unsupported by affidavit or the pleadings. ATC strongly disputes many of the factual assertions improperly made in the

The pending motion before the Court arises out of a discovery dispute relating to certain Requests for Production presented by the defendants.  ATC has interposed valid objections and assertions of privilege, as detailed herein.  ATC respectfully requests that defendants' motion be denied in its entirety.

## ARGUMENT

Pursuant to the Court's direction at the April 15, 2008 conference, ATC is in the process of updating and clarifying its responses to defendants' disputed discovery requests.  ATC will provide defendants with an updated response and privilege log on or before April 30, 2008.

**I.     The Only Record Responsive to Request for Production 1 is Privileged**

Defendants' Request (italicized) and ATC's Responses (plain text) are as follows:

*Produce all written communications and documents provided to private investigators or other individuals regarding the subject matter of this investigation by any of the following:[3]*

---

Def. Brief, such as that ATC exercised "complete control" over D&D Pipe, as well as the unfounded accusations of bad faith motivations, such as that this lawsuit was filed in "retaliation" for anything.  ATC has sought legal redress because it was wronged by the Defendants as set forth in the Complaint.  Defendants have yet to place any facts in the record.

[3]  In responding to Request for Production 1, ATC understands, based on the language of the request and prior informal consultations with counsel, that the phrase "other individuals" refers to other third-party agents or consultants retained by ATC to investigate Defendants or litigate this action, but who might not strictly be considered

    a.   *Donald Felix*

ATC possesses one responsive document, a declaration signed by Mr. Felix following an interview by ATC's counsel (the "Felix Declaration"). The Felix Declaration is withheld on the basis of the attorney-client communications privilege, as described below.

    b.   *Russel Vera*

ATC has no responsive documents in its possession, custody or control.

    c.   *Hillcorp*

ATC has no responsive documents in its possession, custody or control, other than those documents it received in response to its recent subpoena of Hilcorp, which have been provided to defendants.

    d.   *Any truck driver doing business with D&D Pipe and Rentals, Inc. or transporting materials to and/or from D&D Pipe and Rentals, Inc.*

ATC has no responsive documents in its possession, custody or control.

    e.   *Tim McBride*

ATC has no responsive documents in its possession, custody or control.

    f.   *Wilson Roy*

ATC has no responsive documents in its possession, custody or control.

    g.   *Joe Wiley*

ATC has no responsive documents in its possession, custody or control.

---

private investigators, but does not include ATC or its employees. To the extent that Defendants intend "other individuals" to mean literally any person, this Request would amount to a peculiarly phrased request for any and all documents ever passed between a named individual and ATC, at any time, concerning anything arguably related to this litigation. Such a request obviously would be overbroad and if the Defendants so intend their request, ATC objects.

h. *John Calicchio*

ATC has no responsive documents in its possession, custody or control.

i. *Steven Calicchio*

ATC has no responsive documents in its possession, custody or control.

j. *Lisa Calicchio*

ATC has no responsive documents in its possession, custody or control.

k. *Deloitte & Touche, LLP*

ATC has no responsive documents in its possession, custody or control.

l. *Wells Fargo Bank; and/or*

ATC has no responsive documents in its possession, custody or control.

m. *Argo International*

ATC has no responsive documents in its possession, custody or control.

Based on the above, there is only one record which is the subject of defendants'
motion to compel. As set forth in the attached Declaration of George E. Patterson, Jr.,
Esq. in Opposition to Defendants' Motion to Compel Discovery Responses from Plaintiff
(hereinafter, the "Patterson Dec."), Mr. Felix was interviewed by counsel to the plaintiff
in connection with this litigation. (Patterson Dec. at ¶ 2). Following the interview,
counsel prepared a declaration based upon Mr. Felix's statements, which Mr. Felix
subsequently reviewed and executed. (Patterson Dec. at ¶¶ 4-6).

Assuming that the Felix Declaration is responsive to RFP 1, it is a privileged
attorney-client communication. As set forth in the Patterson Dec., Mr. Felix was an
employee of D&D Pipe, a subsidiary of ATC, at the time he was interviewed. (Patterson
Dec. at ¶ 3). He remained an employee of D&D Pipe at the time he executed the

affidavit.  *Id.* at ¶ 7.  The interview of Mr. Felix was conducted by outside counsel in

contemplation of commencing litigation against the defendants, which, in fact, was done

within less than two months of the execution of the Felix Declaration.  (*See* Patterson

Dec. and Complt. generally).

