STOCK PURCHASE AGREEMENT

BY AND AMONG

ARGO TURBOSERVE CORPORATION,
A DELAWARE CORPORATION,

DEAN ANGELLE and DENISE ANGELLE,

AND

D&D PIPE AND RENTALS, INC.,
A LOUISIANA CORPORATION,

DATED AS OF FEBRUARY 1, 2006

2.23 Full Disclosure. None of the representations and warranties made by Sellers, or made in any certificate, Disclosure Schedule, or memorandum furnished or to be furnished pursuant to this Agreement, contains or will contain any untrue statement of a material fact, or omit any statement or fact the omission of which would be misleading.

## ARTICLE III
## BUYER'S REPRESENTATIONS AND WARRANTIES

Buyer represents and warrants that:

3.1 Organization. Buyer is a limited liability company duly organized, existing and in good standing under the laws of the State of Delaware. The execution and delivery of this Agreement and the consummation of the transaction by Buyer have been duly authorized and no further corporate authorization is necessary on the part of Buyer.

3.2 No Violation of Laws; Consents. Neither the execution and delivery of this Agreement or any other agreement to which Buyer is or is to become a party, the consummation of the transactions contemplated hereby or thereby nor the compliance with or fulfillment of the terms, conditions or provisions hereof or thereof by Buyer will: (i) contravene any provision of the governing documents of Buyer or (ii) violate any law or any judgment or order of any governmental body to which Buyer is subject or by which any of its assets may be bound or affected. No consent, approval or authorization of, or registration or filing with, any person is required in connection with the execution or delivery by Buyer of this Agreement or any of the other agreements to which Buyer is or is to become a party pursuant to the provisions hereof or the consummation by Buyer of the transactions contemplated hereby or thereby.

3.3 Pending Litigation. There is no suit, action, arbitration or legal, administrative or other proceeding or government investigation pending or, to the knowledge of Buyer, threatened against or affecting the Buyer's business, business prospects, assets or financial condition.

3.4 Authority; Enforceability. Buyer has the right, power, legal capacity and authority to enter into, and perform its obligations under this Agreement and to bind and cause the Division to perform Division obligations as enumerated hereunder. The execution and delivery of this Agreement and any other agreement contemplated herein by Buyer has been duly authorized by the Buyer's board of directors and constitutes a valid and binding agreement of Buyer and the Division, enforceable against each party, in accordance with its terms.

## ARTICLE IV
## COMPANY'S AND SELLERS' OBLIGATIONS BEFORE CLOSING

13

PNJ263016

exclusive remedy of the Buyer, the Division, and Sellers against each other for claims arising out of this Agreement, whether based on tort, contract, statutory or common law remedy or equitable remedy or otherwise, including but not limited to, any misrepresentation, breach of warranty or otherwise, shall be to assert a claim for indemnification under the indemnification provisions of this Article IX, and the Buyer, the Division, and the Seller covenant that it or they will not seek to obtain any remedy except as provided in this Article IX.

      9.5    Survival.

(a)    All representations and warranties made by a Party shall survive through and including the fifth (5th) anniversary of the Closing Date, except that representations and warranties made relating to tax issues shall survive through and including the seventh (7th) anniversary of the Closing Date.

(b)    Each Party's right to assert a claim for indemnification under this Article IX shall survive through and including the fifth (5th) anniversary of the Closing Date, except that each Party's right to make an indemnification claim based on tax issues shall survive through and including the seventh (7th) anniversary of the Closing Date.

(c)    Notwithstanding anything to the contrary contained in this Agreement, if an Indemnified Party shall have delivered a Notice to the Indemnifying Party of one of more claims for indemnification pursuant to this Article 9 in accordance with Section 9.3, the limitations set forth in this Section 9.5 shall not apply to such claims until such claims, and the losses with respect thereto, are finally resolved or settled or a final arbitral award (or other judgment, if applicable) has been issued by an arbitral tribunal (or other tribunal with competent jurisdiction) with respect to such claims.

      9.6    Limitations on Indemnification. For purposes of this Article IX, in calculating the dollar amount limitations on indemnification, Total Consideration shall include all amounts earned during the Term of this Agreement without regard to the date such amounts are earned. When contingent future earnings are earned, such amounts earned shall be included in the calculation of the indemnification limitation (which are based on a percentage of Total Consideration) and will retroactively apply in the calculation of Total Consideration to reimburse a Party for any indemnification claims made in a timely manner pursuant to this Article IX.

ARTICLE X
MISCELLANEOUS

10.1    Entire Agreement. This Agreement, including the schedules and exhibits hereto, and the Transaction Agreements, contains the entire understanding among the parties hereto and with respect to the subject matter hereof and supersedes all prior and contemporaneous agreements, understandings, representations, inducements or conditions, express or implied, oral or written, except as set forth herein. The express

PNJ263026

terms hereof control and supersede any course of performance and/or usage of the trade inconsistent with any of the terms hereof.

10.2   Amendment and Waiver. This Agreement may not be modified, amended or supplemented other than by an agreement in writing executed by all parties hereto. No waiver shall be binding unless executed in writing by the Party making the waiver. No waiver of any provisions, breach or default of this Agreement shall be deemed or shall constitute a waiver of any other provision, whether or not similar, nor shall any waiver constitute a continuing waiver.

10.3   Delays or Omissions. It is agreed that no delay or omission to exercise any right, power or remedy accruing to any Party, upon any breach, default or noncompliance by another Party under this Agreement, shall impair any such right, power or remedy, nor shall it be construed to be a waiver of any such breach, default or noncompliance, or any acquiescence therein, or of or in any similar breach, default or noncompliance thereafter occurring. It is further agreed that any waiver, permit, consent or approval of any kind or character of any breach, default or noncompliance under this Agreement or any waiver of any provisions or conditions of the Agreement must be in writing and shall be effective only to the extent specifically set forth in such writing. All remedies, either under this Agreement or otherwise afforded to any Party, shall be cumulative and not alternative.

10.4   Assignment. Neither Party hereto may assign any of its rights or obligations hereunder without the prior written consent of the other Party hereto (which consent shall not be unreasonably withheld). This Agreement will be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns.

10.5   Notices. All notices, requests, demands and other communications required or permitted under this Agreement and the transactions contemplated herein shall be in writing and shall be deemed to have been duly given, made and received on the date when delivered by hand delivery with receipt acknowledged, or upon the next business day following receipt of telex or telecopy transmission, or upon the third day after deposit in the United States mail, registered or certified with postage prepaid, return receipt requested, addressed as set forth below:

(a)   If to Buyer:

Argo Turboserve Corporation
49 Commerce Road
Carlstadt, New Jersey
Attention: Clyde Keaton
Phone:
Fax:

(b)   If to Sellers:

PNJ263027