**Gregory W. O'Neill** (GO 1944)
**Elizabeth A. McCoy** (EM 8448)
Hill, Betts & Nash L.L.P.
One World Financial Center
200 Liberty Street, 26th Floor
New York, New York 10281
Tel.:  (212) 839-7000
Fac.:  (212) 466-0514

**Carl D. Rosenblum** (LA Bar No. 02083) (Admitted *Pro Hac Vice*)
**Eric Michael Liddick** (LA Bar No. 31237) (Admitted *Pro Hac Vice*)
Jones, Walker, Waechter, Poitevent,
  Carrère & Denègre, L.L.P.
201 St. Charles Avenue, 49th Floor
New Orleans, Louisiana 70170
Tel.:  (504) 582-8000
Fac.:  (504) 582-8011

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ARGO TURBOSERVE CORPORATION,<br><br>                    Plaintiff,<br><br>versus<br><br><br>DEAN ANGELLE AND DENISE ANGELLE,<br><br>                    Defendants. | CASE NO. 07 CV 8410 (RMB) (GWG)<br><br>ECF<br><br>REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL DISCOVERY RESPONSES |

**REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS'
<u>MOTION TO COMPEL DISCOVERY RESPONSES</u>**

{N1811452.3}

**Table of Contents**

                                            **Page**

ARGUMENT ...........................................................................................................................1

I.  **Request for Production Nos. 1 and 30**..................................................................1

   A.  ATC Should be Compelled to Produce the Donald Felix Declaration ....................1

   B.  ATC Should be Compelled to Produce the Kroll Report and Related Documents ...............................................................................................................2

II.  **Request for Production Nos. 10 through 15** .......................................................5

   A.  The Financial Statements of John, Lisa, and Steven Calicchio .............................5

   B.  ATC Should be Compelled to Produce the Calicchios' Personal Tax Returns ....................................................................................................................5

III.  **ATC Should be Compelled to Produce Its Tax Returns (Request for Production No. 19)** ...................................................................................................7

CONCLUSION ........................................................................................................................8

**Table of Authorities**

**Cases**

*Allied Irish Banks, P.L.C. v. Bank of America, N.A.,*
   No. 03-3748, 2008 WL 783544 (S.D.N.Y. Mar. 26, 2008) ................................................ 2

*Granite Partners v. Bear, Stearns & Co.,*
   184 F.R.D. 49 (S.D.N.Y. 1999) ............................................................................... 1, 4, 5

**Rules**

FED. R. CIV. P. 26(b) (2008) ........................................................................................................ 5

Defendants, Dean Angelle and Denise Angelle (collectively, "the Angelles"), submit this Reply in further support of their Motion to Compel Discovery Responses from plaintiff, Argo Turboserve Corporation ("ATC").

## ARGUMENT

I. **Request for Production Nos. 1 and 30**

    A.    <u>ATC Should be Compelled to Produce the Donald Felix Declaration:</u>

ATC represents that only one document is responsive to Request for Production No. 1: Donald Felix's Declaration (the "Felix Declaration").[1] (*See* Rec. Doc. No. 47 at p. 4). Under the circumstances presented, the Felix Declaration must be produced.

It is well settled that a party may not use the attorney-client privilege as "both a shield and a sword." *See, e.g.*, *Granite Partners v. Bear, Stearns & Co.*, 184 F.R.D. 49, 54 (S.D.N.Y. 1999). Nor may a party place a protected communication in issue and then withhold that information from opposing counsel. *See, e.g.*, *id.* Both principles are rooted in the notion of "fairness," which aims "to prevent prejudice to a party and distortion of the judicial process." *Id.* ATC's refusal to produce the Felix Declaration is contrary to these well established principles. Here, ATC seeks to use the attorney-client privilege to "shield" the Felix Declaration from discovery by the Angelles. Yet, at the same time, ATC apparently wishes to use the Felix Declaration as a "sword" against the Angelles. ATC cannot have it both ways.