A claim of privilege in nearly identical circumstances was upheld by the Supreme

Court in *Upjohn Company v. United States*, 449 U.S. 383 (1981), in which the Court

wrote:

> The communications at issue were made by Upjohn employees to counsel for
> Upjohn acting as such, at the direction of corporate superiors in order to secure
> legal advice from counsel. . . . The communications concerned matters within the
> scope of the employees' corporate duties, and the employees themselves were
> sufficiently aware that they were being questioned in order that the corporation
> could obtain legal advice. . . . Consistent with the underlying purposes of the
> attorney-client privilege, these communications must be protected against
> compelled disclosure.

449 U.S. at 394-395.  The pending motion is governed by New York law, which follows

*Upjohn*.  *See Niesig v. Team I*, 149 A.D.2d 94, 100, 545 N.Y.S.2d 153, 156 (1989) ("It is

clear . . . that any agent of [employer] could avail himself of the attorney-client privilege

with respect to communications made by him to [employer]'s attorneys on the subject

matter of this litigation. The general rule is that the attorney-client privilege may apply to

communications made by all corporate employees to corporate counsel in connection

with a particular litigation[.]").

That D&D Pipe was a subsidiary of ATC does not diminish the privilege.

*Admiral Insurance Co. v. U.S. District Court*, 881 F.2d 1486, 1493, n.6 (9th Cir. 1989)

(communications of subsidiary employee equally protected as employees of parent

corporation).  Similarly, it is of no consequence that Mr. Felix is no longer an employee

of D&D Pipe.[4]  *See, e.g., Admiral Insurance*, 881 F.2d at 1493 (former employee's

communications as protected as current employees); *Infosystems v. Ceridian Corp.*, 197

F.R.D. 303, 306 (E.D. Mich. 2000)("[P]rivileged communications which occur during the

period of employment do not lose their protection when the employee leaves the client

corporation.").  Finally, the fact that the communication was reduced to writing does not

dilute the protections of the privilege.  *See New York Times Co. v. Lehrer McGovern*

*Bovis, Inc.*, 300 A.D.2d 169, 171, 752 N.Y.S.2d 642, 644 (1st Dep't 2002) (report

prepared by employee at request of outside litigation counsel privileged).

## II.    Records Responsive to Request for Production 30 are Privileged

Defendant's request states:

*Produce all written communications and documents to and/or from Kroll*

*Investigations [sic] and/or any other private investigators hired to investigate Dean*

*Angelle and/or Denise Angelle in 2006 and 2007, including but not limited to, any*

*reports issued as a result of said investigation.*

Records responsive to this request exist.  Specifically, ATC is in possession of:

(a)  a report prepared by Kroll, Inc. ("Kroll") dated March 7, 2007;

(b)  an electronic mail message dated February 16, 2007, sent by Walter Simson of
     ATC to both an attorney and representative of Kroll concerning the scope of
     Kroll's investigative activities; and

(c)  an electronic mail chain containing five distinct notes dated February 20, 2007
     through February 21, 2007, specifically:

    (i)  a note dated February 20, 2007 from Walter Simson of ATC to ATC's
         counsel, regarding the scope of Kroll's work;

---

[4] Indeed, D&D Pipe currently has no employees.  Although still extant as a corporate

entity, D&D Pipe's business has been liquidated.  Defendants' role in causing the failure

of D&D is among the subjects of this litigation.  (Complt. ¶ 56).

(ii) a note dated February 21, 2007 from the attorney to personnel at Kroll, Simson's note regarding the scope of the investigation;

(iii) a note dated February 21, 2007 from Kroll personnel to the attorney asking for clarification regarding the scope and direction of the investigation;

(iv) a note dated February 21, 2007 from the attorney to Simson forwarding Kroll's note and seeking ATC's input;

(v) a note dated February 21, 2007 from Simson to the attorney responding to Kroll's questions regarding the scope and commenting on the contract negotiations with Kroll.

(d) an electronic mail chain identical to item (c) above, except that a slightly different forwarding note than item (v) above is at the end of the chain; however, the forwarding note is also between Simson and ATC's retained counsel.

ATC objects to production of the report as protected by the work-product privilege and objects to production of the e-mails as protected by the attorney-client communications privilege and work-product privilege.

A. <u>The Kroll Report is Protected Work-Product</u>

1. <u>The Report is Protected from Disclosure under Fed.R.Civ.Pro. 26</u>

Federal Rule of Civil Procedure 26(b)(3) provides that "a party may not discover documents and tangible things that are prepared in anticipation of litigation . . . by or for another party or its representatives[.]"