Of course, this analysis presumes *arguendo* that the Felix Declaration even falls within the attorney-client privilege, which ATC bears the burden of proving. If the Felix Declaration contains incriminating evidence, ATC will seek to use that information as support for its claims

---

[1] Curiously, ATC did not list this document on its initial privilege log. Instead, ATC waited until after the Angelles filed this Motion to Compel, and nearly a month after serving its responses, before listing this document on a supplemental log.

herein; however, without disclosure to the Angelles, ATC could use the document without the Angelles' knowing whether the Felix Declaration also contains evidence contrary to ATC's claims. This is improper and contrary to applicable law.

Therefore, even if the Court finds that this document is privileged, and does not compel production, the Angelles submit that, at a minimum, ATC should be precluded from using it in this litigation.

B. <u>ATC Should be Compelled to Produce the Kroll Report and Related Documents:</u>

Regarding Request for Production No. 30, ATC acknowledges that it bears the burden of proving that every element of the work product doctrine is applicable. (Rec. Doc. No. 47 at p. 7). However, this burden, contrary to ATC's suggestion, *is* a "heavy one." *Allied Irish Banks, P.L.C. v. Bank of America, N.A.*, No. 03-3748, 2008 WL 783544, *10 (S.D.N.Y. Mar. 26, 2008) (Gorenstein, Mag. J.). Moreover, ATC must show that the doctrine has not been waived. *Id.* ATC fails to satisfy both burdens here.

Importantly, ATC has not marshaled more than "conclusory or *ipse dixit* assertions" that the Kroll, Inc. Report (the "Kroll Report") or related e-mails not involving discussions with counsel were prepared in anticipation of or "because of" litigation. *Id.* at *4. This is a prerequisite for assertion of the work product doctrine. ATC incorrectly suggests that the excerpt of Walter Simson's deposition testimony referenced in the Angelles' Motion to Compel reveals that the investigator was hired out of concerns "that a legal dispute was brewing with the defendants." (Rec. Doc. No. 47 at p. 8). Nowhere in the excerpt of Simson's testimony does Simson state that ATC feared some ensuing legal battle. (*See generally* Rec. Doc. No. 46, Ex. "1"). Instead, the facts seem to contradict this stated "anticipation" or, at the very least, raise questions about *when* this "anticipation" actually arose or for what purpose the investigation was

undertaken.[2] ATC has not established that this litigation was "anticipated" at the time of the Kroll Report.

The Kroll Report was apparently issued on March 7, 2007[3] and covered a time period in which Dean Angelle was still employed by D&D Pipe. Indeed, it does not appear that ATC's counsel made a visit to Lafayette, Louisiana to conduct interviews before June, 2007. (*See* Rec. Doc. No. 48, Ex. "B"). In fact, discovery conducted thus far reveals that ATC's counsel in this matter was not even retained until the summer of 2007. Thus, these documents, which were created months earlier, do not appear to have been generated in "anticipation" of litigation. And, at the very least, ATC has failed to satisfy its burden of illustrating that these documents were created in anticipation of litigation. Should the Court disagree, the Angelles respectfully request that ATC be ordered to indicate the exact date upon which it suggests litigation was first "anticipated."

Even if one assumes that ATC has met its threshold burden, which the Angelles deny, ATC's argument that the Angelles have "other sources" for the same evidence is erroneous. (*See* Rec. Doc. No. 47 at p. 10). It is true that *if* the Angelles had formed a competing company, which they deny, then they, themselves, would know of this information. If ATC is asserting that the Kroll Report is consistent with the Angelles' knowledge that they at no time formed a competing company, then the Angelles do, indeed, have "other sources." However, to the extent that the Kroll Report contains facts *inconsistent* with the Angelles' stated position, then the

---

[2] The Angelles have placed very few facts into evidence since they currently have numerous pending Rule 12(b) motions and have yet to file their Answer, Affirmative Defenses, and Counterclaims in this matter. However, the Angelles necessarily set forth some of the evidence, which will be reflected in their Answer, Affirmative Defenses, and Counterclaims, in order to illustrate "relevance" and to put the present Motion to Compel in context.

[3] Again, this document did not appear on ATC's privilege log until after the Angelles filed this Motion to Compel.