ATC acknowledges that it has the burden, in the first instance, of establishing that the work-product doctrine applies to the present case; however, the burden is "not a heavy one." *NXIVM Corp. v. O'Hara*, 241 F.R.D. 109, 127 (N.D.N.Y. 2007). Consistent with the Rule, ATC must demonstrate three elements: that the item sought to be protected is a document or tangible thing; that it was prepared in anticipation of litigation; and, that it was prepared by, or for, a party, or the party's representative. *Allied Irish Banks v.*

*Bank of America*, 240 F.R.D. 96, 105 (S.D.N.Y. 2007).  The Kroll report satisfies all three factors.

Initially, there is no question that it is a document or tangible thing.  There is similarly no question that it was prepared by a party's representative – Kroll was hired at ATC's direction.  *See* Deposition of Walter Simson, p. 347, ln. 7 – p 348, ln. 11, attached as Exhibit 1 to the Declaration of Eric Michael Liddick in Support of Defendants' Motion to Compel Discovery Responses From Plaintiff (hereinafter, the "Liddick Dec.").  Finally, the report was clearly prepared in anticipation of litigation.

The Second Circuit takes a broad view of the meaning of "anticipation of litigation."  In *United States v. Adlman*, 134 F.3d 1194 (2d Cir. 1998), the court rejected cases concluding that a document must have been prepared primarily to aid in litigation or, for that matter, to aid in litigation at all.  Instead, the court concluded that the principles embodied in the work-product doctrine required a more expansive understanding of "anticipation of litigation."  The Court ruled that a document could be eligible for protection simply by virtue of being prepared "because of" litigation.  *Id.* at 1197-98.  Qualifying litigation need not have begun, but need only be expected.  Furthermore, "[n]othing in the Rule states or suggests that documents prepared 'in anticipation of litigation' with the purpose of assisting in the making of a business decision do not fall within its scope."  *Id.* at 1198-99.

As made plain even in the brief portion of Walter Simson's deposition proffered by defendants, the Kroll investigation, and the report generated as a result, arose out of concerns of ATC management that a legal dispute was brewing with the defendants.  ATC did not hire Kroll spontaneously, but rather did so upon recommendation of

counsel. (Liddick Dec. at Exhibit 1, p. 347, ln. 7 – p 348, ln. 1). The explicit purpose for hiring Kroll was to determine "if Mr. Angelle was competing or if he had set up other companies" – potential violations of the agreements between ATC and the defendants. *Id.* at 348, lns. 1-11. Certainly this investigation was not a routine part of the business activities of ATC. Indeed, the fact that litigation was clearly anticipated at the time the investigation was commissioned is borne out by the fact that ATC commenced litigation alleging, in part, precisely the type of activity that it retained Kroll to investigate.

Defendants' attempt to undermine the work product protection afforded the report by reliance on a distinction between fact and opinion is misplaced. While attorney opinions lie at the core of the privilege, the criteria for applying the privilege are those set out in the Rule. With respect to *whether the privilege applies*, there is no separate test for fact-based documents versus opinion documents; the cases cited by the defendants do not say otherwise. *In re Savitt/Adler Litigation*, for example, dealt with interrogatories and depositions – to which the work-product doctrine does not apply by the plain language of the rule. Indeed, the court's principal distinction was not between facts and opinions, but between discovery of facts and discovery of tangible objects or documents. *176 F.R.D. 44, 48* (N.D.N.Y. 1997).

## 2. Defendants Have Not Shown Substantial Need

Because ATC has established that the Kroll report is protected work-product, the defendants have the burden of overcoming that privilege to obtain discovery at this stage. "For 'non-opinion' work product, the party seeking this information must show a substantial need for the document and undue hardship to acquire the document or its

substantial equivalent by other means." *NXIVM*, 241 F.R.D. at 127.  Opinion-based work product requires even greater protection.  *Id.; see* Fed.R.Civ.Pro. 26(b)(3)(B).

Even assuming for purposes of this brief that the Kroll report is predominantly non-opinion work-product, the defendants have not met the high threshold required to compel disclosure.  Under the Rule, the defendants must demonstrate "substantial need" for the report and show that the information contained therein cannot otherwise be obtained "without undue hardship."