Angelles have no way of obtaining the information from any other source. Moreover, the Angelles merely seek discovery of the facts – the "non-opinion" work product – as set forth in this report and the associated e-mails *not* involving counsel. Although ATC gives short shrift to the alternative of redacting "opinion" work product from the report or producing the Kroll Report for *in camera* inspection, the Angelles respectfully submit that they are entitled to the facts reflected therein by any means. At a minimum, the Court should review the documents and independently evaluate whether the Angelles can obtain this factual information from other sources.

Additionally, ATC notes that the activity that it retained Kroll to investigate forms a portion of its allegations in the present litigation. (*See* Doc. Rec. No. 47 at p. 9). Here again ATC seeks to improperly use the privilege as a sword and shield. ATC, by filing suit and basing a portion of its allegations on the information allegedly supplied by this report, has affirmatively and offensively placed this document in issue. *See, e.g.*, *Granite Partners*, 184 F.R.D. at 55. The Kroll Report makes factual assertions, upon which ATC appears to rely in its Amended Complaint (*see* Rec. Doc. No. 47 at p. 9), that cannot be assessed or tested except "by an examination" of the report. *Granite Partners*, 184 F.R.D. at 55. This "use" of the Kroll Report while simultaneously shielding it from discovery is improper. By its use, ATC has waived any right to assert privilege thereon.

Nor is it necessary for ATC to have introduced the Kroll Report into evidence; instead, the analysis is "whether the party's use of the document is unfair and inconsistent with a claim of privilege." *Id.* For example, if a witness makes a statement in deposition testimony that is inconsistent with statements that the witness made to investigators, the Angelles will have no way of knowing that the witness has made an inconsistent statement. It is similarly unfair to

allow only ATC to impeach a witness with the Kroll Report without according the Angelles the same opportunity. *See id.* Additionally, the Kroll Report might contain exculpatory information. It would be prejudicial and unfair to the Angelles, and the judicial system, if such information were not fully disclosed. As such, the Kroll Report should be disclosed, redacted, or, at a minimum, viewed by the Court *in camera*.

## II.     Request for Production Nos. 10 through 15

### A.     The Financial Statements of John, Lisa, and Steven Calicchio:

ATC claims that no responsive documents exist for Request for Production Nos. 10, 12, and 14. Although the Angelles find this incredible, the Angelles recognize that they cannot, based upon ATC's counsel's representation to the Court, compel documents that do not exist.

### B.     ATC Should be Compelled to Produce the Calicchios' Personal Tax Returns:

ATC's argument with respect to Request for Production Nos. 11, 13, and 15 involves a mistaken understanding of "relevance" in the discovery context. Discovery is permitted of "any nonprivileged matter that is relevant to *any party's claim or defense*", which includes anything "reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b) (2008) (emphasis added). These requests clearly fall within the parameters of the permissible scope of discovery.

As an initial matter, ATC seeks to dispel any relevance by asserting that the $1.5 million note to John Calicchio was satisfied in 2006. (*See* Rec. Doc. No. 47 at n.7). ATC fails to illustrate, however, how this satisfaction makes John Calicchio's information any less "relevant." Indeed, in light of this new representation, the documents requested here are all the more relevant and certainly bear upon claims or defenses asserted, or to be asserted, in this litigation because they bear, at least, on the defenses of overburden and changes in expected financing

arrangements. Mr. Calicchio's personal tax returns are certainly related to these financing issues and are discoverable under the liberal discovery standards.

Furthermore, ATC does not deny its status as a subchapter "S" corporation. As such, ATC implicitly admits that the gains or losses of ATC flow through the shareholders of the corporation – Lisa and Steven Calicchio, John Calicchio's children. ATC's tax treatment of losses, then, necessarily flows through *to* the Calicchios. For example, the tax returns could disclose that the Calicchios may have taken business losses as deductions on personal income tax returns, which goes to any issue of damages allegedly suffered. Additionally, their tax returns are reasonably calculated to lead to the discovery of evidence indicating the changed expectations of ATC with respect to financing in the months prior to the stock purchase. Finally, as ATC is a "S" corporation and as its financials flow through the tax returns, the Calicchios' financials are directly relevant to the Angelles' claim that the proximate cause of D&D Pipe's demise was gross undercapitalization. These tax returns are clearly relevant.