Defendants attempt to satisfy both of these elements with a few short sentences toward the end of a single paragraph in their Brief.  Defendants offer no affidavit or other sworn allegation of fact.  Defendants' substantive claim for need boils down to this entirely conclusory argument: "*Obviously*, the Angelles cannot recreate from memory their activities during the undisclosed timeframe nor could they obtain the non-opinion facts of their alleged wrongdoings during this period of investigation in any way other than by obtaining a copy of this report."  (Def. Brief at p. 7)(emphasis added).  There is nothing obvious about this; indeed, quite the opposite is true.  Defendants have ready access to the best possible source of information about their activities a mere 15-18 months ago: themselves.  There is absolutely no reason to believe that the defendants are unable to provide their counsel with information regarding what companies they did or did not start in 2006 or 2007, nor is there any reason to believe, on this record, that they are unable to recall or reconstruct their own whereabouts, for example by consulting diaries or calendars or contacting persons with whom they met.  Certainly, there is no hardship associated with making these efforts.  In short, lack of access to the Kroll report will in no way "handicap" the defense.

Notably, defendants have not yet been deposed. Courts have often predicated release of information such as that contained in the report – which may form a foundation for impeachment – until after the party seeking disclosure has been deposed. *See, e.g., Weinhold v. Witte Heavy Lift. Inc.,* 1994 WL 132392, *1 (S.D.N.Y.1994) (ordering disclosure of surveillance films, found to be work-product, only after personal injury plaintiff submitted to deposition to preclude temptation to alter testimony based on films); *Daniels v. Nat. RR Passenger Corp.*, 110 F.R.D. 160, 161 (S.D.N.Y. 1986) (same); *see also Hildebrand v. Wal-Mart Stores*, 194 F.R.D. 432, 435 (D.Conn. 2000) (impeachment material ordered disclosed where plaintiff already deposed).

In the absence of any demonstration of a substantial need or undue hardship in obtaining basic facts about defendants' whereabouts from other sources, the Court should permit plaintiff to withhold the Kroll report from discovery as privileged work product.

B.    The Responsive E-mails Are Privileged

As indicated above, Kroll was hired at the suggestion of counsel and, as reflected in the description of these e-mails above, counsel was integrally involved in directing Kroll's activities with the guidance of the client. The communications among the three (client, counsel and investigator) are quintessentially the type protected by the communications privilege. Indeed, defendants readily acknowledge that they do not seek production of "attorney notes and communications, as the Angelles recognize that those documents are privileged." (Def. Brief at p. 5) Thus, it appears that only those portions of the e-mails which are directly between ATC and Kroll (the Feb. 16 note) or between Kroll and counsel (item iii, above, embedded in the e-mail chain) are even in dispute. Clearly, Kroll's participation in these discussions is exclusively as an extension of the

attorney-client relationship.  As noted above, Kroll's communication, through the attorney, seeks confirmation from the attorney and ATC regarding the scope of the investigation.

Even if the Court were to determine that the e-mails do not qualify as privileged attorney-client communications, they nevertheless constitute protected work-product.  As the Supreme Court stated in *United States v. Nobles*, 422 U.S. 225, 238-39 (1947):

> Attorneys often must rely on the assistance of investigators and other agents in their compilation of materials in preparation for trial.  It is therefore necessary that the [attorney work product] doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself.

As with the final Kroll report discussed above, the communications between the private investigator, the attorney advising the pre-litigation investigation, and the client, comprise the work-product that is protected by the privilege.  Made in connection with the same investigation that led to the report, the e-mail communications similarly meet the three-part test of Rule 26.[5]

### III.    Personal Tax Returns Should Not Be Disclosed

Requests for Production 10, 12 and 14 seek production of the "personal financial statements" for the years 2005 through 2007 of, respectively, John Calicchio, Steven Calicchio, and Lisa Calicchio.  ATC initially objected to production of such records,

---

[5] Defendants ask the court to conduct an *in camera* review of disputed materials to consider privilege claims or allow partial release of allegedly non-privileged material from privileged documents.  ATC respectfully submits that Defendants have not made a sufficient showing even to justify these measures; however, ATC will submit any records the Court wishes to review at the Court's direction.

should they exist, on grounds of relevance and overbreadth.  Following the April 15,

2008, conference with the Court, ATC has confirmed that no records exist responsive to

these requests.  Accordingly, litigation on these Requests is moot.[6]

Requests for Production 11, 13 and 15 seek production of the personal federal and

state tax returns for the years 2005 through 2007 for, respectively, John Calicchio, Steven

Calicchio, and Lisa Calicchio.  ATC objects to the production of these records.[7]

"Tax returns qualify as protected matter[.]"  *Ellis v. City of New York*, 243 F.R.D.