ATC then seeks to persuade the Court that "other sources" exist that would provide the same information, namely ATC's financial records. (*See* Rec. Doc. No. 47 at p. 17). Yet, on the very next page, ATC seeks to preclude discovery of portions of these "other sources." (*Id.* at p. 18). ATC, in effect, places before the Court a "Catch-22": ATC suggests that the Angelles cannot obtain the Calicchios' tax returns because ATC has produced its financials; but the Angelles cannot obtain the "other source," namely ATC's tax returns, because, according to ATC, there are "other sources." This is circular. ATC's argument, in and of itself, precludes obtaining the information from "other sources."

Importantly, John Calicchio and his two children, the shareholders of ATC, voluntarily interposed themselves into the transaction at the heart of this litigation. John Calicchio loaned a

significant amount of money for the transaction. So too did the children. Moreover, if ATC wanted to maintain a "S" corporation status for tax reasons, then it made the conscious and voluntary decision to place the Calicchios' financial and tax information in issue. And, ATC, by advancing this litigation, has made the Calicchios' involvement, and *ergo* their information, relevant to claims and defenses in this action. The Angelles respectfully request that the Court compel ATC to produce responsive documents.

### III.  ATC Should be Compelled to Produce Its Tax Returns (Request for Production No. 19)

ATC makes clear that it seeks recovery of damages "incurred by ATC." (*Id.* at p. 17). However, ATC refuses to produce its tax returns and instead reverts to its familiar "other sources" argument. Two other sources exist that might relate to ATC's damages: (1) the shareholders tax returns and/or (2) ATC's tax returns. But yet, ATC denies production of both.

ATC instead points the Angelles to ATC's audited financials. However, these statements are insufficient. If ATC invested capital in D&D Pipe and thereafter suffered losses, such losses could be utilized to offset gains of other income on ATC's tax returns. Similarly, if ATC had not suffered any losses, it presumably would have had to pay higher taxes. This information is *not* (and, indeed, would not be) reflected on any financial statements.[4] Therefore, the Angelles respectfully request that the Court compel ATC to produce documents responsive to this request.

---

[4] The Angelles have reviewed the financial statements produced by ATC since the Angelles filed their Motion to Compel. (*See* Rec. Doc. No. 45 at n.4). The Angelles assert that review of those financials makes production of ATC's tax returns all the more necessary and important.

{N1811452.3}                                        7

## CONCLUSION

For the foregoing reasons, as well as those set forth in their initial memorandum, the Angelles' Motion to Compel Discovery should be granted, and ATC should be ordered to fully respond to Request for Production Nos. 1, 11, 13, 15, 19, and 30.

Respectfully Submitted,

GREGORY W. O'NEILL (GO 1944)
ELIZABETH A. MCCOY (EM 8448)
Hill, Betts & Nash, L.L.P.
One World Financial Center
200 Liberty Street, 26th Floor
New York, New York 10281
Telephone: (212) 839-7000
Facsimile: (212) 466-0514

AND

*/s/ Eric Michael Liddick*
CARL D. ROSENBLUM (LA Bar No. 02083)
(Admitted *Pro Hac Vice*)
ERIC MICHAEL LIDDICK (LA Bar No. 31237)
(Admitted *Pro Hac Vice*)
Jones, Walker, Waechter, Poitevent,
  Carrère & Denègre, L.L.P.
201 St. Charles Avenue, 49th Floor
New Orleans, Louisiana 70170
Telephone: (504) 582-8000
Facsimile: (504) 582-8011
***Attorneys for Dean Angelle and Denise Angelle, Defendants***

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been forwarded this day to counsel of record for Argo Turboserve Corporation, ☒ by CM/ECF, ☒ by e-mail, ☐ by telefax, ☐ by hand, and/or ☒ by United States mail.

New Orleans, Louisiana, this 7th day of May, 2008.

*/s/ Eric Michael Liddick*
ERIC MICHAEL LIDDICK

{N1811452.3}                                8