109, 111 (S.D.N.Y. 2007).  "Courts have been reluctant to require disclosure of tax

returns because of both "the private nature of the sensitive information contained therein"

and "the public interest in encouraging the filing by taxpayers of complete and accurate

returns."  *Rahman v. Smith & Wollensky Rest.*, No. 06-6198, 2007 WL 1521117 * 7

---

[6]  Even so, ATC cannot leave Defendants' assumptions unanswered and would, in no

way, concede the relevance of such records to this proceeding.  Personal financial

statements are compilations of numbers.  They do not speak at all to intentions or

assumptions.

[7]  The Calicchios are not parties to this action.  Counsel to ATC has consented to accept

service of process of subpoenas from Defendants for John Calicchio and Argo

International Corporation and likely will be moving to quash those subpoenas for reasons

similar to those set forth in this Memorandum.  No subpoenas have been served with

respect to Steven or Lisa Calicchio.  Furthermore, plaintiff will be producing voluntarily

additional documents demonstrating that the $1.5 million note referencing debt from

D&D Pipe was satisfied in 2006, thereby removing John Calicchio from any personal

financial connection to D&D Pipe that may have existed.

(S.D.N.Y. May 24, 2007) (quoting *Smith v. Bader,* 83 F.R.D. 437, 438 (S.D.N.Y. 1979).

A court should order disclosure only "when (1) the returns are relevant to the subject

matter of the action and (2) there is a compelling need for the returns because the

information contained therein is not otherwise readily available." *Id.* (citations and

internal quotations omitted). "While the party seeking discovery of the tax returns bears

the burden of establishing relevance, the party resisting disclosure should bear the burden

of establishing alternative sources for the information." *United States v. Bonanno*

*Organized Crime Family of La Cosa Nostra*, 119 F.R.D. 625, 627 (S.D.N.Y. 1988)

(citations omitted).

      A.    <u>Defendants Have Not Established Relevance</u>

      The defendants have not satisfied their burden of establishing the relevance of the

Calicchios' personal tax returns to the commercial dispute at issue in this litigation. In

the first instance, defendants have made no factual showing at all, relying heavily on

conclusory and unsupported allegations of fact in their Brief. This is entirely inadequate.

*Giannullo v. City of New York*, 322 F.3d 139, 142 (2nd Cir. 2003) (memorandum of law

"is not evidence at all"); *Harry Winston, Inc. v. Waldfogel*, 292 F. Supp. 473, 476

(S.D.N.Y. 1968) (briefs not sources of evidence). Defendants offer only beliefs, (Def.

Brief at p. 10), unsupported allegations concerning what ATC "initially represented,"

(Def. Brief at p. 11), and unsupported allegations concerning what ATC revealed

concerning how the transaction was financed, (Def. Brief at p. 12), to establish their

supposed need for sensitive personal financial information. ATC strongly disputes the

unfounded intimations gratuitously incorporated into defendants' Brief.

Indeed, all of ATC's representations are contained in Article III of the SPA, and none remotely approach those baldly alleged in defendants' Brief. Even if ATC "initially" made representations concerning how it intended to finance the purchase of D&D Pipe, such representations would have been subsumed by the merger provisions of Section 10.1 of the SPA. (Cohen Dec., Exh. A). The relevant excerpts of the SPA are attached as Exhibit A to the Declaration of Steven J. Cohen, Esq. (hereinafter, the "Cohen Dec."), and the entire SPA was previously filed electronically at Docket Entry No.21, Exhibits A1 and A2.

Moreover, the arguments built upon these unsupported allegations fall far short of demonstrating that personal tax returns will be admissible evidence or are likely to lead to admissible evidence in this matter.[8] As set forth in the Complaint, ATC alleges that it was misled into purchasing the defendants' company, that the defendants engaged in misrepresentations and fraud, and violated the terms of the SPA. Defendants, apparently, will propound as a defense an alternative theory for the ultimate failure of D&D Pipe. Defendants' theory apparently will be based upon interpretations of the financing of the purchase of D&D Pipe and its capitalization.

The fact that the Calicchios provided financial support to the transaction and to D&D Pipe does not make their personal tax returns relevant. It is not disputed that the Calicchios helped finance the transaction, and their personal tax returns will reveal no information that defendants do not already have, or cannot obtain from another source.

---

[8] Although no personal financial statements responsive to these Requests exist, ATC has presumed that Defendants' arguments as to their relevance would be applied as well to their request for tax returns.

The defendants' arguments in this regard are entirely conclusory, and even nonsensical.

For example, defendants argue:

> The documents produced thus far highlight the importance of the Calicchios in not only financing the purchase transaction, but also their assistance in covering D&D Pipe losses, all of which further contributed to the downfall of D&D Pipe. Thus, relevancy under the liberal scope of discovery clearly exists here.

(Def. Brief at p. 15). Defendants make no effort to explain how a shareholder's decision to cover the losses of a corporation contributes to its failure.[9] More important, this peculiar assertion is presented without analysis as a "clear" demonstration of relevance, absent any effort to make a logical connection between the asserted fact that the Calicchios participated in financing and the legal conclusion proffered by the defendants that their personal tax returns are relevant to this litigation.

Defendants' argument with respect to the "S Corp" status of ATC is similarly flawed. According to defendants, because Steven and Lisa Calicchio might have offset losses against other gains, their returns are "directly relevant" to determining damages in this case. (Def. Brief at p. 16). But, how the Callichios may have dealt with the personal

---

[9] Similarly odd is Defendants' implicit suggestion that D&D Pipe's interest payments on the financing were somehow designed to undermine the success of that corporation. Defendants' implication apparently is that the Calicchios were prepared to lose millions of dollars in principal through the failure of D&D Pipe in order to extract a few payments of interest. The fact is, as with most such commercial transactions, the deal was financed and financing comes with interest. Indeed, as Defendants should be well aware, shareholder financing is generally accomplished at terms better than or comparable to commercial financing.

16

implications of financial fall-out from this deal simply are not at issue in this suit. Damages sought in this case are damages incurred *by ATC*.

      B.      <u>Defendants Have No Compelling Need for the Calicchios' Tax Returns</u>

Even if the court were to determine that the Calicchios' "private" and "sensitive" personal information on their tax returns is relevant to the present case, there is no compelling need for their disclosure at this time.

More relevant and superior sources of information are readily available and have been produced. These include ATC's audited financial statements for the years ending December 31, 2004, 2005 and 2006 and ATC's general ledgers. How the acquisition was financed by ATC, how D&D Pipe was funded, and how D&D Pipe's business and financial condition declined, are all issues clearly contained within the financial records of the businesses at issue. *See, e.g., Briand Parenteau, Inc. v. Dean Witter Reynolds, Inc.*, 267 A.D.2d 576, 577, 699 N.Y.S.2d 230, 231 (3d Dep't 1999)("Defendants' claim that the tax returns would reveal information relevant to Parenteau's financial circumstances, investment experience and sophistication level . . . is insufficient . . . particularly since they have neither alleged nor demonstrated that the information sought cannot be obtained through other means, e.g., deposition or trial testimony.") No financial matter relating to this transaction or these businesses could end up on the Calicchios' tax returns without first being processed through, and reflected in, the books and records of the corporations. *At best*, the tax returns will contain information duplicative of that in the corporate records. As for the "intentions" of the parties (Def. Brief at p. 12), beyond the SPA, defendants will be able to explore the transaction during the deposition of relevant witnesses. Tax returns will not speak to intentions.

**IV.    ATC's Tax Returns Should Not Be Disclosed**

Through Request for Production 19, defendants seek production of ATC's state and federal tax returns.  Defendants concede that this request has been made prior to review of ATC's audited financial statement for the year ending December 31, 2006.

Corporate tax returns are not entitled to a lesser standard of protection than personal tax returns.  *See Lemanik, S.A. v. McKinley Allsop, Inc.,* 125 F.R.D. 602, 609 (S.D.N.Y. 1989).  In this matter, how ATC dealt as a tax matter with the losses incurred from the failure of D&D Pipe is not at issue.  Indeed, information contained in the tax returns is based upon, and will duplicate, information contained in the corporation's books and records.  Accordingly, the tax returns could not lead to discoverable information independent of or exceeding that contained in the company's financial statements and cannot be relevant.

At the same time, because financial records have been made available to the defendants, those records provide ready, if not superior, access to the very same information sought through this discovery request.  Therefore, there is no compelling need for disclosure.

## CONCLUSION

For the foregoing reasons, the defendants' motion to compel should be denied.


Dated: New York, New York
      April 29, 2008

                        WACHTEL & MASYR, LLP


                    By: _____/s/_____
                       Steven J. Cohen (SC 1289)
                       110 East 59th Street
                       New York, New York 10022
                       (212) 909-9500
                       *Attorneys for Plaintiff*
                       *Argo Turboserve Corporation*